**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | NO. 3:22-cr-00327 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHESTER GALLAGHER, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

The United States of America, by and through its counsel of record, respectfully submits its response in opposition to two Motions to Dismiss (Docs. 240 and 245) filed by the 11 defendants ("the defendants") charged in this case. The government respectfully requests that the defendants' motions be denied.

**Background**

The Indictment charges seven of the 11 defendants ("the Count 1 defendants") with a violation of 18 U.S.C. § 241, a civil rights conspiracy statute, for conspiring to interfere with the statutorily-protected right of patients to access, and of providers to offer, reproductive health care; and charges all 11 defendants with aiding and abetting one another in violating the Freedom of Access to Clinic Entrances Act (the FACE Act), in violation of a violation of 18 U.S.C. § 248(a)(1), for blockading a health care clinic and preventing patients from accessing, and providers from offering, that same health care. *See* Doc. 3. The FACE Act prohibits (among other things) the use of force, threats, or physical obstruction to injure, intimidate, or interfere with a person obtaining or providing available reproductive health care.

1

On March 5, the defendants physically blocked the doors to the carafem Health Center (the "Clinic"), a clinic in Mt. Juliet, Tennessee, that offered a broad array of reproductive health care, including abortion procedures that were legal under Tennessee law. During the blockade, the defendants harassed patients and employees alike.

When a patient (and her companion) seeking to obtain reproductive health services at the Clinic (identified in the indictment as "Patient A") stood in a hallway at the Clinic speaking with a Clinic employee (identified as "Employee A"), defendant Boyd referred to the patient as a "mom coming to kill her baby." He asked Patient A, among other things, whether she was "[t]rying to come to the abortion mill" – and encouraged one of his children to further question Patient A. *Id*. As Employee A then tried to leave the hallway and re-enter the Clinic, defendant Calvin Zastrow physically blocked the door such that the employee was unable to enter the Clinic and instead had to exit the building. *Id*. at 5-6.

The month before the blockade defendant Gallagher used social media to promote a series of anti-abortion events scheduled for March 4 through 7, 2021, in the Nashville area, including the one on March 5 at the Clinic. *Id*. at 3. The Count 1 defendants used social media to coordinate their travel to Tennessee. *Id*. at 3-4.

On March 4, 2021, defendant Boyd used social media to announce that his family would be "doing a Facebook live" of their activities the following morning. *Id*. at 4. The next morning, defendant Boyd began a Facebook livestream while standing in the hallway outside of the Clinic suite. *Id*. Four of the defendants stood in the same hallway, directly outside the Clinic's two entry doors. *Id*. Meanwhile, a fifth defendant began a separate Facebook livestream, in which he filmed himself entering the Clinic building and riding up the elevator to the Clinic floor with defendant Davis. *Id*. at 5.

2

Another defendant then began a third Facebook livestream, in which he explained that a successful "rescue" involved exactly that which the FACE Act criminalizes – using tactics that kept patients from obtaining, and the Clinic from performing, reproductive health services. The defendant later announced to his Facebook livestream audience that the blockade participants "already turned away one couple" and hoped to "stop as many murderous appointments as [they could]." *Id.* at 7. Ultimately, all of the defendants either blocked the Clinic's two entrances, conspired to do so, or aided and abetted their co-defendants in doing so.

### Argument

The Court should deny both of the defense's pending motions, which argue for dismissal of the Indictment based primarily on the mistaken premise that the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (June 24, 2022), overturning a previously-recognized constitutional right to abortion, invalidated the FACE Act. The defendants make this argument despite the fact that the Sixth Circuit and numerous other federal courts have established that the constitutionality of the FACE Act is based not on a Fourteenth Amendment right to abortion, but rather on Congress's Commerce Clause authority.

The defendants also raise claims asserting that the Indictment violates the First Amendment and the Religious Freedom Restoration Act, and is the result of selective prosecution and viewpoint discrimination. In addition to challenging the constitutionality of the FACE Act, and the propriety of the charge brought under that act in Count 2, the defendants charged in Count 1 with conspiracy also challenge that count, essentially repeating the same arguments made with respect to the FACE Act count. As explained in further detail below, each of these arguments contravenes controlling case law, and each of these arguments should be rejected by this Court.

## I. THE FACE ACT REMAINS CONSTITUTIONAL FOLLOWING THE *DOBBS* DECISION.

The defendants assert multiple arguments regarding the constitutionality of the FACE Act following the *Dobbs* decision. Each of these arguments should be rejected, as they wholly rest on two fundamentally mistaken premises – that the constitutionality of the FACE Act is based on a constitutional right to abortion, and that the Act was designed to "protect[] abortion and abortion alone." Doc. 245 at 18. Based on those mistaken premises, the defendants argue that because *Dobbs* held that there is no Fourteenth Amendment right to abortion, "the very reason for FACE's existence no longer exists" and "[a]s a result…it has lost its constitutional validity." Doc. 245 at 22. This assertion is incorrect.

### A. The FACE Act is a Valid Exercise of Congress's Commerce Clause Power, and is Not Based upon, or Dependent on, a Constitutional Right to Abortion.

