UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 3:22-CR-00327-2 |
| | ) | JUDGE TRAUGER |
| HEATHER IDONI | ) | |

## MOTION TO EXCLUDE PREJUDICAL EVIDENCE PURSUANT TO F.R.E. 403 AND EVIDENCE OF PRIOR BAD ACTS PURSUANT TO F.R.E. 404(b) and MEMORANDUM OF LAW

Comes now the defendant, HEATHER IDONI, by and through counsel of record, William J. Conway, and moves this Honorable Court to exclude the introduction of evidence in the Government's case in chief regarding various other "prior bad act" evidence that are not the subject of the above indictment.

Specifically, Ms. Idoni was noticed by the Government in a letter dated November 29th, 2022, that it intended to use, if permitted by the Court, several prior acts by Ms. Idoni that the Government believed fell under the purview of F.R.E. 404(b). The Government subsequently provided defense counsel with two additional prior acts by codefendants that the Government believed fell under the scope of 404(b) in a follow up notice on October 5th, 2023 to all defendants. The Government intends to demonstrate that the combination of these acts with the current case demonstrate the "defendant's motive, opportunity, intent, preparation, plan, knowledge absence of mistake, modus operandi, and lack of accident." The prior acts the Government intends to use are as follows:

1. 2017 Civil FACE Act Case in Louisville, Kentucky: Calvin Zastrow, Dennis Green, Eva Edl, Eva Zastrow, James Zastrow. **Notably, Ms. Idoni was not a part of this act.**

2. August 27, 2020 Sterling Heights, Michigan (23-cr-20100): **Heather Idoni**, Calvin Zastrow, Coleman Boyd, Eva Edl, and Eva Zastrow. The case is pending trial for April 11,

2024, and alleges Ms. Idoni and others were involved in a "blockade" at the clinic. The government has indicated it seeks to introduce evidence about the planning and execution of this "blockade."

3. October 2020, Washington D.C. (22-cr-96): **Heather Idoni.** In *United States v. Handy*, Ms. Idoni and others were charged with violating 18 U.S. § 248(c), the Freedom of Access to Clinics Entrances (F.A.C.E) Act. At this clinic, participants used ropes, chains, and bicycle locks to bind themselves and block the doors of the clinic. Codefendant, Eva Zastrow was present at the blockade, as well as Caroline Davis, who is now a government witness and testified against the other defendants in a jury trial. Ultimately, Ms. Idoni and others were found guilty of violating the FACE Act "by use of force" after a jury trial. (See attached Verdict Form). **Notably, there is no "use of force" alleged in the instant case**.

4. January 15, 2021, Little Rock Arkansas: Chester Gallagher, **Heather Idoni**, Calvin Zastrow, Dennis Green, and Eva Edl. Ms. Idoni and others participated in a protest of another clinic, where they were convicted with criminal trespass for standing outside clinic doorways.

5. April 16, 2021, Saginaw, Michigan (23-cr-20100): **Heather Idoni** and Eva Edl. Here, Ms. Idoni is accused of chaining herself to a clinic door to again create a "blockade." The alleged purpose here was to block patients from obtaining services and the clinic from providing services. Importantly, none of the defendants in the instant case are alleged to have used any sort of chain or locking mechanisms. However, the government seeks to dampen the factual prejudices by suggesting they are introducing the evidence as to the plan and execution of this "blockade."

6. January 27, 2022, Fort Meyers, Florida: Chester Gallagher, Calvin Zastrow, and Eva Zastrow. The participants stood outside of the entry of a clinic here and were charged with criminal trespass when they refused to move. **Notably, Heather Idoni was not present at this incident.**

In addition to these specific incidents, the Government's notice stated "we reserve the right to supplement this letter with additional information" indicating that it is possible that the Government could supplement its notice with additional acts, however no further notice has been provided.

Ms. Idoni asserts that under an analysis based on either F.R.E. 403 or 404(b), this evidence should be excluded from the Government's case in chief because no appropriate purpose exists for the admission of the evidence and the probative value is substantially outweighed by the danger of unfair prejudice, especially given the allegations in the indictment and the similarity of the other acts and the charged offenses in this indictment. Ms. Idoni offers the following argument in support of her position for the exclusion of this evidence.

