IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:22-cr-00327 |
| v. | ) | |
| | ) | |
| | ) | |
| [1] CHESTER GALLAGHER | ) | |
| [2] HEATHER IDONI | ) | |
| [3] CALVIN ZASTROW | ) | |
| [4] COLEMAN BOYD | ) | |
| [6] PAUL VAUGHN | ) | |
| [7] DENNIS GREEN | ) | |

**Government's Response to Motions to Exclude Other Acts Evidence**

Comes now the United States of America, by and through undersigned counsel, and files this response to the defendants' motions to exclude evidence of other acts (D.E. 330, 331, 333, 336, 337, and 338). In their motions, the defendants argue that the government's proffered other acts evidence is not intrinsic to the charged offenses, that it is inadmissible under Fed. R. Evid. 404(b), that it is inadmissible under Fed. R. Evid. 403, that it will prejudicially spill over to codefendants who were not involved in the other acts, and that the admission of other act evidence pertaining to alleged criminal acts in Michigan involving Chester Gallagher, Heather Idoni, and Calvin Zastrow, for which all three defendants are presently facing federal charges, will unfairly limit their ability to testify in this case.

For the reasons that follow, one of the proffered other acts is deeply intrinsic to the conspiracy charged in this case; the remaining other acts highly probative of motive, intent, and association, all non-propensity bases for admission of the evidence; the evidence will not be even slightly more prejudicial than probative, much less substantially; the defendants' spillover

arguments are made in the absence of standing to move for exclusion under Fed. R. Evid. 404(b) and are properly raised under a future motion to sever after the Court decides the instant motions; and the admission of other acts evidence pertaining to charged offenses in Michigan will have no impact on a defendant's ability to testify in this case, absent a decision by the defendant to testify on direct examination about such matters. Accordingly, the three proffered other acts detailed below should be admitted over the defendants' objections.

## I. Statement of the Charges

The evidence in this case will show that on March 5, 2021, the defendants, aiding and abetting each other, intentionally blockaded a reproductive health clinic in Mt. Juliet, Tennessee, effectively trapping three employees inside the clinic, and preventing several patients from receiving reproductive health care from the clinic, in violation of the Freedom of Access to Clinic Entrances (FACE) Act. The evidence will also show that a conspiracy to conduct this blockade began between the defendants on or about February 10, 2021.

## II. Summary of Expected Trial Presentation

In making its decisions about what evidence to notice pursuant to Fed. R. Evid. 404(b)(3), the government focused on maximizing probative value and minimizing the burden upon the Court and the jury by generally selecting incidents involving more than one defendant and where the evidence can be presented through an already testifying coconspirator and through the straightforward introduction of videos and/or conviction records.[1] Keeping with this approach and given the recent severance of defendants Eva Zastrow, James Zastrow, Eva Edl, and Paul Place

---

[1] The government is open to entering into stipulations to streamline the presentation of evidence pertaining to the proffered other acts.

from this case, the government has further narrowed its proffered other acts evidence to the following three events.

*The Sterling Heights Blockade*: On August 27, 2020, Chester Gallagher, Heather Idoni, Coleman Boyd, Calvin Zastrow, Caroline Davis and others were involved in the planning of a blockade of a facility that provided reproductive health services in Sterling Heights, Michigan. The blockaders used their bodies to physically block the entrance to the clinic. Their stated purpose for the blockade was to prevent patients from receiving, and clinicians from providing, a type of reproductive health services. The incident was livestreamed on social media. Chester Gallagher, Heather Idoni, and Calvin Zastrow are under indictment for this incident in *U.S. v. Zastrow, et al.*, 23-cr-20100 (EDMI). Caroline Davis, who recently pleaded guilty in this case, was also charged in *U.S. v. Zastrow, et al.*, and has recently pleaded guilty in that matter as well.

*The Little Rock Blockade*: On January 15, 2021, Chester Gallagher, Calvin Zastrow, Dennis Green, Heather Idoni, and others were involved in the blockade of a facility that provided reproductive health services in Little Rock, Arkansas, and were convicted of trespass in state court.

*The Fort Myers Blockade*: On January 27, 2022, Chester Gallagher, Calvin Zastrow, and others were involved in the blockade of a facility that provided reproductive health services in Fort Myers, Florida. During the blockade, they, along with others, trespassed into and disrupted the clinic's operations to prevent patients and providers from exercising their reproductive health care rights, using their bodies to physically blockade two entrances to the clinic. On June 15, 2023, Gallagher and Zastrow were convicted of trespass in state court.[2]

---

[2] While the government is abandoning its intention to use the additional noticed other acts evidence in its case-in-chief, it respectfully reserves the right to use the evidence in its cross examination of any defendant, should the door be opened or the evidence be otherwise admissible, such as pursuant to Fed. R. Evid. 609(a).

