IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:22-cr-00327 |
| v. | ) | |
| | ) | |
| | ) | |
| [1] CHESTER GALLAGHER | ) | |
| [2] HEATHER IDONI | ) | |
| [3] CALVIN ZASTROW | ) | |
| [4] COLEMAN BOYD | ) | |
| [6] PAUL VAUGHN | ) | |
| [7] DENNIS GREEN | ) | |

### Government's Motion to Protect Witnesses

Comes now the United States of America, by and through undersigned counsel, and files this motion for an order from this Court protecting civilian witnesses from harassment and other unlawful conduct by permitting them to testify under a pseudonym and by precluding irrelevant and invasive cross examination.

**I.      Witness Anonymity**

To minimize the risk of safety and security issues for civilian witnesses in this case, the Court should permit the Government to have clinic employees, patients, and patients' family members testify under pseudonyms. If so permitted, the Government will file under seal for the Court and for the Defendants a witness list with a key that identifies its civilian witnesses and the pseudonym they will use while testifying, thus avoiding any Confrontation Clause problems. Between discovery and this witness list and key, the defendants will be given sufficient information to place the witnesses in their proper setting, without the witnesses' true name needing to be disclosed at trial in open court. *See, e.g.*, *United States v. Mohamed*, 727 F.3d 832, 838 (8th

1

Cir. 2013) (the witness's "use of a pseudonym did not deny [the defendant] the opportunity to effectively conduct cross-examination. The district court disclosed [the witness's] real name to defense counsel, so defense counsel had the ability to investigate [the witness's] background.").

In determining whether it is appropriate to limit a public trial, such as by permitting a witness to testify under a pseudonym, courts must make adequate findings that consider the moving party's substantial reason, whether the proposed limitation is narrowly tailored, and whether there are reasonable alternatives. *United States v. Hendricks*, 950 F.3d 348, 355 (6th Cir. 2020); *see also*, *United States v. Celis*, 608 F.3d 818, 830-35 (D.C. Cir. 2010), *United States v. Ramos–Cruz*, 667 F.3d 487, 500 (4th Cir. 2012); *United States v. El–Mezain*, 664 F.3d 467, 491 (5th Cir. 2011); *Siegfriedt v. Fair*, 982 F.2d 14, 17 (1st Cir. 1992); *United States v. Rangel*, 534 F.2d 147, 148 (9th Cir. 1976); *see also United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) ( "[W]here there is a threat to the life of the witness, the right of the defendant to have the witness' true name, address and place of employment is not absolute. . . . Under almost all circumstances, [however,] the true name of the witness must be disclosed.").

Testimony under pseudonym will not prejudice the defendants in this case. Courts have routinely found that where the government has disclosed a witness's true name to defense counsel, allowing that witness to testify under an alias provides defense counsel with an opportunity for effective cross-examination. *See, e.g.*, *Celis*, 608 F.3d at 834-835; *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1142 (10th Cir. 2014) ("The Government may provide an opportunity for effective cross-examination by disclosing a witness's real name to defense counsel while the court still allows the witness to testify under an alias, but this is not the only means to do so.").

There is substantial reason here to permit anonymous testimony by these civilian witnesses to protect them from threats of and actual violence. The dangers are well-documented. *See, e.g.*,

2

Liam Stack, "A Brief History of Deadly Attacks on Abortion Providers," The New York Times (Nov. 29, 2015) *available at* https://www.nytimes.com/interactive/ 2015/11/29/us/30abortion-clinic-violence.html, (last accessed Nov. 17, 2023, 1:10 PM ET). But they are not all historical. *See* Elizabeth Dwoskin, "'Bring Rifles': Extremist groups call for violence over abortion ruling," Wash. Post (June 24, 2022, 7:59 PM ET) *available at* https://www.washingtonpost.com/technology/2022/06/24/extremists-violence-abortion-ruling/ (last accessed Nov. 17, 2023, 1:00 PM ET); "Man suspected of torching Tennessee Planned Parenthood clinic and shooting federal building died months ago, officials say," Associated Press (Oct. 31, 2022, 10:24 PM ET) *available at* https://www.cbsnews.com/news/mark-thomas-reno-planned-parenthood-arson-suspect-died-tennessee/ (last accessed Nov. 17, 2023, 1:04 PM ET). These concerns are not just theoretical for the potential witnesses in this case. In the past month, the United States has met with three clinic employees and one patient, and all four witnesses expressed concerns for their safety. This threat environment recently led U.S. District Judge Colleen Kollar-Kotelly to permit civilian witnesses to testify under a pseudonym in a similar FACE Act prosecution in the District of Columbia. *See* Order of the Court, United States v. Handy, et al., No. 1:22-cr-00096-CKK (D.D.C. August 8, 2023), ECF No. 358, included as Attachment B.

