IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:22-cr-00327 |
| v. ) | |
| ) | |
| ) | |
| [1] CHESTER GALLAGHER ) | |
| [2] HEATHER IDONI ) | |
| [3] CALVIN ZASTROW ) | |
| [4] COLEMAN BOYD ) | |
| [6] PAUL VAUGHN ) | |
| [7] DENNIS GREEN ) | |

**GOVERNMENT'S MOTION TO PRECLUDE IMPROPER ARGUMENTS AND IRRELEVANT EVIDENCE**

The United States of America, by and through undersigned counsel (hereinafter, the "Government"), submits this motion in limine requesting that Defendants be precluded from making improper arguments or attempting to admit irrelevant evidence. The Government requests that this Court preclude Defendants as follows:

1) from encouraging jury nullification by a) alleging vindictive or selective prosecution, b) referencing punishment or collateral consequences of conviction, or c) arguing, referencing, or otherwise eliciting evidence regarding witnesses' views about abortion or religion, including that of Defendants;

2) from further advancing the argument that their speech and/or conduct was First Amendment protected activity, because, as the Court determined when rejecting this argument at the motion to dismiss stage, this case is about Defendants' "decidedly non-First Amendment-protected crimes that invaded interests that Congress and the Department of Justice have chosen,

1

in valid exercise of their powers, to protect," *United States v. Gallagher*, No. 3:22-CR-00327, 2023 WL 4317264 at *10 (M.D. Tenn. July 3, 2023);

3) from advancing inapplicable common law defenses like necessity, duress, and defense of others;

4) from introducing Defendants' own self-serving out-of-court statements because it is inadmissible hearsay;

5) from introducing evidence of, or referencing, their general good character or specific instances of good conduct, including but not limited to, charitable works, affiliations with religious or social organizations, admirable family lives, or other evidence of their standing in the community.

An order to preclude these improper arguments and irrelevant evidence is appropriate at this time to avoid the undue prejudice to the Government that could result should the argument and/or evidence come out in front of the jury. This would also serve to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). Should the Court decide to reserve ruling on any, however, we ask that it consider these arguments when the relevant issue(s) arise.

## ARGUMENT

**1) This Court Should Preclude Defendants Encouraging Jury Nullification by Alleging Vindictive or Selective Prosecution, Referencing Punishment or Collateral Consequences of Conviction, or Arguing or Presenting Evidence Regarding Witness's Views About Abortion.**

The Government is concerned that Defendants may attempt to encourage jury nullification, potentially by a) alleging vindictive or selective prosecution; b) referencing punishment or

2

Case 3:22-cr-00327   Document 359   Filed 12/04/23   Page 2 of 18 PageID #: 1459

collateral consequences of conviction; and c) arguing, referencing, or otherwise eliciting evidence regarding witnesses' views about abortion, including that of Defendants. This Court should preclude Defendants from improperly encouraging jury nullification because it is improper at any stage of the trial, including during voir dire, opening statements, witness examination, or at summation.

"By definition," jury "[n]ullification is . . . a violation of a juror's oath to apply the law as instructed by the court – in the words of the standard oath administered to jurors in the federal courts, to 'render a true verdict according to the law and the evidence.'" *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) (citations omitted). "The power of juries to nullify or exercise a power of lenity is just that – a power; it is by no means a right or something that a judge should encourage or permit." *Id.*; *see also Wofford v. Woods*, 969 F.3d 685, 710 (6th Cir. 2020) (referring to this proposition as "the settled conclusion of American courts"). To the contrary, it is well established that courts have a duty to prevent criminal defendants from making arguments or offering evidence designed to encourage jury nullification. *See, e.g.*, *United States v. Walsh*, 654 F.App'x. 689, 696–97 (6th Cir. 2016) (affirming trial court's refusal to allow the defense to argue the legitimacy of federal marijuana laws); *United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975) (affirming a trial court order precluding defense evidence that might encourage a "conscience verdict" of acquittal); *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020) (noting that evidence sought to be admitted solely for nullification is irrelevant and inadmissible); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006) (holding that a defense unsupported by credible evidence should not be submitted to a jury since it invites improper jury nullification); *United*

3

*States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998) (affirming exclusion of evidence because its only relevance would have been to "inspire a jury to exercise its power of nullification").

