UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v. ] | No. 3:22-CR-00327-1 |
| ] | JUDGE TRAUGER |
| [1] CHESTER GALLAGHER ] | |
| [2] HEATHER IDONI ] | |
| [3] CALVIN ZASTROW ] | |
| [4] COLEMAN BOYD ] | |
| [6] PAUL VAUGHN ] | |
| [7] DENNIS GREEN ] | |

**RESPONSE IN OPPOSITION TO GOVERNMENT'S OMNIBUS MOTION TO PRECLUDE AND SUPPORTING MEMORANDUM OF LAW**

Comes now the Defendants, Chester Gallagher, Heather Idoni, Calvin Zastrow, Coleman Boyd, Paul Vaughan and Dennis Green, by and through undersigned counsel, and hereby submit the following response to the government's motion to preclude various arguments and evidence.

In support of this motion, the Defendants submit the following:

**INTRODUCTION**

The government's omnibus motion to exclude (DE 359) underscores the government's attempt to manipulate the proof and keep the entire truth about what happened at Carafem on March 5, 2021, from the jury which, in fairness, they should consider when deliberating on their verdict. There are certain matters such as the Defendants' pro-life position, their faith and the criminal trespass arrests by the State of Tennessee that simply cannot be sanitized from the trial and kept from the jury as part of the narrative and explanation of what occurred at Carafem on the day in question.

1

The Government argues that the Court should restrict the Defendants from soliciting evidence in five general areas that it believes would be improper, irrelevant or both. The Defendants address the Government's motion in the order presented by the Government:

**A. The Government's Jury Nullification Concerns Do Not Bar the Defendants from Disclosing to the Jury that the Defendants Were at Carafem Because they Oppose Abortion and Believed Carafem was Terminating Pregnancies on March 5, 2021, that they were Arrested for Criminal Trespassing, nor Do the Government's Concerns Prohibit the Defense from Cross Examining Ms. Davis About her Initial Charges, Reduced Charges, and Potential Sentencing Exposure (Pre- and Post-Plea).**

The Government raises several potential concerns in its first section of its motions *in limine*. To take them in order, the defense respects the role of the jury and has no intention of suggesting the jury violate their oath by engaging in jury nullification as a general principle. More specifically, the Government asserts that the defense may argue to the jury that they are being selective and/or vindictive by their decision to charge the Defendants in the instant indictment and that this is improper on the part of the Government. However, defense counsel for the Defendants have already raised the issues of vindictive and selective prosecution in their collective pretrial motions and the Court ruled on those issues. See D.E. 282 Pp. 14-17. Defense counsel is aware that the Court has rejected their arguments as to the selectivity and the vindictiveness of these prosecutions. Defense counsel are, likewise, cognizant of the fact that they may not reference their clients' criminal exposures as a collateral consequence of their convictions and does intend to do so, however, a wide ranging cross-examination of Ms. Carolyn Davis should be permitted and

2

would touch on her potential punishment for similar offenses as well as the benefits she is receiving from the Government in relation to those charges based on her cooperation.

The Government asserts that soliciting the religious and/or political views of the Defendants relating to abortion would be akin to encouraging jury nullification. Defense counsel disagrees with this argument both specifically and more broadly. The Defendants' pro-life, anti-abortion beliefs are at the core of what occurred on March 5, 2021, whether the jury determines that criminal acts occurred or not. These beliefs provide the explanation and reason for the presence of the Defendants at Carafem on March 5, 2021. Merely because the Government is concerned that the Defendants' beliefs may impact or move certain jurors in a particular direction, does not mean that the Defendants' beliefs are irrelevant – their beliefs are intrinsic to any potential testimony they may give, to any events or gatherings leading up to and including March 5, 2021 and it is disingenuous of the Government to suggest the defense and the Defendants should keep this from the jury.

