IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:22-cr-00327 |
| v. ) | |
| ) | |
| ) | |
| [1] CHESTER GALLAGHER ) | |
| [2] HEATHER IDONI ) | |
| [3] CALVIN ZASTROW ) | |
| [4] COLEMAN BOYD ) | |
| [6] PAUL VAUGHN ) | |
| [7] DENNIS GREEN ) | |

**GOVERNMENT'S RESPONSE TO DEFENSE MOTION IN LIMINE NO. 1**

The United States of America, by and through undersigned counsel (hereinafter, the "Government"), respectfully opposes defendant's Motion in Limine Number One (Motion to Prohibit Carolyn Davis From Using Terms Such as "Culty," "Cult Leader," "Grooming," and "Commune") (Doc. 354). This Court should deny the defendant's motion without a hearing.

**a. Background**

Caroline Davis grew up going to reproductive health care facilities (RHCFs) to protest abortions as a child. As an adult, in 2017, she began going to RHCFs to protest, and became more active between 2018-2019. At these protests, Davis met Cal Zastrow, Coleman Boyd, and others.

The United States anticipates that Davis will testify that she met Zastrow in April or May of 2020. Initially, she only occasionally interacted with Zastrow, then began to interact with him constantly. During the course of interviews, Davis has made statements in the past that she now views Zastrow as a "cult leader." Based on Davis's experience, Zastrow "taught" his group like

1

he was teaching classes about his views on blockades, how to conduct them, and the risks and consequences of participating in a blockade. The United States anticipates that Davis will testify that Zastrow regularly spoke to her about "rescue," meaning a blockade of a RHCF, and the best ways to implement a rescue. Davis felt that Zastrow was "grooming" her to participate in a rescue, meaning that he always spoke to her about rescue, and was planting the seed for her to later participate in a rescue. In a prior trial, Davis testified that Zastrow was "the one who discipled [her] in the culty rescue movement." *See* Exhibit A to defendant's Motion in Limine Number One at p. 38.

Similarly, the United States anticipates that Davis will testify that she knew Gallagher prior to March 5, 2021, and that he shared with her his thoughts as a former police officer on how to best implement a blockade. Within the limitations of this Court's ruling regarding 404(b), (DE 352), the United States anticipates that Davis will testify that Gallagher was considered the "educator of rescues," and that while Davis was personally discipled by Zastrow, Gallagher was responsible for a broader education of rescues based on his law enforcement knowledge and religious beliefs. During the course of March 5, 2021, Gallagher acted consistently with Davis's description, talking directly into a camera, interfacing with police negotiators, and explaining his and his co-conspirators' actions as the morning wore on.

The United States also anticipates that Davis will testify about her prior relationship with Boyd. She has described her relationship with Boyd as "rough" because Boyd viewed her as not being a submissive enough woman. Davis has stayed at Boyd's home before, and described it as a large piece of land with several houses where families would come and stay, and that people staying there were required to attend Boyd's church. She has used terms like "commune" to

describe Boyd's home, described it as a "cult," and explained her opinion that the women who live on Boyd's property "can only speak when spoken to."

Generally, when explaining her conduct following her arrest in this case, Davis has testified that "I was separated from my relationship with the defendants in Tennessee and then also in Michigan a little bit later, I think it was, and I started having new friends that were not in the cult that were, like, challenging me -- like, Christians that were challenging me, even my boss, my boyfriend, lots of my close friends, my best friend, my family members started being honest with me about how they felt about all of it. And it changed my life. And, honestly, I'm thankful for it." *See* October 24, 2023, Transcript of Davis Testimony, Case No. 1:22-CR-096-4, attached as Exhibit A, p. 101-102.

　　b. **Law**

Rule 403 precludes the admission of otherwise relevant and admissible evidence only if "its probative value is *substantially* outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added). Evidence may be unfairly prejudicial for purposes of Rule 403 if it invites the jury to decide the case "on an improper basis," but not if "it only damages the defendant's case due to the legitimate probative force of the evidence." *United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016). Indeed, the Supreme Court has described *unfair* prejudice as "speak[ing] to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The trial court has "broad discretion" in balancing probative value against unfair prejudice. *See United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999); *see also United States v. Vance*,

3

871 F.2d 572, 576-77 (6th Cir. 1989) (stating the question is whether it is unfair and noting "[a]n important indication of probative value of evidence is the prosecution's need for the evidence in proving its case"); *Hardy*, 643 F.3d at 151-53; Fed. R. Evid. 403.

Relevant evidence is inherently prejudicial. Unfair prejudice "does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed [unfairly] prejudicial." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (brackets in original). Rule 403, furthermore, is a balancing test "strongly weighted toward admission." *United States v. Sosa-Baladron*, 800 F. App'x 313, 327 (6th Cir. 2020). "[D]efendants are not entitled to a 'sanitized' recounting of the facts, and [ ] prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *United States v. Peete*, 781 F. App'x 427, 433 (6th Cir. 2019) (citation omitted). Such is true in this case.

