IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 3:22-cr-00327 |
| | ) | Judge Trauger |
| [1] CHESTER GALLAGHER | ) | |
| [2] HEATHER IDONI | ) | |
| [3] CALVIN ZASTROW | ) | |
| [4] COLEMAN BOYD | ) | |
| [6] PAUL VAUGHN | ) | |
| [7] DENNIS GREEN | ) | |

**ORDER**

The government has filed a Motion to Protect Witnesses (Doc. No. 353), to which the

defendants have responded in opposition (Doc. No. 393), and the government has filed a Reply

(Doc. No. 401). As set forth herein, the motion will be granted in part and denied in part.

**I.     BACKGROUND**

The first part of the government's motion requests that civilian witnesses, including clinic

employees, patients, and patients' family members, be permitted to testify under a pseudonym,

thus protecting them from harassment and other potentially unlawful conduct. The second part of

the motion seeks to limit the scope of cross-examination of clinic employees, patients, and

patients' family members regarding "the specific reproductive health services patients sought or

obtained, or that medical staff provided or were trained to provide." (Doc. No. 353, at 4.)

The defendants have not responded to the second part of the motion. With regard to the

first part, requesting that certain witnesses be allowed to testify under a pseudonym, the

government proposes to file under seal for the court and the defendants a witness list identifying

the civilian witnesses and the pseudonyms they will use while testifying, thus permitting effective cross-examination and, according to the government, obviating any Confrontation Clause concerns. The government maintains that four of the witnesses have already expressed concerns about their safety and that permitting the civilian witnesses to testify anonymously is necessary to protect them from "well-documented" "threats of [violence] and actual violence." (Doc. No. 353, at 2–3.)

The defendants object to this request on the basis that they have a right under the Confrontation Clause to cross-examine witnesses—not only about their true names, but also about their place of residence and employment. (Doc. No. 393, at 6.) They acknowledge that this right is not absolute, but they argue that the government raises only "unfounded and conjectural concerns" that witnesses will be subjected to threats of violence or actual violence as a result of their testimony at trial. The defendants point out that none of them is charged in this case with violent acts. (*Id.* at 3.) The defendants also argue that permitting witnesses to testify under pseudonyms would unduly complicate *voir dire* and the determination of whether any prospective jurors know or have any type of relationship with any of the witnesses. (*Id.* at 7.)

The government's Reply (Doc. No. 401) argues that the defendants have failed to show that the witnesses' identities in this case are relevant or significant or that permitting them to testify under pseudonyms would implicate the Confrontation Clause, so long as the defendants are provided the witnesses' true names. The government recognizes that the *voir dire* problem identified by the defendants is a legitimate concern. It proposes to display driver's license photographs during *voir dire* to enable prospective jurors to determine whether they know or recognize any of these witnesses. Regarding the witnesses' concerns about threats and actual violence, the government states that its concerns are "less related to the six defendants themselves

. . . and more related to the anticipated actions of their supporters." (Doc. No. 401, at 4.) The government argues that the actions of protestors at a recent similar trial in Washington, D.C., including social media posts about prosecutors and the judge and evidence excluded from trial in an effort to "encourage juror nullification," might have been effective if the witnesses in that case had not been allowed to testify under pseudonyms. The government's particular concern is "the use of the internet to attempt to intimidate witnesses or punish them following their testimony." (*Id.*)

## II. ANALYSIS

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." U.S. Const. amend. VI. The Supreme Court has held that a defendant has the right under the Confrontation Clause to cross examine a witness regarding the witness's full name and place of residence. *See Smith v. Illinois*, 390 U.S. 129, 131–32 (1968) ("To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself."). This right, however, is not unqualified. Trial judges have "wide latitude . . . to impose reasonable limits . . . on cross examination based on concerns about, among other things, harassment, prejudice, . . . or the witness' safety." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) ("*Smith v. Illinois* . . . 'does not establish a rigid rule of disclosure, but rather discusses disclosure against a background of factors weighing conversely, such as personal safety of the witness.'" (quoting *United States v. Cosby*, 500 F.2d 405, 407 (9th Cir. 1974))).

The Sixth Circuit does not appear to have addressed the question of permitting witnesses in a criminal case to testify using pseudonyms, but those circuits that have have uniformly held that, "[w]hen the government seeks to withhold a witness's true name, address, or place of

employment, it bears the burden of demonstrating that 'the threat to the witness [is] actual and not

a result of conjecture.'" *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (quoting

*United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969)). Thus, for example, a "generalized

statement" to the effect that "*anyone* who testifies against [a gang member] faces danger from [the

gang]" would not be sufficiently particularized. *Id.* at 501. But, once the government makes the

requisite showing of an actual, particularized threat, then the district court "has discretion to review

relevant information and determine whether disclosure of the witness's identifying information is

necessary to allow effective cross-examination." *Id.*; *see also United States v. Gutierrez de Lopez*,

761 F.3d 1123, 1144 (10th Cir. 2014) ("[C]ourts evaluate Confrontation Clause claims based on

anonymous testimony by asking (i) whether the government has demonstrated a threat and if so,

(ii) whether anonymous testimony deprived the defendant of an opportunity for effective cross-

examination.").

