# **EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FEMHEALTH USA, INC., d/b/a carafem, | ) |
| Plaintiff, | ) NO. 3:22-cv-00565 |
| v. | ) JUDGE CAMPBELL |
| | ) MAGISTRATE JUDGE FRENSLEY |
| RICKEY NELSON WILLIAMS, JR., et al., | ) |
| Defendants. | ) |

# MEMORANDUM

Pending before the Court is Plaintiff FemHealth USA, Inc.'s ("Plaintiff" or "carafem") Motion for Preliminary Injunction (Doc. No. 13), which was filed on August 9, 2022. Through the motion, Plaintiff seeks relief against Defendants Rickey Nelson Williams, Jr., Bevelyn Z. Williams, Edmee Chavannes, Jason Storms, Chester Gallagher, Matthew Brock, Coleman Boyd, Frank "Bo" Linam, Brent Buckley, AJ Hurley, and Operation Save America National Inc. ("OSA").

The above-named Defendants have received notice of this action and the Motion for Preliminary Injunction. (*See* Doc. Nos. 25-35). Counsel for Defendants OSA, Jason Storms, Matthew Brock, Coleman Boyd, Frank Linam, and Brent Buckley (the "Represented Defendants") have entered appearances in this case and filed a joint response and supplemental response in opposition to Plaintiff's Motion for Preliminary Injunction. (Doc. Nos. 42, 57). Plaintiff filed a Reply. (Doc. No. 49). The United States filed a Statement of Interest. (Doc. No. 48).

The Court held a hearing on the pending motion on September 9, 2022, which was attended by counsel for Plaintiff, and counsel for Defendants OSA, Jason Storms, Matthew Brock, Coleman Boyd, Frank Linam, and Brent Buckley.

Defendants, Rickey Williams, Bevelyn Williams, Edmee Chavannes, Chester Gallagher and AJ Hurley did not respond to the pending motion or attend the hearing. Accordingly, Plaintiff's motion is deemed unopposed by these Defendants. *See* Local Rule 7.01(a)(3) (a motion is deemed unopposed if a timely response is not filed).

## I. PROCEDURAL BACKGROUND

Plaintiff carafem filed a Complaint (Doc. No. 1) and Motion for Temporary Restraining Order (Doc. No. 2) on July 29, 2022, alleging Defendants violated the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 ("FACE" or the "FACE Act"), on July 26, 2022, and July 28, 2022. The Court granted the motion for temporary restraining order and entered an order restraining, enjoining, and prohibiting Defendants and their representatives, agents, employees, servants, attorneys, and all others acting in concert or participation with any of them, from:

(a) physically obstructing, intimidating, injuring or interfering with any person who is or has been obtaining or providing reproductive health services at Providence Pavilion's facility at 5002 Crossings Circle, Mt. Juliet, Tennessee; and

(b) entering onto the property of Providence Pavilion at 5002 Crossings Circle, Mt. Juliet, TN 37122 during carafem's hours of operation Monday through Friday, 8:00 a.m. to 5:00 p.m. and Saturday 8:00 a.m. to 1:00 p.m. and during the time periods both two hours before and two hours after carafem's hours of operation

(Doc. No. 9). On August 9, 2022, Plaintiff filed the Motion for Preliminary Injunction (Doc. No. 13), that is the subject of this Memorandum and Order. The temporary restraining order has been extended several times to allow the parties to brief and the Court to consider Plaintiff's Motion for Preliminary Injunction. (*See* Doc. Nos. 11, 36, 63). Ten days after filing the Motion for Preliminary Injunction,

Plaintiff filed an Amended Complaint. (Doc. No. 38). None of the Defendants has filed an answer to the Complaint or Amended Complaint.[1]

## II. FACTUAL BACKGROUND[2]

Plaintiff carafem operates a network of reproductive health centers, including one located at inside the Providence Pavilion, a medical office building in Mount Juliet, Tennessee (the "Mount Juliet location"). (Doc. No. 1 ¶¶ 1, 15; Doc. No. 1-1 ¶ 2). The Mount Juliet location provides reproductive health services. (Doc. No. 1 ¶ 16).

OSA is an entity incorporated under the laws of Florida. (Doc. No. 1 ¶ 7). The individual Represented Defendants are members of OSA. (Doc. No. 1. ¶¶ 6, 9-12).

