IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-CR-00327 |
| ) | JUDGE TRAUGER |
| CHESTER GALLAGHER; HEATHER IDONI; ) | |
| CALVIN ZASTROW; COLEMAN BOYD; ) | |
| PAUL VAUGHN; and DENNIS GREEN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DEFENDANTS' CORRECTED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR RECONSIDERATION AND OPPOSITION TO THE MOTION OF THE "DOE WITNESSES" FOR PROTECTIVE ORDER

Defendants Chester Gallagher, Heather Idoni, Calvin Zastrow, Coleman Boyd, Paul Vaughan, and Dennis Green (collectively, "Defendants") hereby oppose the motion for protective order filed January 9, 2024, by three "Jane Doe" witnesses and respectfully move the Court to reconsider its January 10, 2024 Memorandum and Order granting this motion. For the reasons stated below, Defendants ask the Court to grant reconsideration and deny the motion for protective order.[1]

### INTRODUCTION

On January 9, 2024, three "Jane Doe" witnesses who have been subpoenaed by the Government to testify in the upcoming trial of this matter (hereinafter collectively, "Doe Witnesses") filed a motion for protective order (D.E. #453). The next day, prior to a response

---

[1] Though Defendants contend that it need not be subject to a protective order, Defendants do not propose to cross-examine the Doe Witnesses regarding their home addresses or current places of employment, unless such information is elicited on direct examination and the questioning would have probative value.

being filed by any defendant, the Court entered its Memorandum and Order granting the motion (D.E. #470). The Court has since indicated that it will consider opposition to the motion from Defendants and potentially reconsider its January 10, 2024 ruling.

The Sixth Amendment generally precludes witnesses testifying in a criminal trial under pseudonym. This presumption may be overcome when the Government demonstrates with sufficient specificity that anonymity is necessary to protect the safety of a witness or serve a related interest. The record before this Court, however, does not support the drastic step of testimony by pseudonym for the Doe Witnesses.

Therefore, Defendants respectfully ask the Court to reconsider its January 10 Memorandum and Order and deny the motion for protective order seeking use of pseudonyms by the Doe Witnesses.

## **ARGUMENT**

### I. THE COURT'S ORDER SHOULD BE SET ASIDE BECAUSE DEFENDANTS DID NOT HAVE AN OPPORTUNITY TO BE HEARD ON THE MOTION PRIOR TO ITS ENTRY.

Even though the Federal Rules of Criminal Procedure do not expressly provide for a motion to reconsider an order in a criminal case, courts have recognized such motions and generally applied the standards applicable to motions to reconsider in civil actions. *See, e.g., United States v. Kincaid*, Case No. 3:10-CR-160-TAV-HBG-1, 2019 WL 6898644, at *2 n.1 (E.D. Tenn. Dec. 18, 2019); *United States v. Titterington*, Case No. CR. 2-20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003). This Court's Local Civil Rules contemplate the filing of a motion for reconsideration when action has been taken prior to a response. M.D. Tenn. L.R. 7.01(a)(3) ("The Court may act on the motion prior to the time allowed for response. In such event, the affected party may file a motion to reconsider the Court's ruling within fourteen (14) days after service of

the order reflecting the action of the Judge."). And "a district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case." *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009). Additionally, this Court has recognized that insufficient time to respond to a motion may be grounds for granting reconsideration. *Good v. Triton Steel Group, LLC*, Case No. 3:21-cv-00337, 2022 WL 17853360, at *6 (M.D. Tenn. Dec. 22, 2022) (Trauger, J.).

Here, Defendants did not have an opportunity to respond to the Doe Witnesses' motion before entry of an order granting a protective order because the order was entered the day after the motion's filing. This not only denied Defendants an opportunity to be heard on the law, but also denied them the ability to raise pertinent facts. It is also notable that the Doe Witnesses waited until four business days prior to the start of trial to submit their motion and declarations, despite having been represented by counsel for over a year and conferring with the Government and the Government's counsel as early as November 30, 2023 and again on January 4, 2024, along with their private attorneys.[2]

Therefore, Defendants submit that it is proper to grant reconsideration of the motion for protective order.

