IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | ) |
| | ) NO. 3:22-CR-00327 |
| CHESTER GALLAGHER; HEATHER IDONI; | ) JUDGE TRAUGER |
| CALVIN ZASTROW; COLEMAN BOYD; | ) |
| PAUL VAUGHN; DENNIS GREEN | ) |
| | ) |
| | ) |

**RESPONSE TO MOTION TO RECONSIDER AND REPLY IN SUPPORT
OF DOE WITNESSES' MOTION FOR A PROTECTIVE ORDER**

Doe Witnesses' fear of retaliation, harassment, and threats are real and cognizable, and stem directly from campaigns of intimidation Defendants and their associates waged against these witnesses personally over several years. Defendants' assertions that they can minimize the harm to these third-party witnesses are not credible and should be wholly disregarded. These claims are particularly disingenuous given the "ends justify the means" approach Defendants and their supporters take, and the intense interest OSA has taken in this proceeding. As Doe Witnesses have shown a threat to their livelihood and personal safety and that public disclosure of their identity is unnecessary to effective cross-examination, reconsideration of the motion already granted by this Court is unnecessary. (*See* Dkt. 470 at 6 (Trial judges have "'wide latitude . . . to impose reasonable limits . . . on cross examination based on concerns about, among other things, harassment, prejudice, . . . or the witness' safety." (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986))).) The Court's well-reasoned decision should stand.[1]

---

[1] Defendants have not shown a clear error of law, newly discovered evidence, an intervening change in law, or a need to prevent manifest injustice, as they must to succeed on a motion to reconsider. *See United States v. Carney*, 2022 WL 678648, at *2 (M.D. Tenn. Mar. 4, 2022) (explaining criminal courts typically evaluate such motions under the same standards applicable to civil motions to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e)).

### I. Identification of Doe Witnesses Poses an Actual Threat to Their Safety.

Doe Witnesses have provided sworn declarations setting forth particularized evidence of articulable fear that they will be targeted by Defendants' supporters and associates if they are publicly identified as testifying witnesses. (*See* Mot. Exs., Dkt. 453-1, 453-2, 453-3 (collectively, "Doe Declarations")). Defendants do not confront these specific concerns. Instead their Response (Dkt. 478 ("Resp.")) resorts to belittling the lived experience of these witnesses, and fails to overcome a finding that there is a "credible threat" that should be appropriately addressed through anonymous testimony.

First, Defendants contend that the Doe Declarations "amount to little more than assertions that cooperating with the Government *might* expose them to harm at some point in the future by wholly unidentified individuals." (Resp. at 6 (emphasis in original).) In fact, their Declarations show that Doe Witnesses have a specific, warranted fear of these Defendants in particular and that these fears stem from multiple threats to their personal safety by Defendants and their associates. (*See* Dkt. 453-1 at ¶¶ 3–6, 453-2 at ¶¶ 3–5, 453-3 at ¶¶ 4–6); *see, e.g.*, *United States v. Ramos-Cruz,* 667 F.3d 487, 501 (4th Cir. 2012.) Defendants' choice to describe their actions as "civil disobedience" neither ameliorates the actual harm to the witnesses, nor changes the fact that civil and criminal courts around the country describe their actions as trespass, assault, stalking, and illegal blockades.[2]

---

Even if they could, as discussed throughout, Defendants' claims of harm or prejudice are without merit.

[2] *See* Mem. Op., Dkt. 65 at 4, *FemHealth USA, Inc. v. Williams*, No. 3:22-cv-00565 (M.D. Tenn. Sept. 14, 2022); Verdict Form, Dkt. 413, *United States v. Handy*, No. 1:22-cr-00096 (D.D.C. Aug. 29, 2023); Sealed Indictment, Dkt. 2, *United States v. Williams*, No. 1:22-cr-00684 (S.D.N.Y filed Dec. 13, 2022); Gregory Yee, *L.A. antiabortion activist charged with harassing San Francisco doctor, defacing statue*, LOS ANGELES TIMES (May 19, 2022), https://www.latimes.com/california/story/2022-05-19/los-angeles-antiabortion-activist-harassing-stalking-doctor.

