IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-CR-00327 |
| | ) | JUDGE TRAUGER |
| CHESTER GALLAGHER; HEATHER IDONI; | ) | |
| CALVIN ZASTROW; COLEMAN BOYD; | ) | |
| PAUL VAUGHN; and DENNIS GREEN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION**

Defendants Chester Gallagher, Heather Idoni, Calvin Zastrow, Coleman Boyd, Paul Vaughan, and Dennis Green (collectively, "Defendants") hereby submit this reply in support of their motion for reconsideration and in opposition to the motion for protective order filed January 9, 2024, by three "Jane Doe" witnesses and in support of their motion for reconsideration of its January 10, 2024 Memorandum and Order granting this motion.

> *1. The Court Should Reject the Efforts of the Doe Witnesses to Foreclose Defendants from Having an Opportunity to be Heard on this Issue.*

The Doe Witnesses brazenly assert that Defendants should not even be heard on this issue in their own criminal trial, even though they had no opportunity to file a response to the Does' motion before entry of the Court's order, and "a district court may always reconsider and revise its interlocutory orders while it retains jurisdiction over the case." *In re Life Investors Ins. Co. of Am.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009). The assertion is all the more outrageous in light of the fact that the Doe Witnesses have met with the Government on more than one occasion at least as far back as November 2023, their counsel are well familiar with the rules of this Court yet willfully

violated them by failing to confer with Defendants and filing their motion at the eleventh hour, thereby precluding Defendants' counsel from conducting meaningful investigation of their claims and foreclosing them from receiving the full 14 days to which the rules entitle them for a response. The motion thus suggests a purpose aimed at disrupting Defendants' trial preparations than a genuine concern for the welfare of the Doe Witnesses.

Of course, contrary to the Doe Witnesses' contentions, Defendants do not need to satisfy the standard for reconsideration set by Federal Rule of Civil Procedure 59(e), notwithstanding the fact that courts typically look to civil standards on motions to reconsider criminal orders. In any event, Defendants easily satisfy that standard here, because they rely on newly discovered (more specifically, never-before-revealed) evidence in the form of the Doe Witnesses' own counsel having filed an exhibit containing the name of Jane Doe A.

In this Court, the civil local rules expressly provide for reconsideration if a motion was granted before a party had the opportunity to respond in opposition. *See* M.D. Tenn. L.R. 7.01(a)(3) ("The Court may act on the motion prior to the time allowed for response. In such event, the affected party may file a motion to reconsider the Court's ruling within fourteen (14) days after service of the order reflecting the action of the Judge."); *Good v. Triton Steel Group, LLC*, Case No. 3:21-cv-00337, 2022 WL 17853360, at *6 (M.D. Tenn. Dec. 22, 2022) (Trauger, J.) (discussing Local Rules). Moreover, the Court has plainly stated its willingness to hear Defendants on this issue, and Defendants have a constitutional right to be heard on the merits of a motion affecting their rights at trial. *See, e.g., Fieldman v. Brannon*, 969 F.3d 792, 801 (7th Cir. 2020) (The Constitution "guarantee[s] a right to a meaningful opportunity to present a complete defense . . . [and] an opportunity to be heard in his defense[.]") (internal quotation marks and citations

omitted). The Doe Witnesses' assertion that Defendants have no right to respond should be rejected out of hand.

> 2. **The Doe Witnesses' Response/Reply Relies on Hyperbole Instead of Countering Defendants' Argument That They Have Failed to Articulate the Specific Facts Sufficient to Overcome Defendants' Constitutional Protections Against Anonymous Testimony.**

> a. **The Doe Witnesses Have Not Identified Any True Threats to Their Safety.**

The Response/Reply of the Doe Witnesses attempts to cite their prior declarations to support the contention that these witnesses have "received multiple threats to their personal safety by Defendants and their associates." This is simply untrue, and to say these three witnesses have received threats ***from Defendants*** is particularly disingenuous.

