IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| [1] CHESTER GALLAGHER | ) | No. 3:22-cr-00327 |
| [2] HEATHER IDONI | ) | |
| [3] CALVIN ZASTROW | ) | |
| [4] COLEMAN BOYD | ) | |
| [6] PAUL VAUGHN | ) | |
| [7] DENNIS GREEN | ) | |

## MOTION TO RECONSIDER THE ADMISSIBILITY
## OF GOVERNMENT'S EXHIBIT 15

The United States of America, by and through undersigned counsel, moves for reconsideration of the prior rulings on the admissibility of Government's Exhibit 15. The exhibit is a portion of the statement Defendant Heather Idoni posted on Facebook on March 7, 2021, just days after the incident at the Clinic. In this portion, Defendant Idoni states:

> This was not a Red Rose Rescue, . . . . We did not enter the waiting room, as in a traditional RRR. And RRR does not typically ever block entrances. The entrances inside the hallway were blocked and no moms had entered the waiting room during the time of the peaceful interposition which lasted over 2 hours.

Gov't. Ex. 15. The comment was not a message to a specific user, but rather followed a post by Coleman Boyd which included a link to a publicly-accessible Google Drive that contained images of the blockade at the clinic, as well as a three-minute clip of portions of the blockade. Likely upon reviewing this content, a Facebook associate posted a comment asking "Was this a red rose rescue?" It is in response to this comment that Defendant Idoni posted what is contained in Exhibit 15.

1

Prior to trial, the Court ruled that the exhibit was admissible as containing a statement by a party opponent, but partially granted a motion by Defendant Idoni and requested that the Government redact any reference to "Red Rose Rescue," or "RRR" because it was not relevant. In so doing, the Court left the door open to reconsidering its ruling based on the evidence elicited at trial. In a subsequent pretrial ruling, the Court granted Defendant Gallagher's Motion to Exclude Exhibit 15 (ECF No. 499) from the Government's case-in-chief because of the pronoun "We" and the possibility it could implicate other co-defendants in violation of the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968).

The Government submits that testimony by Caroline Davis on direct and cross examination and the issues raised in Defendant Gallagher's opening have rendered this exhibit relevant and probative. In addition, the exhibit is admissible over the *Bruton* objection raised in Defendant Gallagher's Motion to Exclude (ECF No. 499) because the statement contained in Exhibit 15 is not testimonial and even if it were, it uses a generic term—"We"—a word that would normally be employed to cure any *Bruton* issue. And to the extent there is any concern about that term "We," the Government is amenable to replacing it with "I and other," or any other similarly generic term.

## ARGUMENT

The court has "significant discretion" in deciding motions for reconsideration, and typically "find[s] justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Chicago Title Ins. Co. v. Dewrell Sacks*, LLP, No. 3:08-1083, 2009 WL 5217021, at *3 (M.D. Tenn. Dec. 30, 2009) (Traugher, J.). As explained below, reconsideration is warranted here in light of the new evidence was made available in the first and second days of trial.

### A. The Statement in Exhibit 15 is Relevant and Probative.

On January 25, 2024, Ms. Davis testified about the various meanings of the term "rescue;" that she participated in a "Red Rose Rescue;" and that a "Red Rose Rescue" is specifically designed to not block entrances in order to avoid being charged with the FACE Act. Tr. (January 25, 2021) at 105:1-106:7 (explaining that "a red rose rescue is a rescue where you don't want to get charged with FACE, basically . . . You're not keeping people from actually going and doing what they want"). In contrast, she explained that the goal of the rescue that took place on March 5, 2021 was to blocked the entrance, *i.e.* "shut down carafem for a day." *E.g.*, *id.* at 142:6-9; 143:10-17. Defense counsel for Messrs. Gallagher and Boyd crossed Ms. Davis at length on that testimony and sought to use it to bolster the defense view of the meaning of rescue. *Id.* at 247:7-248:7 (eliciting that "[r]escue has multiple meanings," and that "if it's a red rose rescue, . . . bottom line is . . . the goal is to save the unborn"); 301:13-302:6 (asking about "forms [of] rescue [that] have people handing out roses," and eliciting Ms. Davis' views about the legality of a "red rose rescue"). The reason for this is simple: this testimony by Ms. Davis is highlights the intent of those who joined the conspiracy. The significance of this testimony is further underscored by the focus of Defendant Gallagher Counsel's opening statement, in which highlighted his experience engaging in "rescues," and the objectives of "rescue." Tr. (January 24, 2021) at 175:8-21; 177:6-24.