The FACE Act was not invalidated or limited by *Dobbs.* The constitutionality of the FACE Act does not hinge on the existence of a federal right to abortion. Rather, as the Sixth Circuit and every court of appeals to consider the issue has held, the constitutionality of the FACE Act is based on the authority of Congress under the Commerce Clause. *See Norton v. Ashcroft*, 298 F.3d 547, 556 (6th Cir. 2002); *United States v. Gregg*, 226 F.3d 253, 264–66 (3d Cir. 2000); *United States v. Weslin*, 156 F.3d 292, 296 (2d Cir. 1998); *Hoffman v. Hunt*, 126 F.3d 575, 584 (4th Cir. 1997); *United States v. Bird*, 124 F.3d 667, 678-684 (5th Cir. 1997); *Terry v. Reno*, 101 F.3d 1412, 1417 (D.C. Cir. 1996); *United States v. Soderna*, 82 F.3d 1370, 1373-74 (7th Cir. 1996); *United States v. Dinwiddie*, 76 F.3d 913, 919 (8th Cir. 1996); *United States v. Wilson*, 73 F.3d 675, 680 (7th Cir. 1995); *Cheffer v. Reno*, 55 F.3d 1517, 1520 (11th Cir. 1995); *American Life League, Inc. v. Reno*, 47 F.3d 642, 647 (4th Cir. 1995).

The defendants cite no case law to the contrary. Rather, they argue that the Sixth Circuit's application of *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), is no longer valid after *Dobbs*, because "protection of access to abortion and 'abortion-related services' is no longer a proper concern in federal law." Doc. 245 at 37. But the defendants point to no law stating that Congress may not use its Commerce Clause power to regulate conduct unless that conduct is the subject of a different Constitutionally protected activity. Congressional power to legislate needs to be supported by only one constitutional justification. Taken to its extreme, the defendant's argument would strike down, for example, the Hobbs Act, along with the many other federal criminal statutes whose constitutional basis lies solely in the Commerce Clause. 18 U.S.C. § 1951; *see also United States v. Ballinger*, 395 F.3d 1218, 1229 (11th Cir. 2005) (collecting statutes).

As explained below, the FACE Act protects the broad category of "reproductive health services," and just as it did pre-*Dobbs*, Congress maintains the power under the Commerce Clause to regulate the effects in interstate commerce on providers of reproductive health services – including but not limited to those who are providing legal abortion services. Moreover, because the Sixth Circuit has held that the FACE Act is a valid exercise of Congress's Commerce Clause authority, and because that holding has not been expressly overruled by the Supreme Court or by an *en banc* decision by the Sixth Circuit, this Court has no choice but to follow that opinion – even if this Court were somehow to conclude that the *en banc* Sixth Circuit, if given the opportunity, *would* overrule its prior precedent. *United States v. Yoon*, 398 F.3d 802, 806 (6th Cir. 2005) ("The prior decision [of a Sixth Circuit panel] remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision."); *Darrah v. City of Oak Park,* 255 F.3d 301, 309 (6th

Cir. 2001) ("The prior decision [of a Sixth Circuit panel] remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision."); *see also Agostini v. Felton*, 521 U.S. 203, 207 (1997) ("[L]ower courts should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

The defendants further argue that their conduct does not constitute economic activity, such that its regulation can constitute an exercise under the Commerce Clause. Doc. 245 at 37. To the extent that the defendants are arguing that their conduct was not an act of criminal obstruction in violation of the FACE Act, that is an issue to be resolved at trial.

However, to the extent that the defendants intend to argue that the blockade of the clinic does not and cannot constitute economic activity affecting interstate commerce, this position is contravened by controlling case law. *See Norton*, 298 F.3d at 557 ("Both the Senate Judiciary Committee and the House Committee on Labor and Human Resources submitted extensive reports detailing that *clinic blockades* and violent anti-abortion protests burdened interstate commerce.") (emphasis added).

The defendants assert that this controlling case law regarding the FACE Act is no longer applicable, because "after *Dobbs*, consideration of the national market for abortion or the economic activity of abortion facilities is no longer material." Doc. 245 at 38. This assertion is incorrect for at least two reasons. First, the interstate market to which the case law refers is not exclusively an interstate market for *abortion*, but rather an interstate market for reproductive health services – services that, as explained below, encompass both abortion services and many other reproductive health services, all of which remain legal. *See Norton*, 298 F.3d at 556 ("While the activity prohibited by the [FACE] Act might be motivated by non-commercial sentiment – namely, staunch

moral opposition to abortion – the effect of this activity is unambiguously and directly economic."). Second, as the Sixth Circuit and other courts have recognized, Congress's findings outlining the link between reproductive health services facilities and interstate commerce are based on far more than the mere existence of an interstate market for reproductive services. *See Norton*, 298 F.3d at 558 (explaining that interstate travel required by both patients and physicians to obtain and provide reproductive health services, as well as the fact that clinics "purchase medicine, medical supplies, surgical instruments and other necessary medical products, often from other states" supported a finding that reproductive health services facilities operate in interstate commerce); *Terry*, 101 F.3d at 1417 (explaining that Congress "found that clinics purchase equipment and supplies in interstate commerce, own and lease office space, and generate income" and that these findings, combined with "the interstate travel of patients and staff" supported "the conclusion that the Access Act does not exceed Congress's Commerce Clause power"). Because controlling case law is clear that clinic blockades have a clear economic effect and that the validity of the FACE Act under the Commerce Clause is based on more than simply an interstate market for abortions, the motions to dismiss on this basis should be denied.

### B. The FACE Act Protects the Right to a Broad Array of Reproductive Healthcare, not Just to Abortion Services.

Contrary to the defendants' allegations, the purpose of the FACE Act was not solely to protect abortion, but to protect "reproductive health services" – services that encompass much more than just abortion. 18 U.S.C. § 248(a)(1), (e)(5) (defining reproductive health services as those "provided in a hospital, clinic, physician's office, or other facility," including "medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy"). Abortion is only one of the many reproductive health services protected by the FACE Act. Indeed, as the Sixth Circuit has

7

expressly recognized, the FACE Act prohibits interference with counseling regarding abortion alternatives. *Norton*, 298 F.3d at 553. This remains true after *Dobbs*, a case that stands for the limited proposition that the Fourteenth Amendment does not guarantee a right to abortion. *See Dobbs*, 142 S. Ct. at 2284.