### MS. IDONI ATTRIBUTES AND INCORPORATES THE ARGUMENTS FOUND IN DEFENDANT GREEN AND GALLAGHER MOTION'S TO EXCLUDE DEs #330 and 331

Federal Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence". F.R.E. 403, and its prejudice versus probative analysis, is interwoven with an analysis of F.R.E. 404(b). Counsel would submit to the court that due to the similarities and unique differences of these incidents that a 403 prejudicial analysis should be deferential weight over the consideration of any 404 evidence.

Federal Rule of Evidence 404(b) states that, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character". In addition to this restriction, however, is the caveat that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." When determining the admissibility of Rule 404(b) evidence, the district court must employ a three-step process in order to decide if:

(1) the "other act" actually occurred,

(2) the evidence is offered for a permissible purpose, and

(3) its probative value is not substantially outweighed by unfair prejudice.

*United States v. De Oleo,* 697 F.3d 338, 343 (6th Cir. 2012); see *United States v. Clay*, 667 F.3d 689, 696 (6th Cir. 2012); see also *United States v. Mack,* 258 F.3d 548, 553 (6th Cir. 2001) (The Court shall conduct a Rule 403 balancing to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice or the other concerns embodied by Rule 403). "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

In the case at bar, Ms. Idoni first asserts that the Government does not have a legitimate, alternate purpose other than the character or propensity of Ms. Idoni for attempting to introduce any of these other acts that it has noted in its most recent October 5th, 2023, notice to all defendants. Rule 404(b) provides numerous possible reasons for introducing such evidence other than mere propensity, however, the Court should be cognizant that the Government may only introduce evidence for one of those other purposes if a defendant "has placed, or conceivably will

place, in issue". *United States v. Bell,* 516 F.3d 432, 442 (6th Cir. 2008). In order to determine whether there is another legitimate purpose, the Court must engage in a three-part inquiry regarding the proffered evidence. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Rayborn,* 495 F. 3d 328, 342 (6th Cir. 2007) (quoting *United States v. Jenkins,* 345 F.3d 928, 937 (6th Cir. 2003)).

Any court handling this issue should bear in mind the admonition that "[w]hen prior acts evidence is introduced, regardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered: to suggest that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.'" *United States v. Johnson,* 27 F.3d 1186, 1193 (6th Cir. 1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995). Though the Court, after admission of such evidence, may attempt to insulate its effects through a limiting instruction, it is recognized that such an instruction is not "a sure-fire panacea for the prejudice resulting from needless admission of such evidence." *United States v. Haywood,* 280 F.3d 715, 724 (6th Cir. 2002). The Sixth Circuit is cognizant of the difficulty juries have with differentiating an alternate purpose for prior acts and the natural inclination to deem it evidence of the defendant's propensity to commit similar or other criminal offenses. See *United States v. Hardy,* 643 F.3d 143, 161 (6th Cir. 2011) (Cole, J., dissenting) (stating that "empirical studies confirm that 'juries treat prior bad acts evidence as highly probative of the charged crime' ") (quoting *United States v. Amaya–Manzanares,* 377 F.3d 39, 49 (1st Cir. 2004) (Torruella, J., dissenting)); see also Abraham P. Ordover, *Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a),* 38 Emory L.J. 135, 175–78 (1989).

Importantly, when evaluating prior acts evidence, the court should also consider whether there are alternate sources of evidence that may serve to prove the same facts that the prior acts evidence attempts to support or demonstrate. See *Haywood,* 280 F.3d at 723; see also *United States v. Merriweather,* 78 F.3d 1070, 1077 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof."). Defense counsel would submit and offer that this may be one of the more unique cases that come before this court, whereupon the defendants film themselves committing the alleged and indicted offense. Then, or more accurately described as livestreamed and stored these videos, posted them to multiple public social media accounts. In addition to the multiple defendant filmed accounts of the entire incident, the government possesses police body cam videos, Facebook messenger chats, hotel reservations, clinic patient and staff testimony, law enforcement testimony, as well as the testimony of co defendant, Caroline Davis, who has already testified against Ms. Idoni in a previous jury trial on FACE violations. Given the vast amount of evidence provided in discovery, it is difficult to see a situation whereupon this is not cumulative as to Ms. Idoni as well as highly prejudicial.