### III. The Proffered Evidence of the August 27, 2020, Blockade in Sterling Heights, Michigan is Intrinsic to the Conspiracy

Former co-defendant Caroline Davis is expected to testify at trial to a continuing conspiracy amongst the defendants to engage in blockades in violation of the FACE Act. This testimony is expected to include details about the planning and execution of the Sterling Heights, Michigan blockade and is *intrinsic* to Davis's story about how she participated in that blockade and later came to be involved in the conspiracy and blockade charged in this case. Davis has pleaded guilty to conspiring to violate the FACE Act and violating the FACE Act for her participation in the Sterling Heights blockade.

The Sixth Circuit has long recognized that evidence of conduct not specifically charged in an indictment is admissible if it is "inextricably intertwined with [a] charged offense," "the telling of which is necessary to complete the story of the charged offense." *United States v. Brown,* 888 F.3d 829, 836 (6th Cir. 2018); *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000); *see also United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). Such evidence—often called "intrinsic evidence," "*res gestae*," or "background evidence"—relates to acts that "ha[ve] a causal, temporal or spatial connection with the charged offense," *Hardy*, 228 F.3d at 748, and thus form "part of a single criminal episode," *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Intrinsic evidence is properly admitted in circumstances where it "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Hardy*, 228 F.3d at 748; *see United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018); *Churn*, 800 F.3d at 779. Intrinsic evidence "does not implicate" the limitations on other-crimes evidence set forth in Rule 404(b), which applies to "*extrinsic* acts . . . that occurred at different times and under different circumstances from the offense charged." *Churn*, 800 F.3d at 779 (emphasis added;

4

quotation marks omitted); *see also United States v. Lockhart*, 844 F.3d 501, 512 (5th Cir. 2016) ("If the evidence is intrinsic, it is not *other* bad acts evidence at all, but rather additional facts surrounding the charge at issue.").

The intrinsic-evidence rule ensures that "prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015). As the Supreme Court has recognized, the government must be allowed to satisfy the jurors' expectations about what proper proof should be, including by telling the complete story of a crime through evidence that "not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Old Chief v. United States*, 519 U.S. 172, 187-188 (1997).

This well-established principle applies with particular force in cases, such as this, that involve a conspiracy. "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). Moreover, where evidence of the defendants' acts is either inextricably intertwined with the charged conspiracy, or provide evidence of the conspiracy itself, it is admissible without Rule 404(b) analysis, even if those acts fall outside the period during which the indictment alleges the conspiracy existed. *See United States v. Diaz*, 878 F.2d 608, 614-16 & n.2 (2nd Cir. 1989) (crimes, wrongs or acts occurring before alleged inception date of conspiracy were relevant and admissible in drug conspiracy prosecution and did not raise Rule 404(b) issues); *United States v. Bates*, 600 F. 2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior).

5

Case 3:22-cr-00327  Document 346  Filed 11/13/23  Page 5 of 14 PageID #: 1225

Because Caroline Davis is expected to testify about her participation in a conspiracy to violate the FACE Act, a conspiracy which involved her participation and the participation of the specified defendants in the Sterling Heights blockade and in the instant case, her testimony about these other acts is intrinsic to the charged offenses, integral to the narrative of her testimony, and not subject to Fed. R. Evid. 404(b).

### IV. The Proffered Evidence is Admissible Pursuant to Fed. R. Evid. 404(b)

Even if the Court concludes that evidence concerning the Sterling Heights blockade is not intrinsic, it, along with evidence concerning the Little Rock and Fort Myers blockades, are all admissible under Fed. R. Evid. 404(b), specifically as evidence to establish intent, motive, and codefendant associations to commit the charged offenses.

In the Sixth Circuit, courts utilize a three-step process to determine if Rule 404(b) evidence is admissible, inquiring whether: (i) sufficient evidence exists that other acts took place; (ii) the other acts are admissible for a proper purpose under Rule 404(b); and (iii) the probative value of the evidence is not substantially outweighed by any prejudicial effect. *United States v. Davis*, 415 F. App'x 709, 713 (6th Cir. 2011) (citing *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004)). "Rule 404(b) is an inclusionary, rather than exclusionary, rule." *See, e.g.*, *United States v. Lattner*, 385 F.3d 947, 956 (6th Cir. 2004); *see also United States v. Trujillo*, 376 F.3d 593, 605–06 (6th Cir. 2004). The Rule allows the government to introduce evidence of "other crimes, wrongs, or acts" committed by the defendant so long as the evidence is not used merely to show propensity and if it "bears upon a relevant issue in the case." *Hardy*, 228 F.3d at 750. As an initial matter, it seems there is no debate that sufficient evidence exists, in the form of video, plea agreements, convictions, and witness testimony, that these other acts occurred. The evidence the

government seeks to admit is offered for the permissible purposes: proof of intent, motive, and evidence of association.