Here, where defense counsel will have the true names of all Government witnesses, the use of an alias while testifying will not impact the defendants' rights under the Confrontation Clause and will minimally intrude on the right to a public trial. The public will still have access to all the evidence. The defendants will still be able confront the witnesses against them through public cross-examination, and the trier of fact will have the opportunity to assess the demeanor and credibility of the witnesses. As always, the witnesses will give their testimony under oath, subject to the penalty of perjury. Under the *Hendricks* test, the Government's proposal is a narrowly

tailored security precaution based on a real danger, and there is no reasonable alternative. Accordingly, the Government urges the Court to authorize clinic employees, patients, and patients' family members to testify under a pseudonym.

## II. Witness Cross-Examination

The Government also moves to preclude cross-examination regarding the specific reproductive health services patients sought or obtained, or that medical staff provided or were trained to provide. All that is relevant to the jury's inquiry at trial is whether patients, including Patient A, sought and whether clinic staff were providing reproductive health services, meaning "reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includ[ing] medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." *See* 18 U.S.C. § 248(e)(5).

Further inquiry into any patient's course of treatment has no probative value and would improperly compromise patients' significant privacy interests. For this reason, cross-examination by any defendant into the nature of reproductive health services required, received, or provided would be irrelevant under Fed. R. Evid. 401, beyond the scope of direct examination by the Government and accordingly impermissible under Fed. R. Evid. 611(b), and substantially more prejudicial than probative under Fed. R. Evid. 403.

It is well established that this Court may reasonably limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) for the proposition that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other

4

Case 3:22-cr-00327   Document 353   Filed 12/04/23   Page 4 of 8 PageID #: 1262

things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.") (internal quotations omitted). Thus, this Court may prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g.*, *United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding a district court's decision to prohibit cross-examination of agent about sensitive information that agent did not testify about on direct examination and did not pertain to the charges in the case), *overruled on unrelated grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). The Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

Even if Patient A's private health information was marginally relevant to the Defendants' defense, this Court may exclude evidence under Federal Rule of Evidence 403 on the ground that its marginal probative value is significantly outweighed by Patient A's privacy interests. The Supreme Court has recognized that trial courts' balancing under Federal Rule of Evidence 403 should account for concerns extrinsic to the litigation, such as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] . . . marginally relevant." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (citing *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986)). Here, the Crime Victims' Right Act affords a crime victim the right to be "reasonably protected" and "treated with fairness and respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(1), (8). Accordingly, any inquiry by the Defendants about Patient A's private health information should be precluded to protect her right to dignity and privacy.

This Court should therefore preclude the Defendants from cross-examining any Government witness about Patient A's private health information and restrict cross-examination to matters elicited during direct examination about Patient A's health care. *See* Order of the Court, United States v. Handy, et al., No. 1:22-cr-00096-CKK (D.D.C. August 2, 2023), ECF No. 329 at *3-5, included as Attachment A.

### III. Conclusion

For the foregoing reasons, the government respectfully requests that the Court permit clinic employees, patients, and patients' family members to testify under a pseudonym and preclude defendants from attempting to elicit irrelevant and prejudicial testimony beyond the scope of direct examination about reproductive health services sought, received, or provided by patients and medical providers.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee


*s/Amanda J. Klopf*
AMANDA J. KLOPF
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW

Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Government's Motion to Protect Witnesses was electronically filed with the Clerk on December 4, 2023, and service was made upon all persons registered in that case via CM/ECF and/or by email.

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