The Government submits the following arguments in support of its request for an order precluding Defendants from encouraging jury nullification.

*A. Allegations or references to vindictive or selective prosecution should be precluded.*

Defendants should be precluded from introducing information to allege that the instant matter is a vindictive or selective prosecution. The Government's decision to prosecute Defendants rests entirely within its purview. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (holding that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute") (*citing United States v. Goodwin*, 457 U.S. 368, 380 n. 11 (1982)). Claims of selective or vindictive prosecution are "not . . . defense[s] on the merits to the criminal charge itself, but . . . independent assertion[s] that the prosecutor has either brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). All evidence or argument concerning vindictive, selective, or unfair prosecution must be excluded at trial. *See United States v. Abboud*, 438 F.3d 554, 580 (6th Cir. 2006) (quoting *United States v. Berrigan*, 482 F.2d 171, 174-75 (3d Cir. 1973), for the proposition that, "[b]y both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to the instructions of law delivered by the court. The question of discriminatory prosecution relates not to the guilt or innocence of [the defendant], but rather addresses itself to a constitutional defect in the institution of the prosecution").

To Defendants' credit, they properly raised this issue pre-trial by raising it in their motions to dismiss the indictment. The Court denied their motion, however, as they proffered "no direct

evidence that the[] prosecut[ion] acted for any impermissible purpose," and this Court rejected their attempts to "assemble [a] circumstantial case." *Gallagher*, 2023 WL 4317264, at *8. That decision renders further attempts by Defendants to relitigate the issue before the jury doubly improper—improper because it was never an issue for the jury to begin with, and improper because it is even less jury-appropriate now that the issue has been litigated and decided.

Moreover, Defendants' claims in past motions that the Government's decision to charge any of them was politically motivated are not permissible at trial as they are merely attempts to encourage the jury to acquit Defendants on this basis. Take, for example, Defendant Paul Vaughn's recently-filed motion to exclude, in which he claims that the Government's efforts to prosecute this case amount to "a series of attempts to chill [him] and others," who he describes as "shar[ing] pro-life beliefs." Def.'s Mot. at 1-2, ECF No. 337. These and similar claims of vindictive or selective prosecution are not defenses to the charged conduct. As a result, if such claims were presented in court, they would serve no purpose other than to improperly encourage jury nullification. Even if these baseless claims could be considered relevant to a defense, the minimal probative value such an argument offers would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403.

The same would be true of any attempt by Defendants to minimize their conduct as effectively a state law trespassing violation. Defendants Chester Gallagher, Heather Idoni, Calvin Zastrow, and Dennis Green were arrested on the date of the incident and charged with criminal trespass under state law. Defendants may therefore attempt to argue that the Government pursued this case as punishment for exercising their personal beliefs, and that the Government's decision to indict them was improper. This too is neither a defense nor is it relevant. The fact that a

5

person has been charged by one sovereign is not a defense to a charge by another. *Gamble v. United States*, 139 S. Ct. 1960, 1967 (2019) ("[A] crime against two sovereigns constitutes two offenses because each sovereign has an interest to vindicate). Likewise, the state's decision to dismiss Tennessee Code violations — and the United States' decision to present an indictment that was returned by a federal grand jury — is not relevant to the petit jury's role as a fact finder and does not tend to make any consequential fact "more or less probable than it would be" otherwise. Thus, any evidence or reference to the dismissal of the Tennessee Code violations, prosecutorial decisions, or argument that the Defendants conduct was at most a Tennessee Code criminal trespass violation are irrelevant and should be excluded. *See* Fed. R. Evid. 402; *Mosher* v. *McKee*, No. 11-13270, 2014 WL 3697802, at *16 (E.D. Mich. July 22, 2014) (citing *Armstrong*, 517 U.S. at 464) ("Prosecutors have broad discretion to enforce criminal laws, . . . and, in the absence of clear evidence to the contrary, courts presume they have properly discharged their official duties." (internal quotation marks and citations omitted)). And here again, even if the argument is considered relevant, the minimal probative value that it offers would be substantially outweighed by the substantial risk of confusing and misleading the jury, requiring the parties to engage in a wasteful mini-trial about the basis of those decisions, all of which unfairly prejudices the Government. *See* Fed. R. Evid. 403.