The government's reliance on the case of *Givhan v. United States*, 2022 WL 122925, to preclude references to abortion is misplaced. In *Givhan, supra,* the defendant, following his conviction for three counts of sex trafficking after a jury trial, raised issues challenging the effectiveness of his trial counsel in a Title 28 U.S.C. § 2255 petition. In that petition, Givhan alleged, among other things, that his trial counsel failed to investigate a sex trafficking victim and whether she had lied about Givhan forcing her to have an abortion; trial counsel had filed a motion

*in limine* to exclude evidence concerning the abortion issue. The Court found trial counsel had made a strategic decision to avoid the topic of abortion and trial counsel had determined the abortion issue was irrelevant and unduly prejudicial. While the issue of abortion was highly inflammatory and prejudicial in *Givhan*, that case is *clearly distinguishable* from the instant case. The entire purpose of the March 5, 2021 gathering at Carafem, whether a participant-gatherer was engaged in criminal conduct or not, was to promote a pro-life, anti-abortion agenda. Abortion was a tangential issue in *Givhan*, and one that negatively impacted the defendant, but not in the case here. Further, under the ineffectiveness standard required in a §2255 proceeding, the District Court determined Givhan's counsel made a tactical choice in asking that the abortion issue be excluded. This is not a like determination to the one the Government is requesting in this case.

The Government has also suggested that the Defendants should not be allowed to "minimize their conduct as effectively a criminal trespassing violation" (DE 359, p. 5). This is entirely contrary to the facts since, upon their arrest on March 5, 2021, several of the Defendants, including Government witness Carolyn Davis, were charged with criminal trespassing by the State of Tennessee. The day of the incident, eleven adults and four children went to jail in Wilson County, Tennessee, on criminal trespassing charges based on the determination by local law enforcement that criminal trespass was their offensive conduct. Based on the discovery provided by the Government, it is highly probable that their cooperating witness, Ms. Davis, will testify and make the claim that, prior to March 5, 2021, the likelihood of arrest and details of the FACE Act

4

were discussed by various parties including the charged Defendants. If Ms. Davis testifies in full candor, she will also testify that the possibility of arrest for criminal trespass was also discussed and it was this offense she anticipated being arrested for on March 5, 2021, which is exactly what occurred.

These facts are nothing more than what happened before and on March 5, 2021. The Government's concern that a juror may dislike the Government's later decision to charge the Defendants in Federal Court in the instant indictment with these offenses and try them a FACE Act and conspiracy violation is unfortunate for the Government, however, criminal trespass was the initial charge–against the arrested Defendants and criminal trespass was an offense the Defendants anticipated potentially incurring on March 5, 2021. It is disingenuous for the Government to suggest that when the Defendants were arrested on March 5, 2021, that the police arrested them for a FACE Act violation and conspiracy when that was not the timeline of events. The Defendants do not intend to mention the *outcome of the charges in the criminal trespass case*, but the fact that they were arrested for criminal trespass is admissible and relevant, particularly since Ms. Davis is anticipated to testify about discussions amongst the parties about the potential for arrest that occurred prior to entering the Carafem Clinic building.

The United States Constitution guarantees criminal defendants "a meaningful opportunity" to present a complete defense. *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (internal quotation marks omitted). In the context of a criminal trial, an accused's right to present a defense derives from the Sixth Amendment. *Ferensic v. Birkett,* 501 F.3d 469,

475 (6th Cir. 2007). A central component of a defendant's right to present a defense is the right to offer the testimony of witnesses. *Taylor v. Illinois,* 484 U.S. 400, 409, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1998). The Defendants stress to the Court that they have a right to present a defense, including that their conduct certainly amounted to a criminal trespass. More critically, through Ms. Davis, they intend to show that, prior to March 5, 2021, the Defendants contemplated being arrested for a criminal trespass and when they spoke of *potential arrest* before and during the time they were at Carafem (arranging for their arrests with the police), both law enforcement and the Defendants were referring to arrest for the offense of criminal trespass. For the above reasons, the Court should deny the Government's request to restrict the Defendants from exploring these issues.