Here, as described below, for the categories of evidence that the United States intends to elicit testimony, Davis should not be precluded from describing her experiences in her own terms.

    c. **Specific Terms**

        1) *"Cult Leader" and "Culty"*

As noted by the defendants, the United States has agreed to prepare Ms. Davis not to use the term "cult leader" when discussing any of the defendants on direct examination and will include the terms "cult" and "culty" in that admonition. Therefore, this portion of the motion should be denied as moot.

        2) *"Grooming"*

Ms. Davis has a particular history with the defendants that is relevant to the charged

conduct. She describes her experience as being drawn in by Zastrow, where he communicated with her with increasing frequency about rescue, with the ultimate goal of "planting a seed" so that Davis would later participate in a rescue herself. This history is highly relevant to the charged conduct. In describing this experience, the United States anticipates that Davis may describe her experience as being "groomed" to participate in a blockade. Synonyms for the term "groomed" are not readily applicable and may not be an accurate depiction of Davis's experience. Therefore she should not be precluded from using that term. That said, if Davis uses the words "groomed" or "grooming," the United States will not leave the jury with a misunderstanding about what she is attempting to convey with that word.

### 3) *"Commune"*

Defendants take issue with Davis's description of Boyd's home as a commune, arguing that the term "implies something nefarious about his lifestyle choices." (Motion, DE 354, at PageID# 1280). According to the Oxford English Dictionary, a commune is "A group that practices communal living; a small community whose members share common interests, work, and income, and typically own property collectively." Oxford English Dictionary, s.v. "commune, n.[1], sense 3", September 2023. (https://doi.org/10.1093/OED/1066079162, last visited December 11, 2023). There is nothing prejudicial about this word. And as with references to grooming, if Davis uses the term "commune," the United States will ask additional questions to ensure that the jury is not left with a misunderstanding of her testimony.

### 4) *Testimony Related to Davis's Opinion that Defendant Boyd Requires Women to be Submissive*

The United States anticipates that Davis will testify that Boyd was domineering towards

5

women, and that he expected women to be submissive towards men. This is probative of the co-conspirators' relationships and interactions with each other, and Boyd's role in the offense. For example, at the beginning of the blockade, Patient A came onto the floor where the carafem clinic was located. As Patient A and her companion exited off of the elevator, Boyd tried to interact with them, but both walked away down a hallway unrelated to the clinic saying they needed to use a restroom. Boyd then called for his minor daughter to approach him, and directed her to follow them, saying "so go back to talk to them." It also is probative of Davis's relationship with Boyd. We anticipate she will testify that Zastrow was the primary person who "planted a seed" to encourage her to participate in a rescue, but that Boyd was also part of that process, and that process was tinged by Boyd's expectations about the role of a woman. Further, Boyd has a role in the blockade that appears arms length – he stands at the end of the hallway at the opposite side from the clinic, avoiding physically blocking the door, but supported and encouraged others to do so. Precluding Davis from explaining her relationship with Boyd would overly "sanitize" the facts. *Peete*, 781 F. App'x at 433.

## CONCLUSION

For the foregoing reasons, the Government requests that this Court deny the Defendants' First motion in limine.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

*s/Amanda J. Klopf*
AMANDA J. KLOPF

Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

*s/Wilfred T. Beaye, Jr.*
WILFRED T. BEAYE, JR.
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 771-333-1681
Wilfred.Beaye@usdoj.gov

# CERTIFICATE OF THE SERVICE

I certify that a true and correct copy of the foregoing was filed electronically and served electronically, via the CM/ECF electronically filing system on this 18th day of December, 2023, upon the following:

**JODIE A. BELL**
Law Office of Jodie A. Bell
Washington Square Building 214 Second Avenue North Suite 208
Nashville, TN 37201
USA
jodie@attorneyjodiebell.com
(615) 953-4977

*Attorney for Defendant Chester Gallagher*

**WILLIAM J. CONWAY**
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 260-5364
wjconway@gmail.com

*Attorney for Defendant Heather Idoni*

**LARRY LAMONT CRAIN**
5214 Maryland Way
Suite 402
Brentwood, TN 37207
(615) 376-2600
larry@crainlaw.legal

**STEPHEN M. CRAMPTON**
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
662-255-9439
scrampton@thomasmoresociety.org

*Attorneys for Defendant Paul Vaughn*

**G. KERRY HAYMAKER**
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com

**STEVE C. THORNTON, I**
Steve Thornton Attorney Law Office
P.O. Box 16465
Jackson, MS 39236
USA
mail@lawlives.com
(601) 982-0313

*Attorneys for Defendant Coleman Boyd*

**MANUEL B. RUSS**
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com

**JOHN R. MANSON**
3112 Carrington Court
Nashville, TN 37218
USA
jmanson@lewisthomason.com
615-259-1366

*Attorneys for Defendant Dennis Green*

**ROBERT LYNN PARRIS**
208 3rd Avenue North Ste 300
Nashville, TN 37201
rlp@robertparrisattorney.com
(901) 490-8026

*Attorney for Defendant Calvin Zastrow*

                                            s/ *Amanda Klopf*
                                            AMANDA J. KLOPF
                                            Assistant United States Attorney