      In other words, the court must first determine whether the government has carried its

burden of establishing the existence of an actual threat to the witnesses, before considering whether

proposed measures to protect the witnesses would nonetheless permit the defendants to conduct

an effective cross-examination. Virtually all of the appellate decisions affirming district court

decisions permitting government witnesses to testify under a pseudonym have involved

identifiable threats to the witnesses' personal safety. *See, e.g.*, *Gutierrez de Lopez*, 761 F.3d at

1144 (noting that "circuits affirming the use of anonymous testimony have done so in part because

the Government produced specific evidence of a threat" and finding insufficient the government's

"generalized statements that anyone who cooperates in a case with cartel connections faces

danger" and its failure to support more concrete assertions raised at trial with "sealed affidavits or

any other specific evidence of a threat"); *Ramos-Cruz*, 667 F.3d at 501 (finding the threat

sufficiently concrete where the witnesses "specifically explained the heightened level of danger to which El Salvadorans who testify against MS-13 [gang] in U.S. courts are subject," particularly given the "limited focus of the witnesses' testimony"); *United States v. Celis*, 608 F.3d 818, 832 (D.C. Cir. 2010) (finding "little question that a protective order for certain Colombian government witnesses was appropriate in light of the government's submissions in its sealed in limine motion for a protective order [recounting] how the FARC [a significant Colombian drug trafficking organization], with which [defendants] were associated in varying degrees, had . . . issued bulletins threatening death to anyone who 'betrayed [one of the defendants],' and directly threatened to kill at least two cooperating witnesses" and the motion in limine "indicated the FARC had routinely used violence against its enemies"); *see also Palermo*, 410 F.2d at 473 (reversing because, "[w]hile there was an adequate showing of a threat to the life of [one witness], there was no showing as to [the other witness]," and "[i]n neither case was the relevant information disclosed to the trial judge in order that he could make an informed decision").

In this case, the government makes very generalized assertions that abortion providers have frequently been the targets of violence, and it claims that these concerns are not "just theoretical for the potential witnesses in this case," citing four witnesses with whom the government has met in the past month, all of whom "expressed concerns for their safety." (Doc. No. 353, at 3.) The government, however, has not produced affidavits from any of these witnesses or explained the source of their "expressed concerns." It relies on an opinion from the United States District Court for the District of Columbia that permitted witnesses in a very similar case to testify under pseudonyms. That case relied on vague evidence of an "increased risk of threats, intimidation, and violence against providers and recipients of abortion services in the District of Columbia over the past year." *United States v. Handy*, No. CR 22-096 (CKK), slip op. at 2 (D.D.C. Aug. 8, 2023).

This evidence, though weak, is stronger than the government's proffer to this court and has no relevance to this Nashville, Tennessee prosecution.

The government's Reply also cites the possibility of attempts at witness and jury tampering through social media posts and, again without supplying any declarations or affidavits or other admissible evidence, refers generally to the leafletting, disruptive protests, and inappropriate social media posts in connection with the similar trial in the District of D.C. But concerns about leafletting and protests will not be addressed by permitting witnesses to testify under a pseudonym, and the government's concerns about social media harassment do not qualify as evidence. Moreover, the government has not brought to the court's attention any cases holding that harassment via social media, standing alone, qualifies as sufficiently threatening to warrant permitting witnesses to testify by pseudonym.

The court is well aware of the heightened emotions surrounding the entire issue of access to abortion in this country and this state. The court also accepts, as a matter of common knowledge, that social media harassment can be incredibly invasive, harmful, and potentially dangerous. Some concerns about harassment have likely been mitigated, however, by the fact that abortion is no longer legal in Tennessee. Moreover, regardless of these potential concerns, the government simply has not carried its burden of showing a particularized risk of harm to the personal safety of the witnesses whom its seeks to have testify pseudonymously. For that reason, the first part of the government's Motion to Protect Witnesses will be denied. The government may certainly renew its motion in the event it becomes aware of any particularized threats to any of its testifying witnesses.

## III.    CONCLUSION AND ORDER

The government's Motion to Protect Witnesses (Doc. No. 353) is **GRANTED IN PART AND DENIED IN PART**, as follows.

The first part of the motion, requesting that the government's civilian witnesses, including clinic employees, patients, and patients' family members, be permitted to testify under a pseudonym is **DENIED**, but without prejudice to the government's ability to renew the motion in the event it becomes aware of actual—rather than conjectural—danger or threatened violence to any of these witnesses.

Regarding the second part of the motion, seeking to limit the scope of cross-examination of clinic employees, patients, and patients' family members regarding "the specific reproductive health services patients sought or obtained, or that medical staff provided or were trained to provide" (Doc. No. 353, at 4), the court finds that cross-examination on these subjects is irrelevant, has no probative value, and is substantially outweighed by the privacy interests of the patients and employees under Federal Rule of Evidence 403. For these reasons, and because the request is unopposed, the motion is **GRANTED** with respect to the proposed limitations on cross-examination of these government witnesses.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
U.S. District Judge