On July 26, 2022, approximately 150 OSA members and affiliates gathered on the streets and sidewalks outside the Providence Pavilion medical building ("the medical building"). (Doc. No. 1-1 ¶ 7; Doc. No. 1-2 ¶ 7). A group of ten to twenty men, including Storms, Boyd, and Linam, approached the medical building. (Doc. No. 42-11). Brent Buckley posted videos of the interaction on Facebook. (*See* Doc. No. 16 ¶ 5, Ex. B (manually filed with the Court)). The men told the security guards that they wanted to "talk to the abortion clinic" because they had "gotten some information that they are performing abortions right now." (*Id.*). When told by security personnel to get off the property, said "no sir," and refused to leave (*Id.*). The police report states that the group "covered a large portion of the entrance and presented an obstacle to entering." (Doc. No. 42-11). The group remained in front of the building for several minutes until police ordered the group to move across the street. (Doc. No.

---

[1] On September 12, 2022, the Magistrate Judge granted a motion filed by the Represented Defendants for an extension of time to answer the Amended Complaint until September 22, 2022. (Doc. No. 64).

[2] The factual background is only as to carafem's FACE Act claim against the Represented Defendants.

3

42-3 ¶ 12). The video viewed during the hearing shows that during this time several people entered and exited the building.³ (Doc. Nos. 42-1 ¶ 13; 42-3 ¶ 11; 42-10 ¶ 11; 42-11).

After they left the medical building entrance, Storms and others told Mt. Juliet police officers that they considered themselves above the law and that they had men willing to go inside and stop the clinic from performing abortions. This interaction was also captured on video and posted to Brent Buckley's Facebook account. (Doc. No. 16 ¶ 5, Ex. C (manually filed with the Court)). The video shows members of the group telling the Mt. Juliet Police officers, "It really doesn't matter what men say . . . our position is that there is babies being murdered in there … it doesn't matter what the D.A. says or anybody else, it's not going to change what's really going on behind there – murders, homicide. We got men out here who are willing to do what needs to be done. We would rather you guys do what God has ordained you to do – and that is to reward good and punish evil – but in the absence of that, we have to protect life … We have to obey God rather than men. It doesn't matter what a man in an air-conditioned office says – you have a duty to God to protect life at every level." (*Id*. at 00:05-1:04). The police officer tells the group that unlawful action will be handled accordingly. (*Id*. at 1:05-1:23). The speaker responds, "We're going to be obedient to god's law, not man's." (*Id*. at 1:23-1:27). Another member of the group adds, "We think it's always lawful." (*Id*. at 1:27).

### III. The FACE Act

Congress enacted the FACE Act in the 1990s to provide federal protections for reproductive health providers. (*See* United States' Statement of Interest, Doc. No. 48 at 3-4) (citing A*bortion Clinic Violence: Hearing Before the Subcomm. on Crime & Crim. Just. of the House Comm. on the Judiciary* 103rd Cong. 2 (1993); *The Freedom of Access to Clinic Entrances Act of 1993: Hearing on S.636 Before the S. Comm. On Lab. & Hum. Res.*, 103rd Cong. 1 (1993))).

---

³ A longer clip of the video was played during the hearing.

The FACE Act provides for civil remedies and criminal penalties against persons who:

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services;

18 U.S.C. § 248(a)(1). "Reproductive health services" includes, but is not limited to, abortion services. 18 U.S.C. § 248(e)(5). The statute defines "reproductive health services" as "services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." *Id*.

The FACE Act defines "physical obstruction" as "rendering impassable ingress to or egress from a facility that provides reproductive health services . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). The FACE Act is not limited "to bodily obstruction, but rather is broadly phrased to prohibit any act rendering passage to the facility unreasonably difficult." *U.S. v Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001); *see, e.g., United States v. Soderna*, 82 F.3d 1370, 1377 (7th Cir.1996), *cert. denied sub nom*, *Hatch v. United States*, 519 U.S. 1006 (1996) (even making access "unreasonably difficult" violates the FACE Act). The FACE Act's definition of "physical obstruction" covers temporary obstruction. *See New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 (S.D.N.Y. 2006). Examples of "[a]cts of physical obstruction that are sufficient to create liability under FACE include obstructing or slowing access to driveways or parking lots; standing in front of pedestrians as they try to enter a clinic; blocking clinic doors by standing directly in front of them; blocking patients inside automobiles by standing close to car doors; and participating in a demonstration so close to a clinic entrance that patients are compelled to use an alternate entrance." *Id*. (citations omitted); *see also United States v. Dugan*, 450 F. App'x 20, 22 (2d Cir. 2011) (finding a defendant who kneeled in front of a clinic entrance "in a silent,
5

prayerful position" when no patients approached violated the FACE Act). Finally, the statute provides that "[t]he term 'interfere with' means to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2).