> II. **THE GOVERNMENT AND THE DOE WITNESSES HAVE FAILED TO ARTICULATE A NEED FOR PSEUDONYMS WITH THE PARTICULARITY DEMANDED BY THE SIXTH AMENDMENT AND THUS HAVE NOT CARRIED THEIR BURDEN OF DEMONSTRATING THE NECESSITY FOR ANONYMITY.**

The record before the Court does not provide the particularized showing that is required before a defendant's Sixth Amendment right to confrontation can be curtailed through use of witness pseudonyms. The Sixth Amendment to the United States Constitution provides that "[i]n

---

[2] Counsel will submit under seal FBI 302 reports of this meeting and other information pertinent to the disclosure of the Doe Witness identities should the Court so desire.

all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . [and] to be confronted with the witnesses against him[.]" U.S. Const., amend. VI; *see generally Crawford v. Washington*, 541 U.S. 36, 49 (2003) (quoting *State v. Webb*, 2 N.C. 103, 104 (Super. L. & Eq. 1794) (*per curiam*)) ("'[I]t is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine.'"). The right to confrontation under the Sixth Amendment includes the right to examine a witness about basic biographical details, such as the witness' name and address. "[A] witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." *Smith v. Illinois*, 390 U.S. 129, 131-32 (1968).

Though the Sixth Circuit has not set out a test governing when witnesses may testify anonymously, "[c]ourts from outside the circuit have . . . balanced a defendant's Sixth Amendment rights against the government's interest (including things like witness safety) when defendants raise a Confrontation Clause challenge to witnesses testifying under pseudonym." *United States v. Fox*, Case No. 1:20-CR-183, 2022 WL 1025953, at *2 (W.D. Mich. Mar. 3, 2022) (citations several cases). Even in cases involving the safety of law enforcement officers, courts have decided against witness anonymity and in favor of the right to confrontation. For example, in *United States v. Fox*, the Court denied the Government's request for two FBI agents to testify without using their real names. The Government could not "identify any concrete harm" that would result, even when the Government said disclosure would undermine an on-going investigation. While the Government tried to rely on a social media post to support the likelihood of harm (and this post— unlike anything at issue here—actually referred a "cash bounty" for the "rat" who caused the

defendants' arrest), the court found this insufficient: "As for the social media post that appeared shortly after the defendants' arrests, the government does not disclose the identity of the author, or suspected author, or whether there have been any efforts by third parties to follow up on the post." *Id.* at *3. In spite of all of these concerns, the court found them "less concrete and less substantial" than the need to protect the defendants' constitutional rights. *Id.* "Making it crystal clear to the jury and the public that inside the Courtroom, nothing is undercover and everything is out in the open will best ensure fairness during trial and eventual acceptance and respect for whatever the jury ultimately decides." *Id.* at *2.

Other cases show the substantial burden faced by those seeking to rely on anonymous testimony. The Seventh Circuit has stated that "the threat to the witness must be *actual* and not a result of *conjecture*" and "*[u]nder almost all circumstances, the true name of the witness must be disclosed*." *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) (citations omitted) (emphasis added). A case where anonymity has been held proper involved certain Colombian government witnesses testifying against defendants "indicted for engaging in a drug conspiracy with ties to the FARC, and the government presented evidence that in Colombia the FARC had killed people suspected of helping to arrest [one of the defendants] and had threatened to kill cooperating witnesses." *United States v. Celis*, 608 F.3d 818, 833 (D.C. Cir. 2010).

The case of *United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012), similarly approved anonymous witnesses in the context of an international narco-terrorism prosecution. El Salvadoran law enforcement agents were permitted to testify anonymously against MS-13. *Id.* at 501. The district court found sufficient cause after conducting an *in camera* examination of the two witnesses to establish that "the threat to these witnesses and their families, should their true identities be provided, was 'actual and not a result of conjecture.'" *Id.* (quoting *United States v.*

*Zelaya*, 336 F. App'x 355, 358 (4th Cir. 2009) (another MS-13 prosecution)); *see United States v. El–Mezain*, 664 F.3d 467, 492-93 (5th Cir. 2011) ("national security and safety concerns" weighed in favor of use of pseudonyms for witnesses from Israeli Security Agency and Israeli Defense Forces in terrorism prosecution). But a "justification for secrecy [that relies] on cursory 'generalized statement[s]' that anyone who cooperates in a case . . . faces danger" is not sufficient for the Government to carry its burden. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1145 (10th Cir. 2014).

By contrast, close review of the Doe Witness declarations shows that the fears identified are not grounded in the same kind of specific, articulable facts found sufficient in other cases. To the contrary, the statements amount to little more than assertions that cooperating with the Government *might* expose them to harm at some point in the future by wholly unidentified individuals.

**Jane Doe "A"**

Jane Doe "A" states in her declaration that she was fearful during the underlying alleged protests at her then workplace (carefem in Mt. Juliet). (D.E. #453-1: Decl. of Jane Doe A ¶¶ 4-5.) She then states that she is afraid of "antiabortion extremists discovering where [she] work[s]" and harassing her at work or following her home. (*Id.* ¶ 6.) She does not, however, connect these fears to any threat—credible or otherwise—communicated to her either by any of the Defendants or anyone else, nor does she say that a Defendant or anyone else has ever followed her home or attempted to harass her at home. In other words, she was involved in two incidents of civil disobedience in which she says she was frightened—even though they involved no injuries or threats of violence—and she says she is still frightened. Additionally, upon information and belief the identity of Jane Doe "A" **was disclosed by carafem** in exhibits filed in the civil lawsuit brought

6

Case 3:22-cr-00327   Document 478   Filed 01/12/24   Page 6 of 15 PageID #: 2242

against Operation Save America and others, without any harm or untoward consequences to her. Not only did carafem's counsel disclose the identity of Jane Doe "A" in that case, but an abortion doctor himself also filed a declaration without any attempt to conceal his identity.[3] And once again, the record is utterly devoid of a single complaint of any harm, threats, or actions of any kind taken against either of these individuals resulting from those filings.

Under these circumstances and the permissive standard contended for by the Doe Witnesses, *any* alleged crime victim could testify with anonymity citing fear of the accused, in contravention of the Sixth Amendment. Such a low bar would effectively swallow the defendant's Sixth Amendment right to confrontation whole.

### Jane Doe "B"

Jane Doe B's declaration suffers from similar infirmities. While she adds the contention that she was "doxed" by the website LiveAction in "early 2021" (thus approximately **three years ago**), the only actions by LiveAction that she identifies are the disclosing of her name along with her LinkedIn and Facebook pages. (D.E. 453-2: Decl. of Jane Doe B ¶¶ 7-8.) Notably, she does ***not*** say her social media sites had been private, that LiveAction communicated false or defamatory information about her, that the LiveAction website encouraged any action to be taken against her, or that any one has made any threats against her since that alleged "doxing" nearly three years ago. This is hardly the stuff on which to base denial of a defendant's constitutional right.

### Jane Doe "C"

Like the two other Doe declarations, Jane Doe C's declaration says that she is frightened of having her name disclosed. But, again, one single page declaration does not point to any *specific*

---

[3] Again, Counsel will provide documentary proof under seal should be Court so desire. In addition to the abortion doctor and the carafem employee a security guard for carafem also submitted a declaration under his own name in that case.

*or credible* threat from anyone, let alone the Defendants. She contends that, because she now works at a public institution, she has been the subject of state law public records requests. (D.E. #432-3: Decl. of Jane Doe C ¶ 5.) It is hard to understand how citizens exercising their right to public information maintained by public institutions under state law is cognizable at the kind of threat to national security or physical safety that case law permitting witness anonymity contemplates. Additionally, affording her witness anonymity here cannot undo the fact that Jane Doe C is, by her own admission, already known as having worked at carefem and has *already* been the subject of public records requests. Thus, even assuming that shielding the public from knowledge of the activities of public employees qualifies as a legitimate basis for granting witness anonymity, giving *this witness* anonymity cannot advance that interest since Jane Doe C's employment background is already publicly known.

**Additional Allegations**

Additional considerations offered by the Doe Witnesses and cited by the Court also fail to establish the concerns for witness safety that warrant witness anonymity:

- The Court noted that OSA plans demonstrations around the federal courthouse during the trial, but public demonstrations are not uncommon in high profile cases or cases involving political issues.[4] Nothing in the notices about the demonstrations suggests they will be other than as allowed by the First Amendment.

---

[4] *See, e.g.,* Amudalat Ajasa, "The protesters who gather every day to demand justice for George Floyd," *The Guardian* (Apr. 8, 2021), https://www.theguardian.com/us-news/2021/apr/08/derek-chauvin-trial-minneapolis-george-floyd-protesters (describing protestors gathering outside Hennepin County Courthouse during trial of Derek Chauvin) (last visited Jan. 12, 2024); "Opposing crowds protest outside Wisconsin courthouse awaiting Kyle Rittenhouse trial verdict," CBSNews.com (Nov. 17, 2021), https://www.cbsnews.com/video/opposing-crowds-protest-outside-wisconsin-courthouse-awaiting-kyle-rittenhouse-trial-verdict/ (last visited Jan. 12, 2024).

- The Court cites a demonstration by Defendant Gallagher at some time in the past; it is not stated when this occurred. The evidence on which the Does rely (a brief clip of a video of Defendant Gallagher describing the events) mentions that hundreds of pro-choice counter-protestors were also present at the demonstration along with law enforcement. There is no indication in the clip that any law was violated or arrests were made.

- The Court cites a news article reporting on the arrest of an individual from California (Aaron Jonathan Hurley) charged with stalking an abortion doctor. Mr. Hurley is not identified as a participant in any upcoming demonstrations; he lives over 2000 miles away; and no information is provided on the ultimate disposition of these charges. Mr. Hurley was not involved in the events giving rise to these criminal charges, nor is there any evidence he has communicated, directly or indirectly, any threat to any of the Doe Witnesses.

- It is stated that one individual involved in the protests was found with "a concealed handgun," but there is no evidence offered that the handgun was brandished during the events or used as part of the protest, nor is it stated that the carrying of the handgun failed to comply with Tennessee law. *See* Tenn. Code Ann. § 39-17-1301 *et seq.* Moreover, as shown during the lawsuit brought by carafem, Femhealth USA v. Williams, et al., Cause No. 3:22-cv-00565 here in the Middle District of Tennessee (Campbell, J.), the individual with the handgun was not a part of Operation Save America.

In sum, the Doe Witnesses fail to identify an actual and specific threat made to them by anyone. The closest thing to harassment identified is that some individuals (not Defendants) have

sought to exercise their rights under state public records laws. Even crediting the Doe Witnesses' claims of fear, such fears are speculative and, if accepted here, would result in the granting of anonymity to virtually any prosecution witness.

### III. DEFENDANTS WILL BE PREJUDICED BY USE OF PSEUDONYMS BY THE DOE WITNESSES.

While the Doe Witnesses can only describe generalized fear that has been found insufficient to warrant witness anonymity in other cases, Defendants can point to a concrete and substantial risk of prejudice from the granting of the protective order.

Use of pseudonyms (and related protections) by witnesses instantly conveys an atmosphere of fear to jurors, and that atmosphere is prejudicial to the right of a criminal defendant to an impartial jury. *See Fox*, at 2022 WL 1025953, at *2. "The Sixth Amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a panel of impartial, indifferent jurors." *United States v. Davis*, 18 F. App'x 368, 370 (6th Cir. 2001) (cleaned up). The lack of an impartial jury also violates the due process rights of the accused. *See Murphy v. Florida*, 421 U.S. 794, 799-800 (1975) ("The constitutional standard of fairness requires that a defendant have 'a panel of impartial, 'indifferent' jurors.'") (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)); *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("Due process requires that the accused receive a trial by an impartial jury free from outside influences."). Even a single juror being affected by fear results in a denial of an impartial jury. *See, e.g., United States v. Johnson*, 954 F.3d 174, 179 (4th Cir. 2020) ("'[I]f even a single juror's impartiality is overcome' by such an external influence, the defendant's right to an impartial jury has been compromised.") (quoting *United States v. Lawson*, 677 F.3d 629, 648-49 (4th Cir. 2012) (citation omitted)).

The disparate treatment of the three Doe Witnesses when compared with the other witnesses at trial will almost certainly arouse suspicion and create question in the minds of jurors

as to why they are being accorded special, more protective treatment. This is all the more true given the facts of this case—a prosecution arising from alleged civil disobedience as a means of peaceful political protest. The alleged incident involved no deaths; no physical injuries; no gangs; no acts of terrorism; no drug trafficking. But, by treating this case of civil disobedience as if it did involve something particularly dangerous that merits the special protections of witness anonymity, jurors will be misled into thinking the case involves dangers that it does not. As a result, Defendants will be denied a fair and impartial jury.

Additionally, the measures ordered are inadequate to remedy this prejudice. In particular, jurors will be asked during *voir dire* if they recognize the names of witnesses and other interested persons, but for these three witnesses they will be shown only photographs, while no photographs are to be used for other witnesses. Again, this differential treatment communicates a message of fear to the jury, which is prejudicial to Defendants' right to confrontation and right to a fair and impartial jury in violation of the Due Process Clause and Sixth Amendment.

Furthermore, Defendants suffer prejudice from the last-minute timing of the request by the Does and the Government. At a time when Defendants are in their final trial preparations, they now have had to contend with opposing the motion and researching the names of the witnesses and their histories hampered by pseudonyms impeding their trial preparations—both of which developments were unanticipated and sprung upon defense counsel at the eleventh hour. The FBI was involved with these incidents from their occurrences in March 2021 and July 2022, and lawyers for carafem appear to have been working with the Government from that time or shortly thereafter to the present, as evidenced by the Government's conferring with the witnesses and their counsel on November 30, 2023 and January 4 of this year. There was no justification for waiting until mere days before trial to make this request, especially since the motion does not rely on any

11

Case 3:22-cr-00327 Document 478 Filed 01/12/24 Page 11 of 15 PageID #: 2247

"late breaking" factual allegations. Instead, the timing appears designed to inflict maximum damage and chaos on Defendants' trial preparation and undermines the credibility of the need for pseudonyms since, if there was indeed a real concern, this motion would have been filed earlier in the proceedings.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court reconsider its January 10, 2024 Memorandum and Order and deny the Doe Witnesses' motion for protective order.

Respectfully submitted, this 11th day of January, 2024.


Respectfully submitted,


**/s/ Stephen M. Crampton**
STEPHEN M. CRAMPTON
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
(662) 255-9439
scrampton@thomasmoresociety.org

and

LARRY L. CRAIN, Esq.
5214 Maryland Way, Suite 402
Brentwood, TN 37027
(615) 376-2600
larry@crainlaw.legal
www.crainlaw.legal
*Attorneys for Paul Vaughn*

**/s/ Jodie A. Bell. (by permission)**
JODIE A. BELL, Esq.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615)244-1110/ (615) 956-4977
*Attorney for Chester Gallagher*

**/s/ *William Conway (by permission)***
WILLIAM J. CONWAY, Esq.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 250-5363
wjconway@gmail.com
*Attorney for Heather Idoni*

**/s/ *WRobert Lynn Parris (by permission)***
ROBERT LYNN PARRIS, Esq.
Robert L. Parris, Attorney at Law
200 Jefferson Avenue, Suite 1500
Memphis, TN 38103
(901) 490−8026
Fax: (901) 524−1806
rlp@robertparrisattorney.com
*Attorney for Defendant Calvin Zastrow*

**/s/David Komisar (by permission)**
DAVID KOMISAR
Law Office of David I. Komisar
208 Third Avenue North
Suite 300
Nashville, TN 37201
615-242-2675
Fax: 615-256-3330
Email: david@komisarlaw.net
*Attorney for Defendant Calvin Zastrow*

**/s/ *G. Kerry Haymaker (by permission)***
G. KERRY HAYMAKER, Esq.
Haymaker & Heroux, P.C.
545 Mainstream Drive, Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
*Attorney for Defendant Coleman Boyd*

**/s/ *Steve C. Thornton (by permission)***
STEVE C. THORNTON, Esq.
P.O. Box 16465
Jackson, MS 39236
(601) 982-0313
mail@lawlives.com
*Attorney for Defendant Coleman Boyd*

/s/ *Manuel B. Russ (by permission)*
MANUEL B. RUSS
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com
*Attorney for Defendant Dennis Green*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Motion to Continue was filed electronically and served on the following by the EF/CME electronic filing system:

| | |
|---|---|
| JODIE A. BELL<br>214 Second Avenue North, Suite 208<br>Nashville, TN 37201<br>(615)244-1110/ (615) 956-4977<br>jodie@attorneyjodiebell.com<br>Attorney for Chester Gallagher | MANUEL B. RUSS<br>340 21st Avenue North<br>Nashville, TN 37203<br>(615) 329-1919<br>russben@gmail.com<br>Attorney for Defendant Dennis Green |
| WILLIAM J. CONWAY<br>William J. Conway, Esq. P.C.<br>214 Second Avenue North, Suite 208<br>Nashville, TN 37201<br>(615) 260-5364<br>wjconway@gmail.com<br>Attorney for Defendant Heather Idoni | AMANDA J. KLOPF<br>U.S. Attorney's Office (Nashville)<br>719 Church Street, Suite 3300<br>Nashville, TN 37203<br>(615) 736-5151<br>amanda.klopf@usdoj.gov<br>Representing **USA** |
| ROBERT LYNN PARRIS<br>Robert L. Parris, Attorney at Law<br>200 Jefferson Avenue, Suite 1500<br>Memphis, TN 38103<br>(615) 490-8026<br>rlp@robertparrisattorney.com | KYLE BOYNTON<br>WILFRED BEAYE<br>Department of Justice<br>150 M Street NE<br>Washington, DC 20002<br>(202) 598-1018<br>Sanjay.patel@usdoj.gov<br>Representing **USA** |
| DAVID KOMISAR<br>Law Office of David I. Komisar<br>208 Third Avenue North<br>Suite 300<br>Nashville, TN 37201<br>615-242-2675<br>Fax: 615-256-3330<br>Email: david@komisarlaw.net<br>Attorneys for Defendant Calvin Zastrow | |

G. KERRY HAYMAKER
Haymaker & Heroux, P.C.
545 Mainstream Drive. Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
Attorney for Defendant Coleman Boyd

STEVE C. THORNTON, Esq.
P.O. Box 16465
Jackson, MS 39236
(601) 982-0313
mail@lawlives.com
Attorney for Defendant Coleman Boyd

This the 12th day of January, 2023.

/s/ Stephen M. Crampton
STEPHEN M. CRAMPTON