Second, Defendants' assertion that the identity of Jane Doe "A" was disclosed in carafem's civil lawsuit against Operation Save America ("OSA") and others (including Defendants Boyd and Gallagher), (Dkt. 478 at 6–7), is inaccurate.[3] As counsel for Defendants is aware, carafem vigorously and successfully sought to keep the identity of Jane Doe "A" confidential. In connection with its motion for a preliminary injunction, carafem submitted two declarations by Jane Doe "A", both of which were filed with her identity redacted ***with the court's approval and at the court's direction*** due to credible threats she faced.[4] Moreover, as defense counsel is also aware, carafem continued to maintain the confidentiality of Jane Doe "A"'s identity through discovery in the civil lawsuit by listing her as "Jane Doe" in both its initial disclosures and its response to OSA's interrogatories. In short, for the entirety of its civil lawsuit against Defendants Boyd and Gallagher, carafem diligently protected Jane Doe "A"'s identity. If Defendants are correct that Jane Doe "A"'s identity is included in an exhibit to one of carafem's filings, made in the midst of very fast-moving emergency proceedings, any such disclosure was absolutely and obviously unintentional in light of the great lengths carafem has undertaken to otherwise preserve her identity.[5]

---

[3] Defendants' argument that Doe Witnesses should not be allowed to testify anonymously because carafem disclosed the identity of a physician who chose to speak publicly and a security guard is irrelevant. Counsel is not seeking to keep those identities confidential in this criminal lawsuit. If anything, this shows that the decision to seek anonymity is not made lightly. In any event, a security guard and a physician who chose to speak publicly in a civil case are in wholly different situations than Doe Witnesses.

[4] *See* Declaration of [REDACTED], Dkt. 18-1, *FemHealth USA, Inc. v. Williams*, No. 3:22-cv-00565 (M.D. Tenn. filed Aug. 9, 2022); Second Declaration of [REDACTED], Dkt. 49-1, *FemHealth USA, Inc. v. Williams*, No. 3:22-cv-00565 (M.D. Tenn. filed Sept. 1, 2022); Order, Dkt. 60, *FemHealth USA, Inc. v. Williams*, No. 3:22-cv-00565 (M.D. Tenn. Sept. 9, 2022) (granting carafem's motions to file Jane Doe Declarations partially under seal).

[5] Counsel is currently reviewing filings and if it finds any inadvertent disclosure of witnesses, it will immediately seek to seal that information. Even if there was an inadvertent disclosure in one of hundreds of exhibits in a civil litigation with heavy motions practice, that presents a far more remote threat than subjecting Jane Doe "A" to testimony in a criminal trial that OSA and Defendants have gone to lengths to promote and publicize, and where OSA has planned a large rally during the trial itself. It is also troubling that counsel for Defendants, who include counsel for

Third, Defendants' arguments that Jane Does "B" and "C" do not face sufficient threat to warrant protection, (Dkt. 478 at 6–7), are unavailing. Violence by anti-abortion activists is on the rise throughout the country, and, as the Court noted in its Order, Doe Witnesses have presented at least one example of Defendants *in this very case* harassing a provider at his home. Posting the personal information of a provider on an anti-abortion website is sufficient, without a specific incitement to violence, to subject providers to danger that includes – but is not limited to – physical violence. Indeed, Defendants' bold claim that the threat of harassment of a trial witness at his or her personal residence does not justify protection of that witness' identity underscores their willingness to threaten the safety and security of reproductive health providers when they are identified.

Similarly, the claim that OSA member Aaron Jonathan Hurley—who was enjoined by a court in this District from going to the very carafem location where Defendants are charged with FACE violations in this case—is not a threat to Doe Witnesses because "he lives over 2000 miles away" is squarely belied by Mr. Hurley's prior conduct. Likewise, the claim that Rickey Williams—who was involved in the same incident, actually breached the building's doors, and attempted to gain access to the clinic—was not a threat because he never "brandished" his concealed handgun is both unconvincing and alarming. Defendants seem to suggest that a return to the bloodshed of the 1990s that necessitated the enactment of the FACE Act is required for Doe Witnesses to be protected. Thankfully, that is not the standard. Doe Witnesses have clearly shown a particularized threat to their safety and security that would result from publication of their

---

the defendants in the civil case, chose not to bring this issue to attention of carafem's counsel upon discovering this purported lapse and now attempt to use it to gain an improper advantage here.

4

identifying information. This Court had ample grounds to exercise its considerable discretion and allow Doe Witnesses to testify under pseudonyms, and this ruling should not be revisited.

Finally, courts across the country have protected witnesses in similar circumstances, and not just in international drug trafficking trials. Most recently, the district court for the District of Columbia held that there was evidence of an "increased risk of threats, intimidation, and violence against providers and recipients of abortion services in the District of Columbia over the past year, making clear that the threat to the witnesses safety is 'actual and not a result of conjecture.'" Order, Dkt. 358 at 2, *United States v. Handy*, No. 1:22-cr-00096 (D.D.C. Aug. 8, 2023) (quoting *United States v. Machado-Erazo*, 951 F. Supp. 2d 148, 155 (D.D.C. 2013)). Just as they are here, those fears were well-founded. Even after its order, the court was forced to publicly admonish the crowds that had gathered for their routine outbursts, jury-tampering, and witness intimidation. *See* Min. Order, *United States v. Handy*, No. 1:22-cr-00096 (D.D.C. Aug. 21, 2023) ("In light of certain issues with witness tampering that the Court placed on the record under seal on August 17, 2023, all transcripts of voir dire shall remain under seal until further order of the Court.").[6] As recent experience shows, requiring Doe Witnesses to testify under the given names will likely expose them to harassment, tampering, and threats to their personal safety.

## II. Allowing Doe Witnesses to Testify Pseudonymously Will Not Prejudice Defendants.

Defendants provide no specific factual assertion to show how they might be suffer prejudice from the Court's limited protective order. Instead Defendants merely repeat the balancing test that this Court has already undertaken. *See United States v. Fox*, 2022 WL 1025953,

---

[6] *See also* Jordan Fischer, *Judge warns nun against witness tampering as DOJ closes case in anti-abortion blockade trial*, WUSA9 NEWS (Aug. 21, 2023), https://www.wusa9.com/article/news/crime/judge-warns-nun-against-witness-tampering-as-doj-closes-case-in-anti-abortion-blockade-trial-lauren-handy-idoni-geraghty-goodman-hinshaw-fetuses/65-12673635-6685-43d8-8e26-684c8a056427.

5

at *2 (W.D. Mich. Mar. 3, 2022) (describing the balance that must be considered between defendant's Sixth Amendment rights and the witness's interests when deciding whether to allow pseudonyms). The touchstone of this analysis is the relevance of the witness's identity. In *Fox*, the court found that the identities of undercover agents was of particular relevance to the defense. *Id.* Courts routinely evaluate the relevance of evidence that one side may wish to offer. Here, the Court has already undertaken such an analysis, and determined that the "Doe Witnesses' real names, current places of employment, and home addresses . . . are not relevant to their testimony, their credibility, or the charges against the defendants." (Dkt. 470 at 9.) "[C]ourts evaluate Confrontation Clause claims based on anonymous testimony by asking (i) whether the government has demonstrated a threat and if so, (ii) whether anonymous testimony deprived the defendant of an opportunity for effective cross-examination." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1140 (10th Cir. 2014). Defendants' Response offers no reason for why this Court should change its analysis as to either of those prongs.[7]

Defendants' argument that jurors will assume Defendants are dangerous is colored by counsel's knowledge of the reason for seeking anonymity. But the jury will surely be aware that abortion is a hot-button issue – if not before they arrive at the courthouse, then when they encounter the OSA protestors. There are many reasons a witness might want to remain anonymous in this trial, and it is quite a leap – unsupported by caselaw or evidence – to assume the jury will interpret Doe Witnesses' anonymity as signaling that Defendants are dangerous.

Finally, any perceived prejudice can be overcome by appropriate jury instructions. As some courts have done when juries are impaneled anonymously, the jury may be informed that Doe

---

[7] The vast majority of cases Defendants cite about jury impartiality in general pertain to external influence or extrajudicial contact, not witness anonymity.

Witnesses wish not to be identified by the media. *See, e.g.*, *Wren v. Fabian*, 2008 WL 4933950, at *7 (D. Minn. Nov. 14, 2008). The jury may also be given special instructions to "ensure that the jurors fully appreciate[] the presumption of [Defendants'] innocence," *id.*, and to instruct them not to consider Doe Witnesses' anonymity as any type of evidence, including Defendants' guilt or innocence, *see United States v. Honken*, 378 F. Supp. 2d 880, 913–15 (N.D. Iowa 2004) (collecting cases).

## CONCLUSION

Defendants have provided no support for their request that the Court reconsider its prior Order regarding witness anonymity. Doe Witnesses request that the Court's Order stand.

Dated: January 13, 2024

*/s/ Angela L. Bergman*
Angela Bergman (BPR # 031981)
Sarah Miller (BPR # 033441)
Briana Sprick Schuster (BPR # 38305)
Bass, Berry & Sims PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293

*Attorneys for Jane Doe Witness 1 and Jane Doe Witness 3*

*/s/ Joy Longnecker*
Joy Boyd Longnecker (BPR # 029627)
Mackenzie Hobbs (BPR # 040271)
J.D. Thomas (BPR #027582)
Barnes & Thornburg LLP
827 19th Ave S, Suite 930
Nashville, TN 37203-3447
Telephone (615) 621-6012
Facsimile 615) 621-6099

*Attorneys for Jane Doe Witness 2*

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing will be served this 13th day of January, 2024 by operation of the Court's CM/ECF system on the following:

Jodie A. Bell
Law Office of Jodie A. Bell
Washington Square Building 214 Second Avenue North Suite 208
Nashville, TN 37201
USA
jodie@attorneyjodiebell.com
(615) 953-4977

*Attorney for Defendant Chester Gallagher*

William J. Conway
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
wjconway@gmail.com
(615) 260-5364
*Attorney for Defendant Heather Idoni*

Larry Lamont Crain
5214 Maryland Way
Suite 402
Brentwood, TN 37207
(615) 376-2600
larry@crainlaw.legal

Stephen M. Crampton
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
scrampton@thomasmoresociety.org
662-255-9439

*Attorneys for Defendant Paul Vaughn*

G. Kerry Haymaker
David R. Heroux
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
haymaker@tennesseedefense.com
heroux@tennesseedefense.com
(615) 250-0050

Steve C. Thornton, I
Steve Thornton Attorney Law Office
P.O. Box 16465
Jackson, MS 39236
mail@lawlives.com
(601) 982-0313

*Attorneys for Defendant Coleman Boyd*

Manuel B. Russ
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com

John R. Manson
3112 Carrington Court
Nashville, TN 37218
jmanson@lewisthomason.com
615-259-1366

*Attorneys for Defendant Dennis Green*

Amanda J. Klopf
Assistant U.S. Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

Kyle Boynton
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

Wilfred T. Beaye, Jr.
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 771-333-1681
Wilfred.Beaye@usdoj.gov

Sanjay Harivadan Patel
U.S. Department of Justice
Criminal Section - Civil Rights Division
4 Constitution Square
150 M Street, NE - 7.121
Washington, DC 20530
202-307-6188
Email: sanjay.patel@usdoj.gov

*Attorneys for the USA*

Heather G. Parker
Evans Bulloch Parker PLLC
302 North Spring Street
P O Box 398
Murfreesboro, TN 37133-0398
(615) 896-4154
(615) 896-4152 (fax)
heatherparker@bfhelaw.com

*Attorney for Defendant Caroline Davis*

Robert Lynn Parris
208 3rd Avenue North Ste 300
Nashville, TN 37201
rlp@robertparrisattorney.com
(901) 490-8026

David I. Komisar
Law Office of David I. Komisar
208 Third Avenue North, Suite 300
Nashville, TN 327201
david@komisarlaw.net
615-256-3330

*Attorneys for Defendant Calvin Zastrow*

David L. Cooper
Law Office of David L. Cooper, P.C.
208 Third Avenue, N
Suite 300
Nashville, TN 37201
(615) 256-1008
dcooper@cooperlawfirm.com

*Attorney for Defendant Eva Zastrow*

Leonard E. Lucas, III
The Law Firm of Leonard Earl Lucas
315 Deaderick St
Suite 1550
Nashville, TN 37238
301-204-6498
leonard.lucas@lellawfirm.com

*Attorney for Defendant Paul Place*

Rayburn McGowan, Jr.
8005 Church Street East
Suite 219
Brentwood, TN 37027
(615) 244-7070
mcgowanrayburnjr@bellsouth.net

*Attorney for Defendant James Zastrow*

*/s/ Angela L. Bergman*

9