Jane Doe A's declaration, short as it is, is filled with inadmissible conclusory statements, gross exaggerations, and downright falsehoods. She wrongly conflates the March 5, 2021 incident giving rise to the present charges – which was *not* an Operation Save America (OSA) event -- with another incident in July 2022 that did involve OSA. (D.E. #453-1: Decl. of Jane Doe A.) Similarly, Ms. Doe grossly mischaracterizes the July 2022 event, referring to "OSA blockaders and affiliates," as if it involved a blockade. It did not. That event occurred one month after the Supreme Court's momentous decision in *Dobbs v. Jackson Women's Health Organization* reversing *Roe v. Wade*. As the Mt. Juliet Police Department reported, it involved nothing more than OSA personnel approaching the building entrance to speak with the police in order to determine whether carafem was violating the Tennessee "trigger law" prohibiting abortions, which they understood had gone into effect 30 days after *Dobbs*. While OSA personnel were speaking with the police there was no obstruction of the entrance, with people freely coming and going. (*See* Dkt. 42-11, *FemHealth USA, Inc. v. Williams*, No. 3:22-cv-00565 (M.D. Tenn. Aug. 26, 2022, Deputy Chief Mullins' Incident After Action Report) (stating that

3

""a video uploaded to social media and captured by MJPD showed **other patrons coming and going freely from the building with no obstruction**") (emphasis added).

At the time OSA approached the building entrance, the police also believed the trigger law had gone into effect, and the Planned Parenthood clinic had already closed as a result. As it turned out, the Tennessee trigger law had not gone into effect, because it was "triggered" not by announcement of the decision but by entry of judgment, which promptly took effect the very day that OSA approached the building, because the state attorney general called the Supreme Court clerk's office and explained the situation. When OSA was informed of the facts, they stood down and peacefully and lawfully conducted demonstrations on the sidewalks and public ways the rest of the week.

Ms. Doe then conflates the actions of Rickey Williams and his group, unrelated to OSA, and further confuses the facts by falsely attributing their actions to OSA and OSA to these Defendants. In short, her declaration is a case study in unfounded accusations and unbridled paranoia. Not once does she allege *anyone*, let alone a Defendant, has made a threat to her safety. Instead, she states vaguely that she "felt extremely anxious and scared for her safety" after the incidents complained of and that she "is scared" that "antiabortion extremists" will discover where she works. These assertions constitute the kind of "'undifferentiated fear or apprehension . . . [that] is not enough to overcome the right to freedom of expression.'" *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, __U.S. __, 141 S. Ct. 2038, 2048, 210 L. Ed. 2d 403 (2021) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969)); *see also Cohen v. California*, 403 U.S. 15, 23 (1971) (undifferentiated fear constitutionally insufficient to prohibit defendant's wearing of jacket bearing the words 'F--- the Draft' in a corridor of the Los Angeles Courthouse.). In the same way, Jane Doe A's undifferentiated fear and apprehension arising from two peaceful

incidents at her place of business – which no longer exists – is an insufficient basis on which to infringe Defendants' Sixth Amendment rights to confront the witnesses against them.

Likewise, while Jane Doe B's declaration says she was present during the two incidents, she also never alleges a threat to her by anyone. (D.E. 453-2: Decl. of Jane Doe B.) Instead, she says she "felt afraid" in March 2021 when she saw people standing in the hallway and allegedly blocking the entrance to the clinic, and that in July 2022 she began to change her routes to and from work because she feared OSA people would follow her. Since those incidents, the first of which occurred almost three years ago and the second over a year and a half ago, however, Ms. Doe is unable to point to a single threat or concern. It appears that her fears were unfounded.

Given the opportunity to explain further the vague charge that she was "doxed" by the website LiveAction (which is not alleged to be connected to the Defendants) through its linking to two of her social media sites (LinkedIn and Facebook) *three years ago*, Jane Doe B provides nothing. Again, in the three years since the purported "doxing," she has suffered no threats or similar causes of concern for her safety. Instead, already public information about her (*i.e.*, social media websites, including the professional networking site LinkedIn) was repeated in public, with no ill effect. Doe B's declaration, then, does not provide a basis to find any genuine threat from anyone, much less from these nonviolent Defendants.

Finally, Jane Doe C does not even allege that she is concerned about her ***physical safety*** in her declaration. (D.E. #432-3: Decl. of Jane Doe C.) Instead, it seems her only concern is that citizens will make public records requests of her government employer. What she calls "harass[ment]" is what her state government has apparently deemed legitimate subjects of public inquiry under state law. And, she even admits that what she calls (without explaining her tendentious terminology) "anti-abortion extremists" have already made such requests; so, it is

5

apparently already generally known that Jane Doe C has links to the performance of abortions. Pseudonymity adds nothing to protect her identity while prejudicing Defendants' constitutional rights.

Thus, **_not a single sentence in any of the three Doe declarations_** describes a threat to the physical safety of any of these witnesses ever by anyone and certainly not by any Defendant. As one of the cases cited by the Doe Witnesses observes, "'[w]hen the government seeks to withhold a witness's true name, address, or place of employment, it bears the burden of demonstrating that "the threat to the witness [is] **actual and not a result of conjecture**."'" *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (quoting *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir.1969)) (emphasis added). The Doe Witnesses have provided nothing but conjecture to support their request here. Additionally, the contrast between this case and *Ramos-Cruz*, relied on by the Doe Witnesses, is remarkable. *Ramos-Cruz* involved a violent and murderous gang, MS-13. The anonymous witnesses had provided specific information in an ex parte hearing detailing physical threats to themselves and their families that were "'actual and not a result of conjecture.'" *Id*. at 501 (quoting *Palermo*). Moreover, the witnesses' testimony involved a "limited focus" concerning "generalized information about the operation of MS–13." *Id*. "They proffered no evidence directly involving Ramos–Cruz or his activities." *Id*. In stark contrast, here the Doe Witnesses will provide extensive eyewitness testimony directly involving these Defendants and their activities. Their testimony is at the heart of the Government's case. *Ramos-Cruz* thus supports Defendants' position, not the Doe Witnesses'. They should not be permitted to testify under a pseudonym.

Finally, while the three allege they were present at the incident at issue, granting anonymity on those facts would permit a witness to testify anonymously in virtually any criminal trial in contravention of established law holding that "***[u]nder almost all circumstances, the true name***

*of the witness must be disclosed*." *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) (citations omitted) (emphasis added).

### b. Jane Doe A's Identity was Revealed in Carafem's Filing in 2022.

The Doe Witnesses seem to tacitly concede they may have disclosed the identity of Jane Doe A in the civil case brought by carafem, but now seek to minimize and excuse it as unintentional. Reply at 3. They even go so far as to accuse defense counsel and somehow shift the burden to them, despite the filing having been made in a public case over sixteen (16) months ago. *See* Sealed Exhibit 1 (filed under seal). Tellingly, though, the Doe Witnesses offer no analysis and no authority for such a proposition.

Assuming the disclosure was inadvertent, Federal Rule of Evidence 502(b) governs the analysis. *United States ex rel. Seabury v. Cookeville Reg'l Med. Ctr. Auth.*, No. 2:15-CV-00065, 2021 WL 3883968, at *3 (M.D. Tenn. Aug. 31, 2021) (Trauger, J.) ("Rule 502(b) pertains to 'inadvertent' disclosures in a federal proceeding."). Rule 502 provides in pertinent part:

> The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection.
>
> \*     \*     \*
>
> (b) **Inadvertent Disclosure**. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).

Even assuming *arguendo* that the Doe Witnesses' disclosure was inadvertent[1] and that they had taken reasonable steps to prevent the disclosure[2], their lengthy delay in taking any steps to rectify the error is fatal. "This factor considers whether the producing party took prompt remedial action to withdraw the disclosures and prevent further inquiries and discovery about them." *Wolpert v. Branch Banking Tr. & Co.*, No. 3:19-CV-138-TRM-DCP, 2023 WL 2731083, at *7 (E.D. Tenn. Mar. 30, 2023) (citing *Fed. Deposit Ins. Corp. v. Ernst & Whinney*, 137 F.R.D. 14, 17 (E.D. Tenn. 1991). That is, proactive action is required by the disclosing party:

> Thus, the application of **Rule 502(b) requires a party asserting privilege to be proactive in the event of an inadvertent disclosure**. Stated differently, while a privilege is not waived by a mere disclosure to another party without an express intent to waive such privilege, **the party making the disclosure cannot sit idly and do nothing** to prevent inadvertent disclosures, nor can that party fail to take steps to rectify an inadvertent disclosure once one has been discovered.

*Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1323 (M.D. Fla. 2017).[3] In *Wolpert*, the court held that where the documents were made part of the public record and "remained in the public record for approximately **two months**," the defendant "did not promptly take reasonable steps to rectify the error." *Id.* (emphasis added). *Accord*, *Clarke v. J.P. Morgan Chase & Co.*, No. 08–CV–02400, 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10, 2009) (two-month delay in asserting privilege, waiver found); *Raynor v. District of Columbia*, No. CV 14-0750 (RC),

---

[1] Given that the Witnesses' attorney intentionally filed the exhibit in court and to date has failed to take any action to redact the information, it may be argued that the disclosure was intentional. *See*, *e.g.*, *GATX Corp. v. Appalachian Fuels, LLC*, No. CIV.A. 09-41-DLB, 2010 WL 5067688, at *5 (E.D. Ky. Dec. 7, 2010) ("by voluntarily disclosing a privileged communication to the opposing party, the holder of the privilege waives it"). Here, it was disclosed to the whole world.

[2] The Doe Witnesses make much of the fact that they sought leave to file the declarations under seal in the *Femhealth* case and the court there issued a protective order. But the defendants in that case never contested that issue, and the protective order and filings were made as a matter of course.

[3] To the extent it is contended that the Doe Witnesses' attorney did not discover the fact of the disclosure until now and therefore could not have taken action to remedy it, that in itself appears to be inexcusable under the circumstances here. The document has been in the public record **for over sixteen months**. As the District of Columbia District Court stated, the Doe Witnesses "either knew or should have known" of the disclosure and taken action. *Raynor*, *supra*, at *3.

2018 WL 852366, at *3 (D.D.C. Feb. 12, 2018) (District waited some two years before taking steps to rectify disclosures).

In the *Seabury* case, this Court found that, much like the exhibit here, an email had been "in the public record for sixteen months" during which time the party claiming privilege had failed to take any steps to seal the record or protect the information." *United States ex rel. Seabury v. Cookeville Reg'l Med. Ctr. Auth.*, No. 2:15-CV-00065, 2021 WL 3883968, at *2. When the party finally moved to seal the document, the Court denied the motion. It found that the movant had failed to take any action to rectify the error and therefore failed to satisfy Rule 502(b). *Id.* at *3. What the Court concluded in *Seabury* could be applied equally here: "The [party's] attempt now to protect what it contends is a privileged communication is too little too late." *Id*.

Regardless whether the Doe Witnesses' delay is irremediable, the fact remains that in all the time Jane Doe A's identity has been a matter of public record they can point to no improper actions taken against her by these Defendants or for that matter by anyone else. Their motion should therefore be denied.

> **c. The Doe Witnesses Ask the Court to Prejudge the Defendants' Guilt and Make Erroneous Assertions in Efforts to Deprive Defendants of Their Constitutional Rights.**

The Doe Witnesses state that they "have presented at least one example of Defendants in *this very case* harassing a provider at his home," by which it appears they mean they offered a 60 second clip of an individual purporting to describe **<u>one of the Defendants</u>** (not the "Defendants," as they write) (and said Defendant is not even shown in the video) describing an event at some unstated point in the distant past when pro-life and pro-choice protestors gathered in the vicinity of an abortion provider's home, along with a number of law enforcement officers. The clip says nothing about any law being violated, any acts or threats of violence, law enforcement making

9

arrests, or what led to the event. The clip claims that they **preached** to the abortionist, not that they threatened him, committed any act of violence, or any such thing. And, again, the clip—which fails to depict any Defendant—does not indicate *how long ago* the alleged event was supposed to have occurred.[4]

The Doe Witnesses attempt to make much of Aaron Hurley, who resides in California and as to whom the Doe Witnesses can show no proof that he has been convicted of any offense or made any threat to them. In the process, Doe Witnesses (perhaps inadvertently) highlight that he and FemHealth have entered into a judicially enforceable settlement agreement. *See FemHealth USA, Inc. v. Williams*, Case No. 3:22-cv-00565, D.E. #135 (M.D. Tenn. Nov. 7, 2023). It is hard to characterize as a rogue and dangerous figure someone with whom the Doe Witnesses' employer saw fit to recently enter into a civil settlement.

Again grasping at the irrelevant, the Doe Witnesses try to bring up the fact that a "concealed handgun" was *carried* (but not used for any purpose) during an incident at issue by someone who is not a Defendant and found, in the related civil case, to not be associated with OSA. It is little wonder the Doe Witnesses feel the need to rely on overblown rhetoric, alleging that Defendants believe "that a return to the bloodshed of the 1990s that necessitated the enactment of the FACE Act is required for Doe Witnesses to be protected." (Resp. to Mot. to Reconsider at p 4.) The fact that the Doe Witnesses need to harken back to events *more than three decades old* (which they do not even detail) in efforts to justify anonymity underscores the utter lack of required concrete and

---

[4] Footnote 2 of the Doe Witnesses' Response/Reply purports to cite documents describing "[Defendants'] actions as trespass, assault, stalking, and illegal blockades," but only one of these documents (the memorandum from the civil case *FemHealth USA, Inc. v. Williams*, Case No. 3:22-cv-00565 (M.D. Tenn.)) references *any* of these Defendants. The Doe Witnesses' desperate attempt to associate these Defendants with acts of *other individuals* underscores their lack of evidence. The cited opinion from *FemHealth USA, Inc. v. Williams* also fails to use the terms "trespass, assault, stalking, [or] illegal blockades" to describe Defendants' actions, as the Doe Witnesses contend. Case No. 3:22-cv-00565, D.E. #65 at p 4 (Sept. 14, 2022).

particularized proof before this Court. *See, e.g., United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1145 (10th Cir. 2014) ("[A] justification for secrecy [that relies] on cursory 'generalized statement[s]' that anyone who cooperates in a case . . . faces danger" is not sufficient for the Government to carry its burden[.]").

The sole legal example on which the Doe Witnesses rely for support of the proposition that "courts" permit anonymity in FACE cases is *United States v. Handy*, Case No. 1:22-cr-00096 (D.D.C.), a case that will be appealed to the D.C. Circuit after sentencing. The Doe Witnesses use that case to invoke the specter of "witness tampering." Yet, the news article used for support describes a court room spectator yelling "I love you" at a government witness and a nun praying with a witness.[5] Nothing in the article described threats to the safety of any witness or juror, and in any event, anonymity would not address either of these concerns. In fact, the occurrence of the *Handy* trial without any threats to safety or incidents of physical disruption suggests that the use of witness pseudonyms was unnecessary, and (as will be argued on appeal) prejudicial.[6]

### 3. The Court Should Reject the Doe Witnesses' Insouciant Dismissal of the Prejudice that Would Result to Defendants' Constitutional Rights.

The Doe Witnesses casually dismiss any concern that Defendants' Sixth Amendment and Due Process rights would be violated by their special treatment vis-à-vis other witnesses. Yet, there is a substantial likelihood that the jurors would be prejudiced by seeing certain witnesses

---

[5] Jordan Fischer, "Judge warns nun against witness tampering as DOJ closes case in antiabortion blockade trial," WUSA9 NEWS (Aug. 21, 2023), https://www.wusa9.com/article/news/crime/judge-warns-nun-against-witness-tampering-as-dojcloses-case-in-anti-abortion-blockade-trial-lauren-handy-idoni-geraghty-goodman-hinshawfetuses/65-12673635-6685-43d8-8e26-684c8a056427.

[6] In both their original filing and this Response/Reply, the Doe Witnesses state, "[v]iolence by anti-abortion activists is on the rise throughout the country[.]" (D.E. #480: Resp. to Mot. to Reconsider at p 4.) Their briefing cites no source for this overused canard. Exhibit F (attorney Miller's declaration from the civil case, refiled here) references, but does not supply, a two-year old report from a pro-choice organization of abortion providers. This is not a source whose accuracy can be trusted, and thus it is an inappropriate basis for any order. *Cf.* Fed. R. Evid. 201 (judicial notice).

testify by pseudonym and have their familiarity examined in *voir dire* through photograph rather than by name. "Making it crystal clear to the jury and the public that inside the Courtroom, nothing is undercover and everything is out in the open will best ensure fairness during trial and eventual acceptance and respect for whatever the jury ultimately decides." *United States v. Fox*, Case No. 1:20-CR-183, 2022 WL 1025953, at *2 (W.D. Mich. Mar. 3, 2022); *see United States v. Davis*, 18 F. App'x 368, 370 (6th Cir. 2001) (cleaned up) ("The Sixth Amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a panel of impartial, indifferent jurors."); s*ee also Murphy v. Florida*, 421 U.S. 794, 799-800 (1975) ("The constitutional standard of fairness requires that a defendant have 'a panel of impartial, 'indifferent' jurors.'") (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).

A jury instruction in fact emphasizes to the jury that the witnesses are testifying anonymously and injects the fear into the trial that will prejudice Defendants. And the suggestion of a jury instruction as a cure falls especially flat when one examines the authorities the Doe Witnesses cite in their Response/Reply: *Wren v. Fabian*, No. 07-4353 (JNE/JSM), 2008 WL 4933950 (D. Minn. Nov. 14, 2008) (habeas case), and *United States v. Honken*, 378 F. Supp. 2d 880 (N.D. Iowa 2004). Both are cases about ***anonymous juries—not witnesses***.

When it comes to witnesses, the presumption against anonymity is instead met only in ***extraordinary circumstances totally dissimilar from the present case***. *See, e.g., United States v. Ramos-Cruz*, 667 F.3d 487, 501 (4th Cir. 2012) (El Salvadoran law enforcement agents allowed to testify anonymously in an international narco-terrorism prosecution of MS-13 upon finding that "the threat to these witnesses and their families, should their true identities be provided, was 'actual and not a result of conjecture.'") (quoting *United States v. Zelaya*, 336 F. App'x 355, 358 (4th Cir. 2009) (another MS-13 prosecution)); *United States v. El-Mezain*, 664 F.3d 467, 492-93 (5th Cir.

2011) ("national security and safety concerns" weighed in favor of use of pseudonyms for witnesses from Israeli Security Agency and Israeli Defense Forces in terrorism prosecution); *United States v. Celis*, 608 F.3d 818, 833 (D.C. Cir. 2010) (witness anonymity approved where "the government presented evidence that in Colombia the FARC had killed people suspected of helping to arrest [one of the defendants] and had threatened to kill cooperating witnesses"); *United States v. Machado-Erazo*, 951 F. Supp. 2d 148, 155 (D.D.C. 2013) (El Salvadoran police officer allowed to testify anonymously in prosecution of alleged MS-13 gang members).

This is not an international narco-terrorism case. It is a case of alleged civil disobedience. The jurors should decide this case on the facts put before them and not on the concern that the case is more than it is due to prejudicial suspicions engendered by the Doe Witnesses' pseudonymity.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court reconsider its January 10, 2024 Memorandum and Order and deny the Doe Witnesses' motion for protective order.

Respectfully submitted, this 15th day of January, 2024.

/s/ *Stephen M. Crampton*
STEPHEN M. CRAMPTON
Thomas More Society
P.O. Box 4506
Tupelo, MS  38803
(662) 255-9439
scrampton@thomasmoresociety.org

and

LARRY L. CRAIN, Esq.
5214 Maryland Way, Suite 402
Brentwood, TN  37027
(615) 376-2600
larry@crainlaw.legal
www.crainlaw.legal
*Attorneys for Paul Vaughn*

/s/ Jodie A. Bell. (by permission)
JODIE A. BELL, Esq.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615)244-1110/ (615) 956-4977
*Attorney for Chester Gallagher*

/s/ William Conway (by permission)
WILLIAM J. CONWAY, Esq.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 250-5363
wjconway@gmail.com
*Attorney for Heather Idoni*

/s/ WRobert Lynn Parris (by permission)
ROBERT LYNN PARRIS, Esq.
Robert L. Parris, Attorney at Law
200 Jefferson Avenue, Suite 1500
Memphis, TN 38103
(901) 490−8026
Fax: (901) 524−1806
rlp@robertparrisattorney.com
*Attorney for Defendant Calvin Zastrow*

/s/David Komisar (by permission)
DAVID KOMISAR
Law Office of David I. Komisar
208 Third Avenue North
Suite 300
Nashville, TN 37201
615-242-2675
Fax: 615-256-3330
Email: david@komisarlaw.net
*Attorney for Defendant Calvin Zastrow*

/s/ G. Kerry Haymaker (by permission)
G. KERRY HAYMAKER, Esq.
Haymaker & Heroux, P.C.
545 Mainstream Drive, Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
*Attorney for Defendant Coleman Boyd*

14

/s/ *Steve C. Thornton* (by permission)
STEVE C. THORNTON, Esq.
P.O. Box 16465
Jackson, MS 39236
(601) 982-0313
mail@lawlives.com
*Attorney for Defendant Coleman Boyd*

/s/ *Manuel B. Russ (by permission)*
MANUEL B. RUSS
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com
*Attorney for Defendant Dennis Green*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Motion to Continue was filed electronically and served on the following by the EF/CME electronic filing system:

JODIE A. BELL
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615)244-1110/ (615) 956-4977
jodie@attorneyjodiebell.com
Attorney for Chester Gallagher

WILLIAM J. CONWAY
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 260-5364
wjconway@gmail.com
Attorney for Defendant Heather Idoni

ROBERT LYNN PARRIS
Robert L. Parris, Attorney at Law
200 Jefferson Avenue, Suite 1500
Memphis, TN 38103
(615) 490-8026
rlp@robertparrisattorney.com

DAVID KOMISAR

MANUEL B. RUSS
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com
Attorney for Defendant Dennis Green

AMANDA J. KLOPF
U.S. Attorney's Office (Nashville)
719 Church Street, Suite 3300
Nashville, TN 37203
(615) 736-5151
amanda.klopf@usdoj.gov
Representing **USA**

KYLE BOYNTON
WILFRED BEAYE
Department of Justice
150 M Street NE
Washington, DC 20002
(202) 598-1018
Representing **USA**

Law Office of David I. Komisar
208 Third Avenue North
Suite 300
Nashville, TN 37201
615-242-2675
Fax: 615-256-3330
Email: david@komisarlaw.net
Attorneys for Defendant Calvin Zastrow

G. KERRY HAYMAKER
Haymaker & Heroux, P.C.
545 Mainstream Drive. Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
Attorney for Defendant Coleman Boyd

STEVE C. THORNTON, Esq.
P.O. Box 16465
Jackson, MS 39236
(601) 982-0313
mail@lawlives.com
Attorney for Defendant Coleman Boyd

This the 15th day of January, 2023.

/s/ Stephen M. Crampton
STEPHEN M. CRAMPTON