Like Ms. Davis, Defendant Idoni contrasts a Red Rose Rescue with what occurred at the clinic in the portion of her statement included in Exhibit 15. She explains that, unlike in a Red Rose Rescue, she and her coconspirators blocked the entrances to the clinic. Defendant Idoni's statement is therefore consistent with and corroborative of Ms. Davis. In addition, it is direct proof of the critical elements referenced above because it shows that at least one of the Defendants

3

knew that there was a different type of rescue that does not block entrances in order to avoid violating the FACE Act, and the Defendant nevertheless engaged in the rescue at issue here. The proof also undermines Defendants', particularly Defendant Gallagher's, argument that no one expected this rescue to involve blockading. Exhibit 15 is therefore relevant and admissible as a statement by a party opponent, as well as a co-conspirator statement under Rule 801(d)(2)(E) (*infra* pp. 7-8).

**B. The Statement in Exhibit 15 Does Not Implicate the Confrontation Clause.**

The statement by Defendant Idoni was made in response to a comment by a user on a post made by another Defendant, Coleman Boyd. It was therefore directed at an audience that included a co-defendant, as well as the Facebook associate who posted the comment, and any and every member of the public who chose to click on and see the post and comments. Defendant Gallagher nevertheless argued that admitting this statement would "threaten[] [his] right to confront witnesses" under the Sixth Amendment, and invoked the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968).

Yet Defendant Gallagher's argument finds no support in the law, for two reasons.

First, as the Sixth Circuit has repeatedly held, "because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) (emphasis added) (quoting *United States v. Pugh*, 273 Fed.Appx. 449, 455 (6th Cir. 2008)). The Circuit has further held that a statement is testimonial only if "its primary purpose is to create an out-of-court substitute for trial testimony." *United States v. Lundy*, 83 F.4th 615, 620 (6th Cir. 2023) (providing the classic example of a formal police statement). The statement by Defendant Idoni was not remotely testimonial. The purpose, rather, was to answer a question from Facebook

4

associate and to educate that person and others on how the blockade alleged in this case was carried out.

The fact that Defendant Idoni's statement as made on Facebook is also probative. In the rare instance a defendant has actually raised a Confrontation Clause (*Bruton* or otherwise) challenge to a Facebook post, message, or comment, courts have readily reached the same conclusion: the statements are plainly nontestimonial because their purpose is seldom to memorialize an out-of-court substitute for trial testimony. *See United States v. Pearson*, No. 15-20457, 2017 WL 1476889, at *3 (E.D. Mich. Apr. 25, 2017), *aff'd*, 746 F. App'x 522 (6th Cir. 2018) ("Facebook posts were [not] testimonial such that Confrontation Clause applies to them."); *Lee-Purvis v. Pennsylvania*, 314 F. Supp. 3d 665, 678 (E.D. Pa. 2018) ("Facebook posts were [not] testimonial [because,] . . . evaluated objectively, there is no indication that the primary purpose of creating the Facebook posts was to memorialize an out-of-court substitute for trial testimony.").

Second, even assuming *arguendo* the statement is testimonial, "[t]he law is clear that introduction into evidence of a nontestifying codefendant's statement does not violate the Confrontation Clause where it does not name the defendant, and implicates him *only* in light of other evidence presented at trial." *United States v. Alkufi*, 636 F. App'x 323, 335 (6th Cir. 2016) (emphasis in original).[1] The Sixth Circuit has thus adopted the rule applied in numerous other circuits, including the Fourth, Eighth, and Tenth that "permits the introduction of a declarant-codefendant self-incrimination, extra-judicial statement, in a joint trial, where the defendant's name is redacted and a neutral term is substituted." *United States v. Vasilakos*, 508 F.3d 401,

---

[1] Defendant Gallagher's statement that Defendant Idoni's statement implicates her codefendants even if the Government omits the "we" cannot be reconciled with the relevant caselaw. *See* Chester Gallagher Motion at 2, ECF No. 499.

5

407-08 (6th Cir. 2007). As a result, replacing a co-defendant's name with generic terms like "the person," "another person," "someone," and "you guys," has been found to be sufficient to avoid a *Bruton* issue. *Id.* ("another person" or "the person"); *Alkufi*, 636 F. App'x at 334 ("you guys"); *United States v. Sherrill*, 972 F.3d 752, 764 (6th Cir. 2020) ("someone"). *Bruton* is even less implicated when "the government [is] prosecuting multiple defendants for participation in an alleged conspiracy" and generic terms are used to refer to a codefendant. *Vasilakos*, 508 F.3d at 407-08; *see also Alkufi*, 636 F. App'x at 334 (reaching this conclusion in a case where the "jury heard testimony that five other persons were present"); *Sherrill*, 972 F.3d at 764 ("avoiding *Bruton* because "[the] neutral pronouns could have referred to any of the individuals allegedly involved in the robbery").

In this case, Defendant Idoni's statement does not facially implicate Chester Gallagher or any of the other defendants. She does not say Mr. Gallagher's name or anyone else's. Instead, she uses a word that would normally be considered curative for *Bruton* purposes: the generic term "We." Moreover, she does so in the context of an incident involving dozens of people inside the Providence Pavilion. As a result, the only way Defendant Gallagher or any other Defendant is implicated by this term is in light of the other evidence, making abundantly clear the absence of the *Bruton* issue. *Alkufi*, 636 F. App'x at 335. Nevertheless, to the extent there is any concern about the generic term "We," the Government is amenable to replacing it with "I and other," or any other similarly generic term, which is further in line with prevailing precedent.

## CONCLUSION

For these reasons, the Government moves for a ruling that Exhibit 15 is admissible as a statement by a party opponent or, in the alternative, co-conspirator statement under Federal Rule of Evidence 801(d)(2)(E).

6

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

*s/Amanda J. Klopf*
AMANDA J. KLOPF
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

*s/Wilfred T. Beaye, Jr.*
WILFRED T. BEAYE, JR.
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 771-333-1681
Wilfred.Beaye@usdoj.gov

## CERTIFICATE OF THE SERVICE

  I certify that a true and correct copy of the foregoing was filed electronically and served electronically, via the CM/ECF electronically filing system on this 26th day of January, 2024, upon the following:

**JODIE A. BELL**
Law Office of Jodie A. Bell
Washington Square Building 214 Second Avenue North Suite 208
Nashville, TN 37201
USA
jodie@attorneyjodiebell.com
(615) 953-4977

*Attorney for Defendant Chester Gallagher*

**WILLIAM J. CONWAY**
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
wjconway@gmail.com
(615) 260-5364

*Attorney for Defendant Heather Idoni*

**LARRY LAMONT CRAIN**
5214 Maryland Way
Suite 402
Brentwood, TN 37207
(615) 376-2600
larry@crainlaw.legal

**STEPHEN M. CRAMPTON**
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
scrampton@thomasmoresociety.org
662-255-9439

*Attorneys for Defendant Paul Vaughn*

**G. KERRY HAYMAKER**
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
haymaker@tennesseedefense.com
(615) 250-0050

**STEVE C. THORNTON, I**
Steve Thornton Attorney Law Office
P.O. Box 16465
Jackson, MS 39236
USA
mail@lawlives.com
(601) 982-0313

*Attorneys for Defendant Coleman Boyd*

**MANUEL B. RUSS**
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com

**JOHN R. MANSON**
3112 Carrington Court
Nashville, TN 37218
USA
jmanson@lewisthomason.com
615-259-1366

*Attorneys for Defendant Dennis Green*

8

**ROBERT LYNN PARRIS**
208 3rd Avenue North Ste 300
Nashville, TN 37201
rlp@robertparrisattorney.com
(901) 490-8026

**DAVID I. KOMISAR**
Law Office of David I. Komisar
208 Third Avenue North, Suite 300
Nashville, TN 327201
david@komisarlaw.net
615-256-3330

*Attorneys for Defendant Calvin Zastrow*

                                        s/ *Wilfred T. Beaye, Jr.*
                                        WILFRED T. BEAYE, JR.
                                        Trial Attorney