As a result of the *Dobbs* decision, states may now restrict or prohibit abortion services throughout pregnancy without violating the Fourteenth Amendment, and Tennessee, like other states, has restricted access to services that were once protected. However, the fact that a state may limit access to abortion services is not new; even under pre-*Dobbs* jurisprudence, certain reproductive health services could be – and were – subject to state regulation.[1] For example, many states constitutionally restricted access to late-term abortions, a restriction expressly envisioned by *Roe*. *See Roe v. Wade*, 410 U.S. 113, 163 (1973) (explaining that a state may proscribe abortions after viability in order to protect fetal life and may regulate abortions prior to viability to protect maternal health and welfare). The fact that late-term abortions were prohibited by state laws did not make the FACE Act inapplicable to interference with individuals who were seeking to obtain and provide *legal* abortions. Similarly, the fact that, in the wake of *Dobbs*, some states have outlawed access to most abortion services does not make FACE Act inapposite to interference with reproductive health services that remain legal under state law. In short, the FACE Act does not interfere – and has never interfered – with the application of state law, a fact acknowledged in the FACE Act's rules of construction. *See* 18 U.S.C. § 248(d)(4).

### C. Retroactive Application of the **Dobbs** *Decision Has No Bearing on the Validity of the Indictment.*

When defendants engaged in the acts described in the indictment, *Dobbs* had not yet been decided. Accordingly, the defendant's arguments regarding the effect of *Dobbs* are inapposite to

---

[1] *Roe v. Wade*, 410 U.S. 113, 163 (1973).

the charged conduct. Nevertheless, the defendants attempt to explain why *Dobbs* should apply retroactively. Doc. 240 at 4-14. The defendants acknowledge that it would violate *ex post facto* laws to apply *Dobbs* retroactively in order to prosecute individuals who obtained or provided an abortion that was legal under state law at the time. Nevertheless, they argue that there is no prohibition on applying *Dobbs* retroactively if doing so would *shield* individuals from prosecution. Doc. 240 at 6-7. This argument is irrelevant, however, because retroactive application of *Dobbs* would still not shield the defendants from prosecution under the FACE Act. Even if *Dobbs* applied at the time of the defendants' conduct – and, indeed, even if Tennessee had constitutionally prohibited all abortions at the time of the defendant's conduct – it remains that the defendants used physical obstruction to interfere with Patient A's and Employee A's right to obtain and provide the legal reproductive health services offered by the Clinic, as discussed above. Further, the Clinic provided services beyond abortion. *See* In-Office Care, *available at* https://carafem.org/in-office/ (listing services including providing birth control options and sexually transmitted infection testing).

Therefore, retroactive application of *Dobbs* would not change the allegation that the defendants interfered with Patient A's and Employee A's right to obtain and provide legal reproductive health services at the Clinic.

## II. SECTION 248 IS NOT UNCONSTITUTIONAL UNDER THE FREE SPEECH PROVISION OF THE FIRST AMENDMENT, EITHER FACIALLY OR AS APPLIED TO THE DEFENDANTS.

In addition to arguing that prosecution under the FACE Act is foreclosed by *Dobbs*, the defendants claim that prosecution violates the free speech provision of the First Amendment. Yet, as even the defendants conceded, the FACE Act "does not directly apply to speech, but rather prohibits three types of conduct – use of force, threat of force, and physical obstruction – which

are not protected by the First Amendment." *Norton*, 298 F.3d at 552; *see also* Doc. 245 at 4 (citing *Norton*). While acknowledging that the FACE Act applies to conduct, not words, the defendants still assert that the FACE Act is facially unconstitutional under the First Amendment. *Cf.* Doc. 245 at 4 (citing *Norton*, 298 F.3d at 552) and Doc. 245 at 22. Specifically, the defendants assert that § 248 is a content-based regulation of First Amendment activity, which does not satisfy strict scrutiny. This argument, which is factually inaccurate and contrary to controlling case law, should be rejected.

Every court of appeals to consider this issue has found that § 248 does not, on its face, violate the First Amendment; the defendants cite no case law to the contrary. *See Norton*, 298 F.3d at 552; *Gregg*, 226 F.3d at 267; *Weslin*, 156 F.3d at 297; *Wilson*, 154 F.3d at 664; *Bird*, 124 F.3d at 683–84; *Terry*, 101 F.3d at 1418–1421; *Dinwiddie*, 76 F.3d at 923; *Soderna*, 82 F.3d at 1376; *Cheffer*, 55 F.3d at 1521–22; *American Life League, Inc.*, 47 F.3d at 648–52.

Nevertheless, the defendants assert that the FACE Act is unconstitutional as applied to them in this instance because they claim they were engaged in expressive conduct. Doc. 245 at 23; *see also* Doc. 240 at 13-14. Expressive conduct is a First Amendment activity, which all parties agree is subject to some level of constitutional protection. The defendants describe defendant Boyd's post on his Facebook page as "quintessential expressive conduct," along with other defendants' reading from the Bible, singing hymns, and praying throughout the events leading to the charges at issue. Doc. 245 at 23. Whether or not those activities constitute expressive conduct protected by the First Amendment is irrelevant to this case, as the defendants are charged not with praying or posting messages online, or with any other expressive conduct, but with physically obstructing access to a reproductive clinic. Neither on its face nor as-applied does § 248 prohibit the defendants from engaging in praying or social-media-posting activities. To the extent the

10

defendants assert that it would be unconstitutional for the government to use the defendants' First Amendment activities as evidence of the underlying crime – aiding and abetting one another in violating § 248 and conspiring to do the same – that argument is foreclosed by Supreme Court precedent. *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) ("The First Amendment…does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.").

Further, even if the FACE Act incidentally implicates protected expression, the Sixth Circuit has expressly held that it "does so in a content-neutral manner" and thus is subject to intermediate, not strict, scrutiny. *Norton*, 298 F.3d at 553. The Sixth Circuit has further held that the FACE Act "easily passes muster" under an intermediate scrutiny analysis, as it (1) furthers an important government interest unrelated to any incidental suppression of free expression – namely, the government interest in ensuring access to reproductive health services; (2) only "forbids physical interference with people going about their own lawful private business"; (3) specifically exempts protected First Amendment activity from its scope, and (4) leaves open "ample alternative means for communication." *Norton*, 298 F.3d at 553 (citing *Dinwiddie*, 76 F.3d at 924; *Terry*, 101 F.3d at 1420).

The defendants argue that the *Norton* content neutrality analysis is incorrect following the Supreme Court's decisions in *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), and *McCullen v. Coakley*, 573 U.S. 464 (2014). See Doc 245 at 25-29. These decisions, however, do not undermine the validity of the *Norton* decision; in fact, they confirm that *Norton* was correctly decided.

The defendants accurately cite *Reed* as explaining that a content-neutrality analysis requires a "crucial first step," which is "determining whether the law is content neutral on its face."

*Reed*, 576 U.S. at 165.  The *Reed* Court was not establishing a new step in the analysis, however; the Court was merely restating its own precedent dating years before *Norton* was decided.  *Id*. at 165-66 (collecting cases).  The *Norton* Court correctly applied this precedent and made an initial determination that § 248 is content neutral on its face, explaining that the Act prohibits interference with "all medical, surgical, counseling or referral services relating to the human reproductive system."  *Norton*, 298 F.3d at 553 (internal citations omitted).  Therefore, "the Act applies to anyone who violates its terms, regardless of ideology or message."  *Id*.

The defendants argue to the contrary, asserting that "ideology or message is an integral part of the calculus in determining whether the FACE Act applies to the conduct to the extent it informs . . . motivation for interfering with a person seeking or providing reproductive health services."  Doc. 245 at 26.  This is incorrect.  The intent required under § 248 is the intent to interfere with a person's right to obtain or provide reproductive health services; the reason a defendant intends to interfere with that right is irrelevant.  As the Sixth and Eighth Circuits explained, "the Act would prohibit striking employees from obstructing access to a clinic . . . even if the workers were carrying signs that said, 'We are underpaid!' rather than 'Abortion is wrong!'"  *Norton*, 298 F.3d at 553 (quoting *Dinwiddie*, 76 F.3d at 923).  Thus, *Norton* correctly determined that § 248 is facially content-neutral, and *Reed* does not require a contrary conclusion.

The defendants cite *McCullen* for the proposition that "a law is content based if enforcement authorities must 'examine the content of the message that is conveyed to determine whether a violation has occurred.'"  Doc. 245 at 25 (quoting *McCullen*, 573 U.S. at 479).  This does not change the holding in *Norton*, as an enforcement authority need not examine the content of a FACE Act violator's message to determine whether the violator was obstructing access to a reproductive health services facility.  In fact, the *McCullen* Court rejected an argument strikingly

12

similar to that made by the present defendants. There, the petitioners argued the statute in question was content-based because "virtually all speech" affected by the statute was "speech concerning abortion." *McCullen*, 573 U.S. at 479. The Court disagreed, explaining that "a facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics." *Id*. at 480. The same is true with respect to the FACE Act.

Thus, the FACE Act is neither facially unconstitutional under the First Amendment nor unconstitutional as applied to the defendants, and the motions to dismiss should be denied.

### III. THE FACE ACT DOES NOT VIOLATE THE RELIGIOUS FREEDOM RESTORATION ACT, OR THE FREE EXERCISE PROVISION OF THE FIRST AMENDMENT.

The defendants next assert that the indictment must be dismissed because the instant prosecution violates the Religious Freedom Restoration Act ("RFRA") and the Free Exercise Clause of the First Amendment. Both arguments should be rejected.

#### A. The FACE Act does not violate the RFRA as applied to the defendants.

RFRA provides that the Government may not "substantially burden a person's exercise of religion" unless it "demonstrates that the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000bb-1. The Defendants argue that the FACE Act charges constitute a "substantial burden" on their exercise of religion because it is "undisputed that Defendants' pro-life praying, singing, Bible reading, and counseling is religiously motivated." Doc. 245 at 32.

In rejecting an argument nearly identical to that of the defendants, the Eleventh Circuit explained that the FACE Act "leaves ample avenues open for [individuals] to express their deeply-held belief so long as this expression does not involve physical force, threats of such force, or

physical obstruction." *Cheffer*, 55 F.3d at 1522. Here, the FACE Act does not prohibit the defendants from praying, singing, Bible reading, or counseling. The FACE Act simply prohibits them from obstructing access to the Clinic and any other reproductive health services facility. Thus, as held in *Cheffer*, the FACE Act does not substantially burden the religious practices that the defendants have identified. *Cheffer*, 55 F.3d at 1522-23. If having an honestly-held religious motivation for committing a crime were enough to bring criminal conduct under the protection of RFRA, every criminal law (including those outlawing murder, kidnapping, "honor-killing," robbery, etc.) would be invalid when applied to a defendant acting upon sincere religious beliefs. There is no suggestion in any case law cited by the defendants – or any case law of which the government is aware – that would support such a conclusion.

Even if § 248 did burden the defendant's religious practice, courts have uniformly found that it would not violate RFRA because it furthers a compelling governmental interest through the least restrictive means. *Cheffer*, 55 F.3d at 1523; *American Life League, Inc.*, 47 F.3d at 655-56 (assuming the FACE Act imposed a "substantial burden" for purposes of RFRA analysis and finding that the FACE Act "serves sufficiently compelling governmental interests" and "is sufficiently narrow"); *United States v. Weslin*, 964 F. Supp. 83, 88 (W.D.N.Y. 1997) (agreeing with *American Life League* that the FACE Act does not violate RFRA), *aff'd*, 156 F.3d 292 (2d Cir. 1998); *United States v. Dinwiddie*, 885 F. Supp. 1286, 1289 (W.D. Mo. 1995), *aff'd and remanded*, 76 F.3d 913 (8th Cir. 1996) (summarily agreeing with other courts that FACE does not violate RFRA); *United States v. Brock*, 863 F. Supp. 851, 866-67 (E.D. Wis. 1994) ("FACE addresses governmental interests in preventing violence and ensuring access to reproductive health services. Those interests are compelling, and FACE is the least restrictive means of furthering them."), *aff'd sub nom. United States v. Soderna*, 82 F.3d 1370 (7th Cir. 1996). The Government

14

has a compelling interest in, among other things, preventing violence and physical obstruction, and preserving physical access to health care. *Id.* And, § 248 is narrowly tailored to address these specific interests: it prohibits only conduct involving force, threats of force, or obstruction that Congress found specifically to be a grave national problem. *Id.* Accordingly, the defendants' motion to dismiss on this ground must be denied.

### B. The FACE Act does not violate the Free Exercise Clause as applied to the defendants.

According to the Free Exercise Clause, "Congress shall make no law . . . prohibiting the free exercise of religion." U.S. Const. Amend. I. Essentially, it prohibits the Government from adopting laws designed to suppress religious beliefs or practice. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 521 (1993). Conversely, neutral, generally-applicable laws do not violate the Free Exercise Clause, "even if the law[s] ha[ve] an incidental effect on religious practice." *American Life League, Inc.*, 47 F.3d at 654 (4th Cir. 1995) (citing *Employment Div., Dept. of Human Resources v. Smith*, 494 U.S. 872, 878–79 (1990), *modified by Holt v. Hobbs*, 574 U.S. 352, 357 (2015) (explaining that Congress enacted the RFRA "in order to provide greater protection for religious exercise than is available under the First Amendment")); *c.f. Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) ("A law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated.").

The FACE Act is a generally applicable law that is neutral toward religion; it does not take religion into account in any way. *Cheffer*, 55 F.3d at 1522; *American Life League, Inc.*, 47 F.3d at 654. Whether a violator acts because of a deeply held religious conviction or a secular opinion makes no difference; the same conduct is prohibited under the Act. *Id.* The defendants argue that the FACE Act is not generally applicable, based on what they describe as a "radically lopsided

15

enforcement of FACE." Doc. 245 at 34. The law is clear, however, that the fact that "most of the individuals who are prosecuted under the [FACE] Act are abortion opponents is irrelevant because there is no disparate impact theory under the First Amendment." *Norton*, 298 F.3d at 553. In other words, "[a] group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Soderna*, 82 F.3d at 1376.

Because § 248 is a law of general applicability, it does not violate the First Amendment's Free Exercise Clause, and the defendants' motion to dismiss on this ground must be denied

## IV. THE UNITED STATES HAS ENGAGED IN NEITHER SELECTIVE PROSECUTION NOR VIEWPOINT DISCRIMINATION BY PROSECUTING THE DEFENDANTS UNDER 18 U.S.C. § 248, AND THE DEFENDANTS HAVE NOT MET THEIR BURDEN FOR DISMISSAL.

This Court should reject the defendants' argument that the United States has engaged in selective prosecution and viewpoint discrimination by bringing the present charges. *See* Doc. 245 at 4 – 17. The defendants have not met the requisite standard of proof with respect to either claim, and their motion on this ground should therefore be denied.

### A. The government has not engaged in selective prosecution.

In general, "[t]he Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). If a prosecutor "has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Id.* (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Nevertheless, prosecutorial discretion has its limits and "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* at 608.

Even to obtain discovery on a selective prosecution theory, a defendant must "make a credible showing of both discriminatory effect *and* discriminatory intent." *United States v.*

16

*Merriweather*, 728 F.App'x 498, 508 (6th Cir. 2018). Indeed, courts "have taken great pains to explain that the standard is a demanding one" and that there is "a background presumption that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 463-64 (internal citations omitted).

Because the "decision to prosecute is particularly ill-suited to judicial review," the standard for asserting such selective prosecution claims "is a demanding one." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). A defendant cannot succeed on a selective prosecution motion unless he meets his burden of proving, by *clear evidence*, that the prosecution at issue has *both* a discriminatory effect *and* a discriminatory purpose. *Id*. at 463-64; *see also Wayte*, 470 U.S. at 608-09; *Whitson v. United States*, 2022 WL 18232150 at \*5 (6th Cir. Dec. 13, 2022). Here, the defendants have proven neither element of their claim.

     1.  <u>The defendants have not presented clear evidence of discriminatory effect.</u>

In order to prove discriminatory effect for the purposes of a selective prosecution claim, the defendant must prove by "clear evidence" that otherwise "similarly situated individuals" who could have been charged "were not similarly prosecuted." *United States v. Edwards*, 783 F. App'x 540, 546 (6th Cir. 2019) (quoting *United States v. Jones*, 159 F.3d 969, 977 (6th Cir. 1998). The defendants present no actual evidence showing that the Department of Justice has elected not to prosecute pro-choice individuals similarly situated to the defendants. The initial "evidence" presented by the defendants is a blog post alleging that the Government has "refused to prosecute almost any of the more than 170 incidents of violence against pro-life pregnancy centers and churches nationwide in the wake of" the *Dobbs* decision. Doc. 245 at 9. However, the defendants fail to identify even a single incident in which an identified pro-choice individual can be proven to have violated § 248(a)(1) and was not investigated or prosecuted. *Armstrong*, 517 U.S. 456

(finding that the defendant failed to meet the threshold for discovery because although the study they relied on showed that all defendants charged in the district with a particular offense during the preceding year were Black, defendants nonetheless "failed to identify individuals who were not [B]lack and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted"); *Hedaithy*, 392 F.3d at 608 (news articles demonstrating that much more cheating occurred than was prosecuted did not demonstrate that "s*imilarly situated* persons were treated differently"). In fact, the defendants' base premise here is false; the government *has* prosecuted pro-choice defendants when the evidence has supported charges. *See, e.g.,* Two Additional Defendants Charged with Civil Rights Conspiracy Targeting Pregnancy Resource Centers (March 29, 2023), *available at* https://www.justice.gov/usao-mdfl/pr/two-additional-defendants-charged-civil-rights-conspiracy-targeting-pregnancy-resource.

The defendants then point to testimony by FBI Director Christopher Wray in which he stated that, since *Dobbs*, the Department of Justice has "indicted only two pro-abortion activists out of at least 81 estimated attacks against pro-live [sic] groups," and to a Department of Justice report indicating that it has "initiated eleven criminal prosecutions against pro-life defendants since 2020, but not a single one against a pro-abortion defendant." Doc. 245 at 9. Again, the defendants fail to identify any pro-choice individual responsible for an un-prosecuted incident, much less to explain how there is sufficient evidence to prove beyond a reasonable doubt that the unidentified person's actions violated § 248(a)(1).[2] The fact that the Department of Justice has initiated 11 criminal prosecutions against pro-life defendants since 2020 does not bolster the defendants'

---

[2] Further, given that many pro-life facilities are housed in churches or are otherwise connected to religious organizations, any charges in connection with those facilities may well be more appropriately brought under 18 U.S.C. § 247. The defendants acknowledge that Director Wray's testimony was specific to attacks against pro-life groups *not including churches*. Doc. 245 at 9. Thus, by presenting statistics regarding the number of prosecutions brought specifically under the FACE Act against pro-choice individuals and presenting statistics regarding prosecuted attacks on pro-life groups that exclude attacks on churches, the defendants do not accurately depict the total number of prosecutions DOJ has brought against pro-choice individuals.

18

argument, as it is well-recognized that members of a specific group "cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Terry*, 101 F.3d at 1420 (quoting *Soderna*, 82 F.3d at 1376).

The defendants have not presented clear evidence showing that the Department of Justice has failed to prosecute any similarly situated individuals of other groups.

2. <u>The defendants have not presented clear evidence of discriminatory purpose.</u>

The defendants attempt to demonstrate a discriminatory purpose primarily by citing to a Department of Justice press release announcing the formation of a Reproductive Rights Task Force. Doc. 245 at 11. However, the text of the press release quoted by the defendants explains that the purpose of the task force is not to selectively prosecute pro-life activists but rather to "identify ways to protect access to reproductive health care." Doc. 245 at 11.

The defendants also accuse Kristen Clarke, Assistant Attorney General for the Civil Rights Division, of bias in overseeing the Department's FACE Act prosecutions; however, they fail to present any evidence to support their claims. Rather, the defendants simply criticize another of the Department's task forces – the National Task Force on Violence Against Reproductive Health Care Providers – and state that AAG Clarke previously led this task force. Doc. 245 at 11. The defendants have therefore failed to meet their burden under the second prong of the analysis.

**B. The United States has not engaged in viewpoint discrimination, and the present charges do not constitute a vindictive prosecution.**

The defendants further claim that the present charges constitute a vindictive prosecution, pursued to retaliate against the defendants for exercising their free-speech rights to express a viewpoint the government does not condone. Doc. 245 at 12 – 17. To show vindictive prosecution, the defendants must show (1) the exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and (4) the intent to

19

punish the defendant for exercise of the protected right. *Davison v. United States*, 2022 WL 17572211 at *3 (6th Cir. June 7, 2022) (quoting *United States v. Meda*, 812 F.3d 502, 510 (6th Cir. 2015)).

The defendants assert that they were exercising their First Amendment rights at the time of the incident leading to the indictment, and that the government has engaged in unlawful viewpoint discrimination by prosecuting them for their conduct. Doc. 245 at 12 – 17. In support of this assertion, the defendants reiterate their previous argument with respect to selective prosecution – which, in sum, simply compares a number of prosecutions that the Department of Justice has brought against pro-life individuals under the FACE Act with a number of reported attacks on pregnancy resource centers, and broadly asserts that the mere existence of a discrepancy in numbers identified by the defendants indicates discriminatory intent.[3] Against this backdrop, the defendants have not made any of the four requisite showings.

As explained in further detail above,[4] the defendants are being prosecuted for the underlying criminal conduct that violated the FACE Act – namely, blocking the clinic doors – and are not being prosecuted for any of their purported religious or political views, or their expression of those personal views. The defendants may not, prior to trial, move to dismiss an indictment based on a disagreement with the facts alleged therein. *Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits."); *United States v. Palma*, 58 F.4th 246, 249 (6th Cir. 2023) ("Courts reviewing a

---

[3] The defendants do note with specificity that pro-choice activists involved in the group "Jane's Revenge" are responsible for attacks on anti-abortion facilities. However, as noted above, the Department of Justice *has* indicted individuals for targeting Florida pregnancy resource centers. *See* Sec. IV(A)(1). Further, the defendants do not analyze the merits of any prosecution under the FACE Act or any other federal statute. *See* Doc. 245 at 10, 14.

[4] *See* Section II.

motion to dismiss do not evaluate the evidence upon which the indictment is based."). If the defendants dispute that they were engaged in obstruction in violation of a federal criminal statute and believe that, instead, they were merely peacefully exercising their First Amendment rights to express disagreement with abortion, they will have an opportunity to present evidence to support their claim at trial.

To the extent the defendants maintain that even if they were engaged in criminal activities, their conduct is protected by the First Amendment, they are mistaken for the reasons explained above.[5] Courts of appeals to consider the issue unanimously agree that the FACE Act's prohibition on obstructive conduct does not violate the First Amendment. *See Norton*, 298 F.3d at 552; *Gregg*, 226 F.3d at 267; *Weslin*, 156 F.3d at 297; *Wilson*, 154 F.3d at 664; *Bird*, 124 F.3d at 683–84; *Terry*, 101 F.3d at 1418–1421; *Dinwiddie*, 76 F.3d at 923; *Soderna*, 82 F.3d at 1376; *Cheffer*, 55 F.3d at 1521–22; *American Life League, Inc.*, 47 F.3d at 648–52.

There is no evidence that the prosecution acted unreasonably in bringing charges based on the defendants' violation of the FACE Act. Thus, the defendants have not shown that the government has engaged in a vindictive prosecution, and the defendants are not entitled to dismissal of the indictment.

## V.   COUNT 1 CHARGES A CONSPIRACY TO VIOLATE A RIGHT, WELL-DEFINED BY FEDERAL STATUTE, THAT DOES NOT INTERFERE WITH THE DEFENDANTS' FIRST AMENDMENT RIGHTS; THUS, THE COUNT SHOULD NOT BE DISMISSED.

The defendants charged in Count 1 mount multiple challenges to the § 241 charge, all of which should be rejected for the reasons outlined below.

---

[5] *See* Section II.

### A. Count 1 Charges a Conspiracy to Violate a Well-Defined Statutory Right.

First, the Count 1 defendants argue that the § 241 charge should be dismissed because "after *Dobbs,* there are no civil rights at issue," and "any incidental effect defendants had on a federally protected right would not be sufficient to bring their alleged private conspiracy within the scope of 18 U.S.C. § 241." Doc. 245 at 42, 48.

The *Dobbs* decision has no bearing on the § 241 charge, as Count 1 does not charge any defendants with conspiring to violate any constitutional right discussed in or affected by the *Dobbs* decision. Rather, Count 1 charges those defendants with conspiring to violate a right established by the FACE Act itself – that is, the federal right to obtain and provide, and to seek to obtain and provide, available reproductive health services free from force, threats, and physical obstruction. *See* 18 U.S.C. § 248(c)(1).

Section 241 prohibits conspiring to "injure, oppress, threaten, or intimidate any person…in the free exercise or enjoyment of any right or privilege secured to him by the Constitution *or laws* of the United States, or because of his having so exercised the same." 18 U.S.C. § 241 (emphasis added). A right has been "secured" by the laws of the United States when the right has been "made specific either by the express terms of the federal constitution or laws or by decisions interpreting them." *United States v. Kozminski*, 487 U.S. 931, 941 (1988).

The civil provision of the FACE Act, 18 U.S.C. § 248(c)(1), creates such a specific right – the right to obtain and provide, and to seek to obtain and provide, available reproductive health services free from force, threats, or physical obstruction. That Congress intended the provision to establish an individual right is clear both from the text and legislative history of the statute. Federal rights created by federal statutes routinely form the basis of criminal civil rights prosecutions, and this case is no different. *See* 42 U.S.C. § 3631; *United States v. Johnson*, 390 U.S. 563, 566 (1968)

(finding that Section 201 of the Civil Rights Act of 1964 created a right enforceable under Section 241). Because the defendants were charged with conspiring to injure, oppress, threaten, and intimidate patients and employees of the Clinic in the free exercise and enjoyment of the right secured to them by the FACE Act – not a right secured to them by the Fourteenth Amendment – the *Dobbs* decision is irrelevant to this Court's jurisdiction over the § 241 charge.

Next, the defendants argue that the right to obtain and provide, and to seek to obtain and provide, reproductive health services "fails to provide the degree of specificity necessary for…Section 241." Doc. 245 at 46. The Supreme Court has explained that a statute is sufficiently specific to create an enforceable federal right so long as the right is not "so vague and amorphous that its enforcement would strain judicial competence." *Gonzaga University v. Doe*, 536 U.S. 273, 282 (2002) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)). The right established by § 248(c)(1) is neither vague nor amorphous. The statute clearly identifies the right that it creates – to be free from injury, intimidation, or interference by force, threat of force, or physical obstruction when obtaining or providing reproductive health services. It likewise clearly defines the terms involved. Further, given that § 248(c)(1) and its criminal counterpart have been the subject of court cases since the FACE Act's enactment in 1994, enforcing the right does not "strain judicial competence." Relatedly, as the Sixth Circuit has noted, every circuit court to address the argument that the FACE Act is impermissibly vague, such that it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, has rejected that argument. *Norton*, 298 F.3d at 553 (collecting cases). Here, too, the Count 1 defendants' argument should be rejected. And, contrary to their assertion, the conspiracy charged here did not have merely an "incidental effect" on a right protected against private interference. Instead, the indictment charges that the conspiracy was aimed specifically at obstructing access to a reproductive health services

23

facility. As explained above, this right is protected against private interference, and the defendants' attempt to analogize their case to *Bray v. Alexandria Women Health Clinic*, 506 U.S. 263 (1993) therefore fails. *See* Doc. 245 at 47.

### B. Count 1 Does not Violate the Defendants' First Amendment Rights.

Just as the defendants' argument that the FACE Act charge (Count 2) impermissibly violated their First Amendment rights is without merit, so too is the argument by the Count 1 defendants that the § 241 charge impermissibly violates their First Amendment right to freedom of expression.

The Count 1 defendants' argument is merely a restatement of their prior argument regarding the First Amendment's application to § 248. *See* Doc. 245 at 44. As explained above,[6] the FACE Act does not, on its face, regulate speech; to the extent it does implicate protected expression, the Sixth Circuit has held that it "does so in a content-neutral manner" and survives an intermediate scrutiny analysis. *Norton*, 298 F.3d at 552-53. Because the FACE Act forms the basis of the § 241 charge, the same analysis applies, and the motions to dismiss should be denied on this basis.

### C. The Count 1 Defendants' Religious Motivation Does Not Excuse or Negate Their Criminal Conduct.

The Count 1 defendants next argue that Count 1 should be dismissed because "only those driven by a corrupt motive may be prosecuted for conspiracy," and the Count 1 defendants assert that their own motives were "the antithesis of corrupt" because they were religious in nature. Doc. 245 at 46.

As the Supreme Court and multiple circuit courts have explained, however, the fact that a defendant acts in conformity with his or her religious beliefs when committing a crime does not

---

[6] *See* Section II.

allow the defendant to evade criminal responsibility for their conduct. *See Reynolds v. United States*, 98 U.S. 145, 167 (1878) ("when the offence consists of a positive act which is knowingly done, it would be dangerous to hold that the offender might escape punishment because he religiously believed the law which he had broken ought never to have been made."); *Gara v. United States*, 178 F.2d 38, 40 (6th Cir. 1949) (explaining, in upholding conviction for violating the Selective Service Act of 1948 "[t]he fact that appellant sincerely believed that it was his Christian duty to oppose registration does not absolve him from his violation of the statute."), *aff'd,* 340 U.S. 857 (1950), and *abrogated on statute of limitations grounds by Toussie v. United States*, 397 U.S. 112 (1970); *see also United States v. Kabat*, 797 F.2d 580, 589 n.10 (8th Cir. 1986) (upholding jury charge that "if one commits a crime under the belief, however sincere, that his conduct was religiously, politically or morally required, that is no defense to the commission of a crime."); *United States. v. Dougherty*, 473 F.2d 1113, 1137-38 & n.54 (D.C. Cir. 1972) (upholding instruction "the law does not recognize as a defense to either of these charges that the defendants were motivated to commit their acts by sincere political, religious or moral convictions or in obedience to some higher law."); *United States v. Moylan*, 417 F.2d 1002, 1009 (4th Cir. 1969) ("The defendants' motivation in the instant case – the fact that they engaged in a protest in the sincere belief that they were breaking the law in a good cause – cannot be acceptable legal defense or justification. Their sincerity is beyond question. It implies no disparagement of their idealism to say that society will not tolerate the means they chose to register their opposition….").

Therefore, the Count 1 defendants' argument that the indictment should be dismissed based on the religious motivation for their conduct stands in direct contrast to controlling case law and should be rejected.

### D. The Government's Charging Decisions Do Not Run Contrary to the Intent of Congress or Create a Risk of Disproportionate Penalties.

Lastly, the Count 1 defendants assert that the § 241 charge "conflicts with both the spirit and the letter of" the FACE Act, as "Congress could not have been clearer in its intention that first offense violations of FACE be charged as misdemeanors." Doc. 245 at 48. They also assert that the penalty they face as a result of the § 241 charge is "grossly disproportionate" to the penalty for the FACE Act violation charged in Count 2. Doc. 245 at 44. As the Sixth Circuit has explained, however, "prosecutorial discretion in deciding what charges to file in any given case cannot ordinarily be challenged." *United States v. Santos*, 612 F. App'x 376, 378 (6th Cir. 2015) (citing *United States v. Marshall*, 736 F.3d 492, 501 (6th Cir. 2013)). "Unless there is 'clear evidence to the contrary,' it is presumed that prosecutors discharge their duties properly." *Santos*, 612 F. App'x at 501. No such evidence has been presented here. Further, the § 241 charge was presented to a grand jury, which chose to indict the Count 1 defendants – indicating that it was not the prosecution alone who believed there was sufficient evidence to charge the defendants with both violating the FACE Act and conspiring to do the same. The Count 1 defendants' arguments are therefore unavailing.

### Conclusion

For the foregoing reasons, the Government requests that this Court deny the Motions to Dismiss.

Respectfully submitted,

HENRY C. LEVENTIS
UNITED STATES ATTORNEY

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay H. Patel*
SANJAY H. PATEL
Trial Attorney
Criminal Section
Civil Rights Division
4 Constitution Square
150 M St. NE, 7.121
Washington, D.C. 20530
Email: Sanjay.Patel@usdoj.gov

Amanda J. Klopf
Assistant United States Attorney
719 Church St., Suite 3300
Nashville, Tennessee 37203

## **CERTIFICATE OF SERVICE**

SANJAY H. PATEL, attorney for the United States, hereby certifies that a true and correct copy of the motion has been electronically filed and accordingly served upon attorney for the defendant.

DATE: April 10, 2023                                    */s/ Sanjay H. Patel*
                                                         Sanjay H. Patel