### I.     404(b)

With these instructions in mind, the Court must make several determinations before the Government is permitted to use this evidence against Ms. Idoni at trial, namely, did the act occur, is there a legitimate alternate purpose, and whether the probative value outweighs the danger of unfair prejudice. Ms. Idoni concedes that several of the acts that she has received notice of did occur. However, she asserts that the Government has no legitimate alternate purpose in introducing those acts in a trial on this indictment and, regardless of the Court's determination of that issue, the danger of unfair prejudice outweighs the probative value.

### a. Alternate Purpose

In its notice to Ms. Idoni from November 29th, 2022, the Government lists eight different possible alternate purposes for the introduction of this evidence stating that the evidence will be relevant to the "motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, modus operandi, and lack of accident" of Ms. Idoni and her co-defendants. Most of these are duplicative and fall into either the category that they demonstrate Ms. Idoni's intent (motive, intent, opportunity, lack of mistake, lack of accident) to commit the instant offense or her planning to commit the instant offense (modus operandi, plan, knowledge, preparation), or both. Case law dealing with the intent to violate the F.A.C.E Act is non-existent but the Sixth Circuit case law surrounding the admissibility of prior drug sales of a defendant indicted for further drug sales is instructive on this issue.

### i. Failure to Demonstrate Intent, Motive, Opportunity, Lack of Mistake or Lack of Accident

As a threshold, the case law seems clear. Evidence of conviction for prior drug sales by a defendant has been permitted as a means of disproving lack of intent. *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994) However, the issue is more nuanced and more is required than mere convictions for prior drug sales. "The only way to reach the conclusion that the person currently has the intent to possess and distribute based solely on evidence of *unrelated* prior convictions for drug distribution is by employing the very kind of reasoning - i.e., once a drug dealer, always a drug dealer - which 404(b) excludes." *Bell*, 516 F.3d at 444. (emphasis in original). "[I]n drug-distribution cases, this Circuit has 'only found . . . [past distribution] evidence probative of present intent . . . when the prior [acts] were part of the same scheme or involved a similar modus operandi as the present offense.'" *United States v. Alkufi*, 636 F. App'x 323, 332 (6th Cir. 2016) (quoting *United States v. Carter*, 779 F. 3d 623, 627 (6th Cir. 2015)). "Thus, to be probative of a defendant's

present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial." *Bell*, 516 F.3d at 444.

Accepting that the treatment of a common offense with that of this uncommon one is analogous, this Court must find more than Ms. Idoni's conduct is similar to the present content and, therefore, demonstrates her intent, motive, opportunity, to commit the charged offenses, or his lack of accident and/or mistake in perpetrating the charged offenses. The Government must be required to demonstrate to the Court why a situation that involved similar conduct in another jurisdiction is "related in some way to the present crime" of violating the F.A.C.E. Act in Tennessee in 2021. The Government cannot and they fail to meet one of the F.R.E. 404(b) prongs for this reason.

### ii. Failure to Demonstrate Plan, Preparation, Knowledge, or *Modus Operandi*

The Government cannot demonstrate that any of these alternate purposes in the second category are properly raised in Ms. Idoni's case either. In cases relating to these exceptions, the Sixth Circuit has permitted the admission of other acts evidence to demonstrate how and where a defendant obtained items used in the charged offense as a form of planning or preparation to perpetrate the charged offense(s). See *United States v. Hembree*, 312 Fed.Appx. 720, 724 (6th Cir. 2008). Similarly, F.R.E. 404(b) allows the introduction of other acts evidence to prove the identity of the defendant but only if these acts "are 'of sufficient distinctive similarity' with the charges in the indictment to 'create a pattern or *modus operandi*.'" *United States v. Allen*, 619 F.3d 518, 524 (6th Cir. 2010) (quoting *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006)) (affirming admission of other acts evidence that established a distinctive "signature") Learned treatises on the subject of the "knowledge" exception in F.R.E. 404(b)(2) noted that it is a limited exception and is frequently used, for example, to demonstrate whether a defendant knows the risk of behaving in a certain way in order for the Government to demonstrate recklessness, whether a defendant is

aware that a statement is false in order for the Government to show scienter on the defendant's part, or to prove that the defendant knows how to do something requiring specialized knowledge. See, e.g., Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:34 (2012).

However, none of these scenarios are applicable to Ms. Idoni's case. The prior acts the Government proposes to introduce do not demonstrate that she had specialized knowledge of any issue relating to the case or that she knew a statement to be false. Likewise, while the act of blockading clinics is similar in kind, it is dissimilar in implementation. It is inaccurate to describe these other acts and the charged conduct to be so similar that they constitute a *modus operandi* that would allow this exception under F.R.E. 404(b). Nothing relating to these prior acts indicate a preparation or planning on Ms. Idoni's part for the charged conduct in the Middle District of Tennessee, nor do they show how any of those acts were used to further or advance the alleged criminal acts in the Tennessee. Furthermore, some of these acts differ tremendously from the instant case because those "blockades" were accomplished by actually blocking the doorways with bodies, chains and bike locks. For these reasons, the Government has not established that any of the exceptions in this category would be appropriate alternate purposes, other than propensity, for the introduction of the other acts. The Government fails, under this set of possible exceptions, to demonstrate to the Court an appropriate alternate purpose and fails to meet the requisite prongs of the analysis.

### iii. Background Evidence

Though the Government has not argued that this is necessary as background evidence, it conceivably will do so. This exception to the general prohibition on propensity evidence is a limited one.

> Background evidence is a narrow category of evidence that typically provides context for the jury, either because it is directly probative, acts as a prelude to the offense or arises from the same events, forms an integral part of a witness's testimony, or completes the story of the offense.

*United States v. De Oleo*, 697 F.3d 338, 344 (6th Cir. 2012); citing *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (admitting evidence under Rule 404(b) that "completes the story of [ ] the charged offense"); see also *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (Evidence of *res gestae*, or background evidence, may be admissible in limited circumstances when the evidence includes conduct that is "inextricably intertwined" with the charged offense.) The Government cannot demonstrate how or why inclusion of either of these acts by Ms. Idoni would provide necessary context for the jury as to the alleged acts in the Middle District of Tennessee. The Court should not admit this on this limited basis either.

### b. Danger of Unfair Prejudice

As noted above, the most important consideration in the instant case is the danger of unfair prejudice. The Court should exclude the evidence based on a F.R.E. 403 analysis of this issue. Though F.R.E. 403 provides other reasons for excluding evidence if the probative value is substantially outweighed by various "dangers", and the presentation of the proposed evidence debatably may lead to confusing or misleading the jury as well as time wasting and undue delay, the primary danger to Ms. Idoni from this evidence is that it creates significant unfair prejudice. Consequently, the F.R.E. 404(b) analysis required by *De Oleo* and the F.R.E. 403 analysis will be the same. The Court must consider the probative value of the offered evidence in conjunction with the danger of unfair prejudice to Ms. Idoni. While the other acts relating to other reproductive health care centers may be probative of her conduct in the instant indictment, the

danger of unfair prejudice substantially outweighs this probative value of the testimony to the Government.

While the term "unfair prejudice" is difficult to define simply, the United States Supreme Court has stated the "term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Old Chief* 519 U.S. 172, 180, 117 S.Ct. 644 (1997). The Supreme Court further opined that "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the latter bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)" is a risk that always remains at the core of the equation once such evidence is admitted. *Id.* at 180-81, 117 S.Ct. 644.

In Ms. Idoni's case, this is precisely what the finder of fact will do and precisely the reason that such information should be excluded from the jury's consideration for any reason. It is simply too difficult to ask a finder of fact to consider evidence of Ms. Idoni's prior conduct in relation to the blockading of reproductive health centers and then fairly determine about her alleged conduct in this indictment. Based on the Government's discovery disclosures and other evidence available to the defense, Ms. Idoni's jury will hear allegations that she and her co-defendants agreed to meet in Mount Juliet, Tennessee, at a reproductive health care clinic and then did so. While there, she and her group went inside the facility and stayed in the hallway of the clinic for between one and two hours singing hymns and listening to various members preach about her group's belief that the work of the clinic in performing abortions was unlawful based on the Bible and Scripture.

If the jury hears, however, that she has previously engaged in the blockade of other reproductive health centers in the past, the finder of fact would have an extremely difficult time,

even with the proper instruction from the Court that would no doubt be forthcoming, limiting its consideration of such evidence only to alternate purpose alleged and not form an opinion as to Ms. Idoni's potential propensity to have committed the charged offenses. Furthermore, a jury hearing that Ms. Idoni has previously been convicted or charged with using force, or chains and bike locks to block other healthcare clinics will no doubt cause a rational trier of fact to presume her peaceful First Amendment protest in the instant case was directly intended to block access to the clinic, as she has done in prior occasions. The resulting prejudice substantially outweighs any benefit the Government derives from the admission of this evidence. It must be excluded under a F.R.E 403 analysis.

Ms. Idoni would note for the Court, again as above, that a critical factor to consider in this case in particular, as the *Haywood* and *Merriweather* courts instruct, is the availability of alternate sources of proof that the Government has. The Government's discovery indicates that it possesses considerable means of making a factual case and Ms. Idoni and her co-defendants without resorting to the need to introduce prior acts, including but not limited to; Facebook messages alleged to plan this event, hotel reservations, police bodycam, multiple co-defendant's Facebook livestreams of the entire incident, Carafem patient and employee testimony, and now a co-defendant turned Government witness, Caroline Davis. This fact coupled with the recognition by the Supreme Court in *Johnson* that juries very often fail to differentiate between an alternate purpose and propensity and will reach the impermissible conclusion that Ms. Idoni committed similar acts in the past so she must have done so here makes the danger of unfair prejudice substantially greater than any probative value of the evidence for the Government. For this reason as well, the Court should exclude these prior acts to insure Ms. Idoni's right to a fair trial.

### c. The Government's "Proposed Acts" not involving Ms. Idoni could result in "Spillover" depriving Ms. Idoni of a Fair Trial

Ms. Idoni is only a party in four of the six proposed other acts, and the unrelated acts could spillover into Ms. Idoni's trial. Allowing the government to tie all of the groups actions together would deprive Ms. Idoni of a fair trial. Also, the proposed other acts that Ms. Idoni was present for are factually different and unrelated to the events at Mt. Juliet Carafem, as discussed above.

Spillover occurs when a jury is unable to compartmentalize evidence against each individual defendant. *See United States v. Causey,* 834 F.2d 1277, 1287. Federal Rule of Evidence 402 states that "Evidence which is not relevant is not admissible."

Neither the 2017 civil case in Louisville, Kentucky nor the 2022 Fort Meyers, Florida criminal trespass case concern or involve Ms. Idoni. There is no reason for this discovery to be admissible to Ms. Idoni as it is not relevant. More likely, the admission of the other acts would lead to spillover and prejudice Ms. Idoni's trial.

### **CONCLUSION**

For these reasons, Ms. Idoni argues that the Government has no alternate purpose in introducing these Other Acts other than improper propensity and/or character evidence. Additionally, and more importantly, the unfair prejudice that introduction of this evidence engenders will substantially outweigh any possible probative value that it may have for the Government. For this additional reason, this Honorable Court should prohibit the Government from introducing any evidence of Ms. Idoni's prior conduct that is proposed in the Government's notice above referenced. Ms. Idoni prays that this Court will issue an Order restricting the Government from any line of questioning that will touch on these issues of Other Acts evidence referenced above for the aforementioned reasons.

Respectfully submitted,


s/ *William J. Conway*
William J. Conway, #26808
Attorney for Heather Idoni
214 2nd Ave. North, Suite 208
Nashville, TN 37201
615-260-5363


## CERTIFICATE OF SERVICE

I do hereby certify that on this the 27th day of October, 2023, a true and exact copy of the foregoing Notice has been delivered, via the Court's electronic filing system to Ms. Amanda Klopf of the United States Attorney's Office, US Courthouse, 110 Ninth Avenue South, Suite 961-A, Nashville, TN 37203.

/s *William J. Conway*
William J. Conway