The defendants' intent and motive are essential and material elements that the government must prove beyond a reasonable doubt, and the Sixth Circuit has consistently held that 404(b) evidence is admissible to prove them. *See Trujillo*, 376 F.3d at 605-06; *United States v. Myers*, 123 F.3d 350, 362–63 (6th Cir. 1997); *United States v. Crosgrove*, 637 F.3d 646, 659 (6th Cir. 2011); *United States v. Merriweather*, 78 F.3d 1070, 1078 (6th Cir. 1996). Importantly, "[t]o be probative of intent, the prior act need not 'be identical in every detail' to the charged offense" and "lack of criminal intent" need not be raised as a defense. *See United States v. Thompson*, 690 F. App'x 302, 308 (6th Cir. 2017) (citation omitted).

The defendants are charged in Count Two with committing a FACE Act offense, in violation of 18 U.S.C. § 248(a)(1). The elements of § 248(a)(1) are as follows: 1) the defendant used force, threat of force, or physical obstruction; 2) the defendant intentionally injured, intimidated, or interfered with the victim, or attempted to do so; and 3) the defendant acted because the victim was obtaining or providing reproductive health services. For the government to meet the burden of proof required to establish any defendant's guilt, it must show that the defendant had the requisite intent to intimidate or interfere with a patient or clinic worker; and the motivation to act because the patient was receiving, or the clinic worker was providing, reproductive health services. Here, all three of the proffered other acts involved a blockade where more than one of the defendants sought to interfere with patients and providers because the patient or provider was exercising their reproductive health care rights. The other acts were motivated by the respective defendants' strongly held beliefs on reproductive healthcare and are evidence of the defendants' intent and motive to blockade the clinic in the instant case.

7

Additionally, the government anticipates the defendants may claim that they were engaged in First Amendment protected activity, and that their collective decision to blockade the clinic was instead happenstance based upon their coincidental presence at the scene. Should any defendant pursue this defense, the other acts evidence will be highly material to the government's proof of that defendant's motive, which was to use a physical obstruction to prevent patients from obtaining, and clinic staff from providing, reproductive health services. To forbid introduction of the other acts would create a factual gap that may undermine a persuasive presentation of the evidence to the jury. Put another way, by providing the jury with other acts evidence that establishes the defendant's intent and motive for committing the charged offenses, it provides context for what could otherwise appear to be an incident of lawful activism turned into an unwitting blockade.

The other acts committed by the respective defendants, therefore, are probative of that defendant's intent and motive in committing the charged offenses, and rebutting their anticipated defenses that they lacked the requisite *mens rea* to prove the FACE Act violation. The other acts are factually similar and not remote. They are relevant to the material issue of proving the defendants' intent and motive and meet a proper purpose under Fed. R. Evid. 404(b).

In addition to evidencing motive and intent, the proffered evidence shows the association between codefendants, rebutting an innocent presence defense akin to the defenses addressed *supra* that would undermine motive and intent. "[C]laims of innocent presence or association . . . routinely open the door to 404(b) evidence . . ." *United States v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004). Given the defense's repeated reference to First Amendment protests in this case, including in the instant motions, it is reasonable to expect this will be a key defense and the door will be opened during opening statements.

For these reasons, there are clear and compelling non-propensity bases for the admission of the proffered other acts under Fed. R. Evid. 404(b).

**V.      The Probative Value of the Proffered Evidence is Not Substantially Outweighed by Any Potential Prejudicial Effect**

Turning to the final part of the test for admissibility and a key argument in the defendants' motions, the evidence of the other acts is not more prejudicial than the acts in this case and does not approach the high standard for barring evidence under Fed. R. Evid. 403. Rule 403 precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added). Evidence may be unfairly prejudicial for purposes of Rule 403 if it invites the jury to decide the case "on an improper basis," but not if "it only damages the defendant's case due to the legitimate probative force of the evidence." *United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016). Indeed, the Supreme Court has described *unfair* prejudice as "speak[ing] to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The other acts evidence proffered here presents no danger of unfair prejudice. It does not, for example, inject something new and prejudicial into the case, such as violence or turpitude which might inflame the jury. Even if this Court were to conclude that the proffered evidence presented some unfair prejudice, it would not "substantially outweigh" the evidence's great probative value as to motive, intent, and association. The balancing between probative and unfairly prejudicial should lean toward inclusion. *See, e.g., United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing."); *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996) ("Because Rule 403 requires the exclusion of

relevant evidence, it is an extraordinary measure that should be used sparingly."); *United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) (Rule 403 is not a tool designed "to permit the Court to 'even out' the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.").

As discussed above, the proffered other acts evidence is highly probative of elements in issue. That probative value is not substantially outweighed by any unfair prejudice. In fact, since the other acts evidence is similar to the charged conduct, exclusively involving incidents of non-violent obstruction, trespass, and disruptive behavior, it would not inject any new or inflammatory issue into the case.

**VI.   The Spillover Arguments are Unripe and Unsupported**

Turning away from the Fed. R. Evid. 404(b) argument, the defendants allege that the Court should exclude the other acts evidence that do not pertain to them due to risk of "spillover." This argument is without merit, as defendants do not have standing to challenge the admission of evidence against coconspirators. *See United States v. Hoffecker*, 530 F.3d 137, 190 (3d Cir. 2008); *United States v. Davis*, 154 F.3d 772, 779 n. 3 (8th Cir. 1998) (defendants lack standing to challenge evidence of other defendant's other acts on Rule 404(b) grounds); *United States v. David*, 940 F.2d 722, 736 (1st Cir.1991) ("Objections based on Rule 404(b) may be raised only by the person whose 'other crimes, wrongs, or acts' are attempted to be revealed."); *see also United States v. Washington*, 12 F.3d 1128, 1135 n. 2 (D.C. Cir.1994). Instead, spillover is properly raised in a motion to sever. *See, e.g., United States v. Cordero*, 973 F.3d 603, 624 (6th Cir. 2020).

Yet even on a motion to sever, the other acts evidence comes nowhere close to satisfying the Sixth Circuit's high bar for severance, where "[t]he movant must demonstrate an inability of the jury to separate and treat distinctively evidence relevant to each particular defendant." *United*

States v. Swift, 809 F.2d 320, 322 (6th Cir. 1987). "Joint trials are favored in [the Sixth] circuit, and the spillover of evidence from one case to another does not require severance." *United States v. Dimora*, 750 F.3d 619, 631 (6th Cir. 2014) (internal quotation marks and citations omitted). It is well established that juries are "capable of sorting out the evidence and considering the case of each defendant separately." *See United States v. Tocco*, 200 F.3d 401, 413 (6th Cir. 2000) (quoting *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993)). Should the Court wish to treat the instant motions to exclude other act evidence as motions to sever under Fed. R. Crim. P. 14, the government respectfully requests leave to fully brief the issue.

### VII. Admission of Evidence Concerning the Sterling Heights Blockade Will Not Compromise Any Defendant's Fifth Amendment Rights

The final argument advanced by defendants Gallagher and Zastrow is that the admission of evidence concerning the Sterling Heights blockade, for which Mr. Gallagher and Mr. Zastrow (and Ms. Idoni) remain under federal indictment in Michigan, would somehow compromise their ability to testify in their own defense in the instant case lest they be cross-examined about the Sterling Heights blockade and have their statements used against them in the later prosecution in Michigan. *See* D.E. 331 at 13-14; D.E. 336 at 5. Notably, neither argument offers a citation to case law. From a practical standpoint, it is unclear how the defendants' concerns could play out. Should either defendant, or Ms. Idoni, waive their Fifth Amendment right and testify about the instant case, that testimony alone, properly cabined to the facts of this case, would not constitute a waiver of the defendant's Fifth Amendment rights pertaining to another case, and the government would not attempt to elicit statements that would run afoul of that privilege, or cause an invocation of the privilege, absent a ruling from the Court that the privilege had been waived.

Incidentally, the sort of defendant testimony that would likely constitute a Fifth Amendment waiver regarding the Sterling Heights blockade is the same sort of defendant

11

testimony that would render otherwise excluded other-acts evidence admissible for cross-examination. "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v. United States*, 526 U.S. 314, 321 (1999). "[P]rivilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of relevant cross-examination.'" *Id.* (quoting *Brown v. United States*, 356 U.S. 148, 154–55 (1958)).

Thus, even if the Court finds that the government's evidence concerning the Sterling Heights blockade is extrinsic and inadmissible under Rule 404(b), door-opening defendant testimony would permit the government to cross-examine defendants about the Sterling Heights blockade *and also* constitute a Fifth Amendment waiver. For this reason, the government does not appreciate how exclusion of the Sterling Heights blockade evidence at this stage would remedy the defendants' risk of being confronted with it on cross, should they decide to testify.

## VIII. Conclusion

For the foregoing reasons, the government respectfully requests that the Court admit the proffered other acts evidence against the respective defendants.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee


*s/Amanda J. Klopf*
AMANDA J. KLOPF
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Government's Response to Motions to Exclude Other Acts Evidence was electronically filed with the Clerk on November 13, 2023, and service was made upon all persons registered in that case via CM/ECF and/or by email.

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