For these reasons, any further references to, or arguments concerning, the Government's prosecutorial decisions are irrelevant and highly prejudicial, and Defendants should be barred from making them.

> B. *References to punishment or collateral consequences of conviction should be precluded.*

The defense should also not be permitted to refer to any potential penalties that stem from any possible convictions in this matter. Since a jury has no sentencing function, it should not consider the question of punishment in arriving at its verdict. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) (noting that evidence relating to the punishment and effect of a defendant's conviction are not probative as to innocence or guilt and can needlessly confuse the jury); *United States v. Peterson*, 945 F.3d 144, 157 (4th Cir. 2019) (holding trial court properly precluded defense evidence of his lengthy state sentence given its "self-evident invitation to jury nullification"); *United States v. Lynch*, 903 F.3d 1061, 1080 (9th Cir. 2018) (noting that the jury "has no sentencing function" and "should be admonished to reach its verdict without regard to what sentence might be imposed" (quoting *Shannon*, 512 U.S. at 579)); *see also* Sixth Circuit Pattern Jury Instruction, Criminal No. 8.05 (2023) (instructing that the question of possible punishment is not for the jury). Any attempt by Defendants to reference or argue potential penalties at any stage of the trial would thus be an attempt at nullification.

> C. *Defendants should be precluded from arguing, referencing, or otherwise eliciting evidence regarding witnesses' views about abortion or religion, including that of Defendants.*

The Government anticipates that Defendants may ultimately seek to argue, reference, or otherwise eliciting witness' views about abortion or religion, including the Defendants', in order to present those views as a defense. Defendants should be precluded from doing so because this would only serve to encourage jurors to violate their oath by refusing to apply the law. The risk is more pronounced here, where an individual's personal views about either topic "is totally extraneous to the nature of the alleged" charge(s) at hand, *i.e.* civil rights conspiracy and FACE

7

Act violations. *See Alejo Jimenez* v. *Heyliger*, 792 F. Supp. 910, 918 (D.P.R. 1992); *see also Givhan v. United States, No.* 3:16-CR-57-DJH, 2022 WL 122925, at *4 (W.D. Ky. Jan. 12, 2022) (affirming exclusion of testimony relating to abortion in a sex-trafficking case because it "is irrelevant to any issue to be decided in th[e] trial and would be extremely prejudicial and inflammatory"). Indeed, that "[D]efendants' undeniably First Amendment-protected views on abortion happen to have led them to commit" the crimes here does not mean that those views are relevant (as a defense or otherwise) to the "decidedly non-First Amendment-protected crimes" that they are charged with committing. *See Gallagher*, 2023 WL 4317264, at *10. The voir dire process and, to some extent, jury instructions are designed to facilitate the admittedly "difficult[]" task of curbing "prejudice in the judicial context," recognizing that it "prevents the impartial-decision making" that the Constitution requires. *See United States v. Heller*, 785 F.2d 1524, 1527 (11th Cir.1986). Defendants should not be permitted to sidestep those measures by referencing witnesses' personal views on abortion or religion and "unduly inflam[ing] the jury." *See Givhan*, 2022 WL 122925 at *4.

**2) The Court Should Preclude Defendants from Suggesting or Arguing That Their Speech or Conduct was Protected by the First Amendment.**

Defendants recently notified the Government that they may propose jury instructions on the First Amendment. The Government moves *in limine* to preclude the defense from doing so— that is, from eliciting evidence or arguing to the jury that Defendants' statements and conduct are Constitutionally-protected activity. The Government anticipates that Defendants will claim that they were at the Clinic praying and encouraging abortion patients and providers to elect against seeking or providing abortion services. They will likely argue that they collectively organized and engaged in a lawful expression of their personal beliefs – whether political, religious, or social

8

– and that the Government has charged them with offenses for engaging in conduct that is protected by the First Amendment. Defendants raised the arguments in their motions to dismiss, and this Court rejected them.

None of the offenses with which Defendants are charged criminalizes speech. Instead, Defendants are charged with crimes that punish agreements to commit, and the commission of, defined criminal objectives. The First Amendment is not a defense in such circumstances, even if evidence of Defendants' crimes is intertwined with political, religious, or moral discussions and/or rhetoric. *United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of Defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it"). Nor is it a defense that a Defendant believed that his or her conduct did not violate the Constitution or federal law, *i.e.* because he or she believed it to be First Amendment-protected activity. *E.g.*, *United States v. Johnstone*, 107 F.3d 200, 209-10 (3d Cir. 1997) ("You may find that a defendant acted with the required specific intent even if you find that he had no real familiarity with the Constitution or with the particular constitutional right involved . . ."). Defendants' First Amendment arguments are thus not relevant under Federal Rule of Evidence 401, and risk confusing the issues, wasting time, misleading the jury, and unfairly prejudicing the Government under Federal Rule of Evidence 403. Defendants should therefore be barred from asserting or otherwise arguing the First Amendment as a defense at trial.

**3)** **The Court Should Preclude Defendants from Suggesting or Arguing Necessity, Defense of a Third Person, or Duress as Defenses.**

Defendants also notified the Government that they may propose jury instructions on the defense of others and may similarly attempt to introduce evidence on or argue the other common

law defenses of necessity and duress. Defendants should be precluded from doing so on the basis that none is a legally viable defense to the charged conduct. A federal court may preclude a defendant from presenting a defense when the evidence in support of such a defense would be legally insufficient. *E.g.*, *United States v. Kopp*, 562 F.3d 141, 145 (2d Cir. 2009). The aforementioned common-law defenses are generally inapplicable to the purely statutory scheme of federal criminal law. *See United States* v. *Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 490 (2001) (explaining that necessity is "especially" controversial under "our constitutional system, in which federal crimes are defined by statute rather than common law"). That is particularly true where, as here, the defense is not provided by statute. *E.g., Kopp*, 562 F.3d at 145; *Abigail All. for Better Access to Developmental Drugs* v. *von Eschenbach*, 495 F.3d 695, 707-08 (D.C. Cir. 2007) (finding defense of necessity in obtaining medical marijuana unavailable where Congress made legislative determination to illegalize marijuana); Order at *1, *United States v. Handy*, No. 22-096 (D.D.C. Aug. 7, 2023), ECF No. 353 ("[T]he Court is bound by statute to respect a 'legislative judgment' against the incorporation of the common-law doctrine of necessity," "[g]iven the FACE Act's very specific bar on obstructive conduct in and around reproductive health facilities").

Even if necessity and these other common-law defenses were provided by the statutes at hand, none fit this case. The charged conduct is that Defendants traveled to the Middle District of Tennessee in preplanned activity to physically block the entrance to the Clinic. *See* ECF No. 3 (indictment) at ¶¶ 6-29; *see also* Order at *2-3, *Handy*, No. 22-096 (D.D.C. Aug. 7, 2023), ECF No. 353 (referencing similar conduct in the District of Columbia). The defense of necessity is a non-starter because it only "cover[s] the situation where physical circumstance beyond the actor's

10

control rendered illegal conduct the lesser of two evils," not the "concerted choice to contrive the situation that played out at the Clinic." *See id.* at 1-2 (quoting *Abigail All. for Better Access to Developmental Drugs*, 495 F.3d at 707 (cleaned up)); *see also* Sixth Circuit Pattern Jury Instruction, Criminal No. 6.07 (2023) (requiring, *inter alia*, proof that "defendant had not recklessly or negligently placed himself . . . in a situation in which it was probable that he would be forced to choose the criminal conduct"). The same is true of defense of others, which "analogous to the right of self-defense," also fails where, as here, defendants "insert themsel[ves] into a situation of their own making." *Id.* And the defense of duress also fails because it requires Defendants to proffer facts that they simply cannot—that is, facts establishing that there "w[as] a person at the clinic at imminent risk of an unlawful killing," *and* "that no other course to stop such an unlawful killing was available." *Id.*; *see also* Sixth Circuit Pattern Jury Instruction, Criminal No. 6.05 (2023) (requiring, *inter alia*, "present, imminent, and impending threat of death or serious bodily injury" and "no reasonable, legal alternative to violating the law"). Thus, as none is a legally viable defense in this case, Defendants should be precluded from arguing or otherwise introducing evidence regarding necessity, defense of others, or duress.

### 4) The Court Should Preclude Defendants from Introducing Their Own Out-of-Court Statements as Inadmissible Hearsay

The Government anticipates that Defendants may attempt to elicit testimony from witnesses or introduce pre- and post-arrest recorded statements. As alluded to before, the case here arises out of a blockade of a reproductive health services clinic during which multiple participants recorded themselves and others. While the government expects to offer into evidence relevant excerpts of recordings containing certain Defendants statements and actions, the full recordings are generally lengthy and contain discussions and conduct that is simply not relevant

11

to the charged conduct and, in some cases, is inflammatory and prejudicial. Examples include readings from the Bible, an instance in which someone is flushed with emotion and crying profusely, and Defendants' views about how an abortion is performed. Defendants should not be permitted to admit their pre- or post-arrest statements, the admission of which would primarily serve to plant the seed of nullification and advance improper defenses.

While the Government may offer a Defendant's statement as the statement of a party opponent, Fed. R. Evid. 801(d)(2), *United States v. Townsend*, 206 F. App'x 444, 450 (6th Cir. 2006), Defendants may not offer their own hearsay statements, *United States v. Kerley*, 784 F.3d 327, 342 (6th Cir. 2015) (concluding with "no difficulty that the district court's exclusion of [defendant's] pre-indictment statement to law enforcement" as they "were inadmissible hearsay"); *see also United States v. Holden*, 557 F.3d 698, 706 (6th Cir.2009) (Defendant could not avail himself of "the hearsay exclusion for admissions of a party opponent . . . because he sought to introduce his own statement"). Neither Rule 801(d)(2) nor any other exception permits Defendants to introduce their own hearsay statements into evidence.

To the extent Defendants seek to introduce their hearsay statements pursuant to Federal Rule of Evidence 106, the "Rule of Completeness," this rule is not a rule of admissibility, and is instead concerned with order of proof. Rule 106 directs the Court to "permit such limited portions [of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence," *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986), with nothing in the direction "empower[ing] a court to admit unrelated hearsay." *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987).

Moreover, Rule 106 only applies when the Government's introduction of any Defendants' statement is "misleading because of a lack of context," leading to a "distortion" of that Defendant's meaning. *Sutton*, 801 F.2d at 1369. It is simply not a vehicle for generally introducing exculpatory portions of a statement merely because "they were made contemporaneously with other self-inculpatory statements" offered by the Government. *Ortega*, 203 F.3d at 682. This Court should thus ensure that any relevant statements by Defendants offered by Defendants be necessary to correct a misleading statement offered by the Government, or otherwise preclude Defendants from offering any of their own hearsay statements as evidence in this case. Defendants should further be prohibited from referencing these statements during voir dire, opening statements, or eliciting their own self-serving statements through examination of any Government witness.

**5)  The Court Should Preclude Defendants from Introducing Improper Character Evidence**

Defendants should be barred from introducing evidence of, or referencing, their general good character or specific instances of good conduct, including but not limited to, charitable works, affiliations with religious or social organizations, admirable family lives, or other evidence of their standing in the community. Such evidence would constitute improper character evidence under Federal Rule of Evidence 404.

Rule 404 prohibits the introduction of evidence of a person's character to prove that the person acted in conformity with that character. Fed. R. Evid. 404(a)(1) & (b)(1). The only exception is where this evidence relates to a character trait that is "pertinent" to or an "essential element of" the charged conduct. Fed. R. Evid. 404(a)(2)(A); *see United States v. Silber*, 456 F. App'x 559, 562 (6th Cir. 2012) (explaining that Rule 405(b) prohibits character evidence about

13

"relevant specific instances of the person's conduct" except where "a person's character or character trait is an essential element of the crime charged" (internal quotation marks and citations omitted)); *United States v. Yarbrough*, 527 F.3d 1092, 1101 (10th Cir. 2008) (holding that the rule makes clear that character evidence in the form of propensity evidence is not allowed, but that a defendant may offer character evidence adducing a pertinent character or trait); *United States v. Ellisor*, 522 F.3d 1255, 1270, 71 (11th Cir. 2008) (affirming that "[e]vidence of good conduct is not admissible to negate criminal intent") (quotation omitted). Even then, evidence of good character or conduct indicative of a pertinent character trait may only be offered in the form of opinion or reputation testimony. Fed. R. Evid. 405(a). Specific acts may only be introduced where the "person's character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b).

In this case, proof of the general good character of any Defendant—*i.e.*, charitable work, affiliations with religious or social organizations, admirable family life, or general good standing in the community—is neither pertinent to nor an essential element of the charged civil rights conspiracy or FACE Act violations. A character trait is an essential element if "proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge." *United States* v. *Keiser*, 57 F.3d 847, 856 (9th Cir. 1995). In this regard, courts have routinely found that traits even more direct than organizational affiliations, family life, and general good standing to not satisfy this exacting standard. *E.g.*, *Silber*, 456 App'x at 562 (holding that the district court correctly precluded defendant's attempt "to establish his character for honesty by showing that Medicare had not previously noticed any overbillings from him" because it was not an essential element of medicare fraud); *United States* v. *Georges*, No. 2:20-CR-157 (2), 2021 WL 4191223,

at *7 (S.D. Ohio Sept. 15, 2021) (holding the same where defendant sought to introduce evidence of good conduct on one occasion to demonstrate that she did not act with criminal intent on another). The result is no different for pertinent character traits, which require a showing that the trait is "directly relate[d]" to the charge at issue. *See Witkowski v. Rapelje*, No. 2:11-CV-14450, 2012 WL 7258857, at *16 (E.D. Mich. Dec. 21, 2012), *report and recommendation adopted*, No. 11-CV-14450, 2013 WL 690495 (E.D. Mich. Feb. 26, 2013). Neither a civil rights conspiracy nor violating the FACE Act has anything to do with even broad traits like honesty and truthfulness, let alone more generic traits referencing defendant's general good character, which cannot negate defendants' criminal conduct and are "not admissible to negate criminal intent." *Ellisor*, 522 F.3d at 1384; *see also United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (precluding defendant's "awards and commendations" and public service because the "traits they purport to show" were not pertinent to mail fraud conspiracy). As a result, any evidence of Defendants' good character or specific acts of good conduct would be offered for an impermissible purpose and should thus be excluded.

## CONCLUSION

For the foregoing reasons, the Government requests that this Court grants its omnibus motion in limine. The Government further requests that this Court allow the United States to supplement this motion if additional issues arise that require the Court's attention.

        Respectfully submitted,

        HENRY C. LEVENTIS
        United States Attorney
        Middle District of Tennessee

*s/Amanda J. Klopf*
AMANDA J. KLOPF
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

16

Case 3:22-cr-00327   Document 359   Filed 12/04/23   Page 16 of 18 PageID #: 1473

# CERTIFICATE OF THE SERVICE

I certify that a true and correct copy of the foregoing was filed electronically and served electronically, via the CM/ECF electronically filing system on this 4th day of December, 2023, upon the following:

**JODIE A. BELL**
Law Office of Jodie A. Bell
Washington Square Building 214 Second Avenue North Suite 208
Nashville, TN 37201
USA
jodie@attorneyjodiebell.com
(615) 953-4977

*Attorney for Defendant Chester Gallagher*

**WILLIAM J. CONWAY**
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 260-5364
wjconway@gmail.com

*Attorney for Defendant Heather Idoni*

**LARRY LAMONT CRAIN**
5214 Maryland Way
Suite 402
Brentwood, TN 37207
(615) 376-2600
larry@crainlaw.legal

**STEPHEN M. CRAMPTON**
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
662-255-9439
scrampton@thomasmoresociety.org

*Attorneys for Defendant Paul Vaughn*

**G. KERRY HAYMAKER**
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com

**STEVE C. THORNTON, I**
Steve Thornton Attorney Law Office
P.O. Box 16465
Jackson, MS 39236
USA
mail@lawlives.com
(601) 982-0313

*Attorneys for Defendant Coleman Boyd*

**MANUEL B. RUSS**
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com

**JOHN R. MANSON**
3112 Carrington Court
Nashville, TN 37218
USA
jmanson@lewisthomason.com
615-259-1366

*Attorneys for Defendant Dennis Green*

**ROBERT LYNN PARRIS**
208 3rd Avenue North Ste 300
Nashville, TN 37201
rlp@robertparrisattorney.com
(901) 490-8026

*Attorney for Defendant Calvin Zastrow*

                                                  s/ *Kyle Boynton*
                                                  KYLE BOYNTON
                                                  Trial Attorney