### B. The Defendants Have a Valid First Amendment Defense to Some, if not all of Their Conduct.

Turning to the Government's section related to the request that the Court restrict the Defendants from arguing that a defense to their conduct was the exercise of their First Amendment rights, the Government initially submits that the Court ruled, in its Memorandum Opinion denying the Defendants' collective motion to the dismiss the charges (D.E. 282), that because the First Amendment was not a sound basis for dismissing the case pretrial, the Defendants are barred from raising it as a defense. The Court is well aware that simply because the Court concluded that this was not a basis to dismiss the charges before a trial on the matter does not mean that the jury cannot find that the same argument creates a reasonable doubt as to the guilt of the Defendants. Obviously, the two determinations have a substantially different burden of proof. Further, even if that were not the case, the Government is asking the Court to substitute its own opinion about the

6

Case 3:22-cr-00327    Document 384    Filed 12/18/23    Page 6 of 20 PageID #: 1589

weight and sufficiency of the evidence against a particular defense for the opinion of the jury and without the benefit of all the evidence the jury will hear, from both sides, at trial. This is an insufficient basis for the Court to bar the defense from arguing that they were exercising their First Amendment rights during the alleged offensive conduct and they are not guilty of the charged offenses consequently.

Secondly, the Government argues that the First Amendment cannot be a defense used by the Defendants in this case citing *United States v. Amawi*, 695 F.3d 457 (6th Cir. 2012) and *United States v. Johnstone*, 107 F.3d 200 (3rd Cir. 1997) for this proposition. The *Amawi* case can be distinguished from the instant case as it deals with using such a defense to a conspiracy charge only, not a substantive offense that the Defendants face in this indictment. Likewise, the *Johnstone* case and those like it do not provide a reason why, in the instant case, the defense of First Amendment rights cannot be used. In *Johnstone*, the Court suggests that the Defendant's lack of knowledge of the law and/or the Constitution is not a defense to his charges, but this holding is inapplicable to the present case for reasons discussed below.

The cases the Government cites fail to explain why the Court should restrict the Defendants in this case from arguing to the jury that their assembly, speech and religious practice prior to March 5, 2021, during meetings of where they prayed and worshipped as well as inside the Carafem facility is not their exercise of First Amendment rights. This is particularly relevant considering the Government's factual assertions and indicted charges. Title 18 U.S.C. § 248 states that it is

7

violative of the statute when a defendant "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services". Since the offensive conduct may be perpetrated through the interference or intimidation by the Defendants with a person's or persons' movement in and out of a place providing reproductive health care, the Government's theory of the case and its belief in the exact conduct that comprises the offensive conduct need not be narrowly drawn based on the wording of the statute. Much of the evidence that the Government intends to submit to the jury is comprised of the Defendants and their associates meeting with one another and worshipping and praying in the days leading up to and on March 5, 2021, as well as actively trying to dissuade patients from getting abortions, which are acts that are protected by the First Amendment, but may also be interpreted by the jury as interfering or intimidating these individuals. If this conduct is what the Government relies on to carry their burden, the ability of the Defendants to assert that they were exercising their First Amendment rights instead of committing the instant offenses is both permissible and critical to a fair trial.

If the Defendants were engaged in First Amendment protected activity, such as assembly on the sidewalk, singing, praying, speaking out, this is obviously not criminal activity. Accordingly, if persons met to plan the First Amendment protected activities, they obviously were not planning to commit a crime or to engage in criminal activity. For the Government to prove the existence of a

8

Case 3:22-cr-00327     Document 384     Filed 12/18/23     Page 8 of 20 PageID #: 1591

criminal conspiracy, it must show the Defendants agreed on a plan that had a crime as its objective and, absent some intent to commit a crime, any agreed plan cannot be a criminal conspiracy. If, as in the instant case, accused persons talked prior to an event and agreed on a plan to engage in First Amendment activity, their plan did not have a crime as its objective. Since the Government intends to adduce evidence that the Defendants agreed on a plan with a criminal objective, so the Defendants must be permitted to rebut this with evidence of the nature of their participation with others. The *Amawi* court recognized this when it gave the following instruction to the jury: "Proof that people simply met together from time to time and talked about common interests, such as political views or religious beliefs, or engaged in similar conduct, is not enough to establish a criminal agreement." *Amawi*, 695 F. 3d at 482.

Lastly, the Government argues that admission of this defense would run afoul of Federal Rule of Evidence 403. F.R.E. 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

In the case of a Rule 403 analysis, the district court has "very broad" discretion in making its determinations. *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (citing *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989)). The Government fails to state why the presentation of the defense and arguments along these lines would be restricted by any of the "dangers" listed in F.R.E. 403 because it does not. This bar, that the probative value of evidence is "substantially outweighed" by one of the enumerated dangers, is an extremely high one to meet and, in this instance, it does not come close to being met.

Certainly the presentation of the defense that Defendants were exercising their First Amendment rights rather than violating the law cannot be considered time wasting, causing undue delay, or being the cumulative presentation of evidence as it would not cause any of those potential "dangers". Further, presentation of this evidence cannot be considered misleading the jury or confusing the issues as the assertions as to the conduct are factually accurate and it is the jury's role as trier of fact to determine if they accept that this was exercise of First Amendment rights, or not; the Government's intent is to remove this consideration from the jury altogether. Lastly, how the probative value of this information would be substantially outweighed by the risk of unfair prejudice cannot be demonstrated. The "term 'unfair prejudice' …. speaks to the capacity of some concededly relevant evidence to lure the factfinder into" making a decision based on something other than the facts presented at trial. *United States v. Old Chief*, 519 U.S. 172, 180, 117 S.Ct. 644 (1997). Presenting a relevant argument that is contrary to the Government's position and theory of the case does not engender unfair prejudice that would warrant F.R.E. 403 exclusion. The Defendants should be permitted to argue that their actions were protected by their First Amendment rights for the above reasons.

### C. Defenses of Necessity, Duress, and Defense of Others

The Government further argues that the Defendants be barred from arguing various formative defenses, namely Necessity, Duress and Defense of Others. The Government does not offer any compelling reason why the Court should prevent the Defendants from making arguments under any or all of these defenses.

10

The defense of Necessity/Justification[1] "excuses a violation of law if 'the harm which will result from compliance with the law is greater than that which will result from violation of it.'" *Rosemond v. United States*, 134 S. Ct. 1240, 188 L.Ed.2d 248, 572 U.S. 65, 86-87 (2014); quoting 2 W. LaFave, Substantive Criminal Law § 10.1, p. 116 (2003). If a defendant argues necessity, or justification, for his/her actions and this defense is accepted by the jury, it "allows a defendant to escape responsibility despite proof that his actions encompassed all the elements of a criminal offense." *United States v. Ridner*, 512 F.3d 846, 849 (6th Cir. 2008). This arises only "in rare situations" and "should be construed very narrowly." *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990). If a defendant make a *prima facie* case that a jury could conclude he/she had a justification for his/her otherwise criminal action, he/she is entitled to the following instruction and the jury must only find that the defendant has met these factors by a preponderance of the evidence:

(1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

(2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; . . . and

(5) that the defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Ridner*, 512 F.3d at 850; see also 6 Cir. Pattern Jury Instruction 6.07. "The defendant's initial burden in establishing these elements is not a heavy one, and is met even where there is weak supporting evidence for the defense." *United States v. Kemp*, 546 F.3d 759, 765 (6th Cir. 2008)

---

[1] The Government's motion references the "common law" defense of duress, however, in the 6th Circuit patterned instructions only Justification is provided as a defense under Chapter 6 and the term is largely used interchangeably.

The defense of Coercion/Duress[2] has very similar requirements to that of Justification. Just as with Justification, the trial court must determine that there has been a *prima facie* showing by the defendant that there is evidence to support his/her assertion as to each of the elements of the defense. *United States v. Capozzi*, 723 F.3d 720, 725 (6th Cir. 2013). If, after this showing, a defendant can prove the following elements by a preponderance of the evidence then the jury should accept his/her defense and find him/her not guilty:

(A) First, that the defendant reasonably believed there was a present, imminent, and impending threat of death or serious bodily injury [to himself] [to another];

(B) Second, that the defendant had not recklessly or negligently placed himself [another] in a situation in which it was probable that he would be forced to choose the criminal conduct;

(C) Third, that the defendant had no reasonable, legal alternative to violating the law;

(D) Fourth, that the defendant reasonably believed his criminal conduct would avoid the threatened harm; and

(E) Fifth, that the defendant did not maintain the illegal conduct any longer than absolutely necessary.

In the instant case, the Government is moving the Court to restrict the Defendant's ability to argue for these defenses. As noted above, the trial court has a duty to determine if the Defendants make a *prima facie* case that the Defendants will produce evidence as to each of the elements of the defense. *Capozzi*, 723 F.3d at 725. The Government seeks to bar the Defendants from even presenting this evidence for the Court to determine if the defense is viable. "'In a criminal case it is reversible error for a trial Judge to refuse to present adequately a defendant's theory of defense.'" *United States v. Johnson*, 416 F.3d 464, 467 (6th Cir. 2005) (quoting *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976) This is, at a minimum, incorrect procedurally and the Court should permit the Defendants to develop the evidence to support the defense rather than making a pretrial ruling regarding admissibility.

---

[2] This is the title of the defense in the 6th Circuit patterned instructions.

### D. The Government Seeks to Claim that any Defendant Statements are Self-Serving Statements Whereas the Government's Selection of Video Excerpts Distorts and Takes out of Context the Statements of the Defendants.

The Government moves the Court to exclude any "self-serving" statements that the Government does not choose to introduce during their case-in-chief. The Government notes that at least three different videos of the incident were taken by either Defendants or members of the group associated with the Defendants. Prior to and after the filing of this motion, the parties have attempted to craft an agreement on which portions of the videos will be admitted but a final agreement has not been reached. Prior motions *in limine* filed by the defense address this issue.

Notwithstanding the above, the Defendants maintain that they would have the right to play any relevant portions of the videos they wished to present to the jury to put the government's excerpts into context pursuant to F.R.E. 106. The common-law doctrine of completeness is partially codified in Rule 106: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part - or any other statement - that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." F.R.E. 106; see *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) "The 'rule of completeness' allows a party to correct a *misleading impression* created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009) (emphasis added). The rule of completeness outlined in F.R.E. 106 permits the party who is prejudiced by the opposing party's introduction of portion of a "document, or a correspondence, or a conversation," to then admit as much of the remainder of the statements as is necessary to negate or rebut whatever misleading impression was created by the "incomplete character" of the portion introduced by the opposing party. *United States v. Costner,* 684 F.2d 370, 373 (6th Cir. 1982) (quoting *United States v. Littwin,* 338 F.2d 141, 145 (6th Cir. 1964).

13

For the purposes of the Rule, Courts treat written and recorded statements "as equivalent". *United States v. Shaver*, 89 Fed.Appx. 529, 532 (6th Cir. 2004). Even if the request of the party seeking admission pursuant T.R.E. 106 is denied, "[t]he rule does not in any way circumscribe the right of the adversary to develop the matter on cross-examination or as part of his own case." F.R.E. 106 advisory committee's note. F.R.E. 611(a) provides that "the court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth." This rule is the "equivalent" of Rule 106 for oral statements. J. Weinstein and M. Berger, *Evidence,* P 106[01] (1986). F.R.E. 106 and 611(a) merely affect the order of the trial and, in order to avoid the "misleading impression created by taking a statement out of context", the opposing party may present the context along with the statement rather than later in the trial. *United States v. Costner,* 684 F.2d 370, 373 (6th Cir. 1982).

The Government is correct in their argument that F.R.E. 106 does not make inadmissible hearsay admissible. However, Rule 106 does offer the protection for the adverse party by allowing admission of portions that "in fairness ought" to be admitted. In this instance, the Government has proposed picking a few, non-sequential sections of lengthy videos[3] that, taken out of context, create a misleading impression of what occurred in the hallway outside the Carafem clinic on March 5, 2021. Portions of the remainder of the videos should be played "in fairness" so they do not mislead the jury about the overall course of conduct by the Defendants and their associates at Carafem on March 5, 2021. The other motions *in limine* filed by the defense further address this issue, but, for

---

[3] The Government has indicated that it intends to introduce excerpts from four different videos. The Government has indicated that it intends to introduce ten minutes and twenty eight seconds (twenty eight video excerpts) of a **nearly two hour** video referred to as the Gallagher video; fourteen minutes and thirteen seconds (thirty-one exerpts) of an **over two hour video** referred to as the Green video; three minutes and thirteen seconds (nine video excerpts) of a **thirty-five minute video** referred to as the Coleman Boyd video; and **sixteen seconds** (two excepts) of a **seventeen minute** Fox-17 news video.

14

the purpose of this pleading, the Government's motion is misplaced on this issue and the Defendants should be permitted to play additional portions of the video pursuant to F.R.E. 106.

Further, the Government argues that the basis for admitting the Defendants' statements in their case in chief lies F.R.E 801(d)(2) making those statements non-hearsay, however, the same rule and logic does not apply in the reverse for the Defendants introducing portions of their own statements. Notwithstanding the argument above relating to F.R.E. 106, F.R.E. 803(3) also serves as a basis for the admission of these statements by the Defendants. F.R.E. 803(3) provides that "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" is an exception to the prohibition against hearsay. The statements made by the Defendants during the incident at Carafem on March 5, 2021, did exactly this wherein they discuss their reasoning, motives, and intent for engaging in the assembly at Carafem that day. These statements should be admitted pursuant to F.R.E. 803(3) even if the Court finds no merit in the above argument under F.R.E. 106.

### E. Government's Character Argument is Misplaced

In this case, all the Defendants are extremely religiously devout and seek to live a lifestyle aligned with their spiritual, religious and Biblical beliefs. Several of the Defendants are pastors who hold positions of leadership in both the pro-life spiritual movement as well as in their local church or congregation. It is fair to say that some of the Defendants are very outspoken about their roles as spiritual leaders. Prior to and during the March 5, 2021 incident at Carafem, the Defendants met together where they worshipped, prayed, ate and generally assembled to share their religious and spiritual beliefs which include their opposition to abortions. The Defendant's introduction of this evidence at trial does not implicate F.R.E. 404 or any of the prohibitions

contained therein against character evidence and propensity. Rather, this information is provided to the jury to inform the jury of what occurred among these Defendants prior to and on March 5, 2021, and does not attempt to indicate to the jury that the Defendants are honest and of good moral character because of their religious activities and devotion. The Court should deny the Government's request to limit this evidence since it is not being introduced for the Government's purported reason and should not be controlled by F.R.E. 404.

## CONCLUSION

Based upon the foregoing, the Defendants maintain that many of the issues the Government seeks to limit the Defendants from raising in trial result in presenting to the jury a false impression of what occurred leading up to and on March 5, 2021. The Defendants' requests as outlined above should be granted, specifically they should be allowed to mention their strong anti-abortion based, they should be permitted to elicit and present testimony that these beliefs are spiritually based, the jury should know that the Defendants and others discussed the possibility of criminal trespass and were arrested for criminal trespass, they should not be barred from claiming much if not all of their conduct was First Amendment protected speech, assembly and religious practices, and they should not be barred from putting the Government's select video excerpts into context.

Respectfully submitted,

**/s/ Manuel B. Russ** =
MANUEL B. RUSS
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com
Attorney for Defendant Dennis Green

16

/s/ **Jodie A. Bell (by permission)**
JODIE A. BELL, No. 18336
Washington Square Building
214 Second Avenue North, Suite 208
Nashville, Tennessee 37201
(615) 953-4977
(615) 928-1901  facsimile
jodie@attorneyjodiebell.com
Attorney for Chester Gallagher

**/s/ William J. Conway  (by permission)**
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 260-5364
wjconway@gmail.com
Attorney for Defendant Heather Idoni

**/s/ Robert L. Parris (by permission)**
Robert L. Parris, Attorney at Law
200 Jefferson Avenue, Suite 1500
Memphis, TN 38103
(615) 490-8026
rlp@robertparrisattorney.com
Attorney for Defendant Calvin Zastrow

**/s/ Kerry Haymaker (by permission)**
Haymaker & Heroux, P.C.
545 Mainstream Drive, Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
Attorney for Defendant Coleman Boyd

**/s/ Stephen M. Crampton (by permission)**
 STEPHEN M. CRAMPTON
Thomas More Society
P.O. Box 4506
Tupelo, MS  38803
662-255-9439
scrampton@thomasmoresociety.org
Attorney for Defendant Paul Vaughn

# CERTIFICATE OF SERVICE

        I hereby certify that a true and exact copy of the foregoing Motion was filed electronically and served on the following by the EF/CME electronic filing system:

**WILLIAM J. CONWAY**
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 260-5364
wjconway@gmail.com
Attorney for Defendant Heather Idoni

**ROBERT LYNN PARRIS**
Robert L. Parris, Attorney at Law
200 Jefferson Avenue
Suite 1500
Memphis, TN 38103
(615) 490-8026
rlp@robertparrisattorney.com
Attorney for Defendant Calvin Zastrow

**G. KERRY HAYMAKER**
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
Attorney for Defendant Coleman Boyd

**HEATHER G. PARKER**
Evans Bulloch Parker PLLC
302 North Spring Street
PO Box 398
Murfreesboro, TN 37133-0398
(615) 896-4154
heatherparker@bfhelaw.com
Attorney for Defendant Caroline Davis

**LARRY LAMONT CRAIN**
5214 Maryland Way
Suite 402
Brentwood, TN 37207
(615) 376-2600
larry@crainlaw.legal

**STEPHEN M. CRAMPTON**
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
662-255-9439
scrampton@thomasmoresociety.org
Attorney for Defendant Paul Vaughn

**JODIE A. BELL**
Washington Square Building
214 Second Avenue North, Suite 208
Nashville, Tennessee 37201
(615) 953-4977
(615) 928-1901 facsimile
jodie@attorneyjodiebell.com
Attorney for Chester Gallagher

**DAVID R. HEROUX, P.C.**
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
(615) 250-0050
heroux@tennesseedefense.com
Attorney for Defendant Eva Edl

**DAVID L. COOPER**
Law Office of David L. Cooper, P.C.
208 Third Avenue, N Suite 300
Nashville, TN 37201
(615) 256-1008
dcooper@cooperlawfirm.com
Attorney for Defendant Eva Zastrow

**RAYBURN McGOWAN, Jr.**
8005 Church Street East
Suite 219
Brentwood, TN 37207
(615) 244-7070
mcgowanrayburnjr@bellsouth.net
Attorney for Defendant James Zastrow


**LEONARD E. LUCAS, III**
The Law Firm of Leonard Earl Lucas

315 Deadrick St, Suite 1550
Nashville, TN 37238
(301) 204-6498
leonard.lucas@lellawfirm.com
Attorney for Defendant Paul Place

**AMANDA J. KLOPF**
U.S. Attorney's Office (Nashville)
719 Church Street
Suite 3300
Nashville, TN 37203
(615) 736-5151
amanda.klopf@usdoj.gov
Representing **USA** (*Plaintiff*)

**KYLE BOYNTON**
Department of Justice
150 M Street NE
Washington, DC 20002
(202) 598-0449
Representing **USA** (*Plaintiff*)

                This the 18th day of December 2023.

                /s/ Manuel B. Russ
                MANUEL B. RUSS

20

Case 3:22-cr-00327    Document 384    Filed 12/18/23    Page 20 of 20 PageID #: 1603