## IV. ANALYSIS

At the time carafem filed its present motion for preliminary injunction, the operative complaint alleged Defendants violated the FACE Act by obstructing patients' access to carafem and carafem's ability to serve patients. (*See* Doc. No. 1). The United States submits that the FACE Act should be broadly interpreted to include all forms of physical obstructions to clinic access, even where those obstructions are temporary, incomplete, or do not employ particular tactics. (*See* Doc. No. 48 at 4).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The Court turns to each of these considerations.

The evidence shows that on July 26, 2022, ten to twenty OSA members and affiliates, including Defendants Storms, Boyd, and Linam, stood immediately outside the entrance to the medical building where carafem is located. They remained there for several minutes and refused to leave when requested to do so. The group spoke with security guards, requested access to the building so they could "talk to the abortion clinic," and despite being asked to leave the property, remained in the area of the building entrance until police ordered them to move across the street. During this time at least three security officers responded to the area, two of whom physically blocked the group's access to the building by standing in the doorway. Although several people were able to enter and exit the building during this time, the Court finds that the groups presence interfered with persons

6

Case 3:23-cv-00036-TRM-DCP Document 45-4 Filed 09/10/24 Page 7 of 9 PageID #: 502
Case 3:22-cv-02056 Document 53 Filed 09/19/24 Page 7 of 8 PageID #: 2107

attempting to access the building and that they attempted to interfere with persons obtaining or providing reproductive health services. Accordingly, the Court finds Plaintiff is likely to succeed on their claim that Defendants violated the FACE Act.

Interference with access to health services cannot be compensated by money damages and, therefore, constitutes irreparable harm. *See Obama for America*, 697 F.3d 423, 436 (6th Cir. 2012) ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.") (citation omitted). Defendant's conduct and statements strongly suggest that they intend to continue to interfere with the ability of carafem's staff to provide legally permissible reproductive health services and with the ability of carafem's patients to receive such services. The Court finds Plaintiffs have demonstrated that irreparable injury is likely in the absence of an injunction.

The balance of equities weighs in favor of issuing a preliminary injunction to prevent Defendants from interfering or attempting to interfere with ability of carafem providers to provide reproductive health services to patients and the ability of patients to obtain those services. The Represented Defendants argue that an injunction in unwarranted because their desire to return to carafem is "greatly lessened" now that carafem is no longer permitted to offer abortion services at this location. (Doc. No. 42 at 25). This argument is unpersuasive. Defendants have clearly expressed a willingness to take the law into their own hands if, in their view, law enforcement is not taking appropriate action. Concerningly, Defendants have stated that they do not consider themselves bound to the laws of man. On July 26, 2022, they told law enforcement, "We have to obey God rather than men," and "We're going to be obedient to god's law, not man's." (Doc. No. 16 ¶ 5, Ex. C (manually filed with the Court)). Given these statements, the Court is concerned that if Defendants believe they have information that carafem is violating the law, they will return to carafem's premises and interfere with patients and service providers.

7

A preliminary injunction will not restrict any of the rights of the Defendants, including their First Amendment rights, outside the property of the Providence Pavillion where carafem's office is located or outside a two-hour window of carafem's hours of operation (two hours before opening to two hours after closing).

Finally, the Court finds that the public interest weighs in favor of granting the injunction. The public interest is served by ensuring access to health care services provided by carafem. Moreover, Defendants' stated intention to take the law into their own hands when they believe law enforcement is not acting appropriately is contrary to public interest because such intended vigilantism violates existing law and has no place in a civilized society – a society that provides peaceful venues to address grievances.

## V. CONCLUSION

Plaintiff has shown a likelihood of proving at trial that the Represented Defendants physically obstructed an entrance to carafem's facility with the intent to intimidate or interfere with persons who were obtaining or providing reproductive health services, and that they are likely to continue to do so in the absence of an injunction.

Accordingly, Plaintiff's Motion for Preliminary Injunction will be GRANTED in part. An injunction will issue by separate Order.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE