IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| [1] CHESTER GALLAGHER | ) No. 3:22-cr-00327 |
| [2] HEATHER IDONI | ) |
| [3] CALVIN ZASTROW | ) |
| [4] COLEMAN BOYD | ) |
| [6] PAUL VAUGHN | ) |
| [7] DENNIS GREEN | ) |

**RESPONSE TO DEFENDANTS' OBJECTION TO CHANGES TO THE COURT'S ORAL RULING ON THE FINAL JURY INSTRUCTIONS**

The United States of America, by and through undersigned counsel, submits the following in response to Defendants' filed Objection, captioned "Objection to Any Changes to the Court's Oral January 26, 2024 Ruling on Final Jury Instructions," ECF No. 504, and the bases for which were presented in two separate emails on Saturday, January 27, 2024. The first email was sent by David I. Komisar, counsel to Defendant Calvin Zastrow, at 11:40AM, and the second by Steven C. Thorton, counsel to Defendant Paul Vaughn, at 3:53PM. The emails were in response to the Government's determination that it would no longer be proceeding on an intimidation theory under Count 2 of the Indictment and, as such, the jury instructions relating to that theory should be omitted as superfluous.[1] Defendants objected on two grounds: first, that the Government cannot

---

[1] Notably, at the charge conference, the Government determined that it was not proceeding on this theory at the same time it indicated it would not be proceeding on an "injure" theory on Count 1. The Court thereafter ruled that it would be modifying the instructions to omit the now superfluous language relating to both theories. Defendants did not object at that time.

1

abandon its intimidation theory because it elicited evidence at trial about intimidation, and second, even if it could, the Eighth Circuit's decision in *United States v. Lee*, 6 F.3d 1297 (8th Cir. 1993) counsels instructing that the word "intimidate" as used in Count 1 requires threat of physical violence.

As further explained below, the first objection fails because the Government is not abandoning its intimidation theory as to Count 1 (18 U.S.C. § 241), but only as to Count 2 (18 U.S.C. § 248(a)(1)). So too with the second objection because the notion espoused in *Lee* does not apply where, as here, the conduct at issue is not First Amendment-protected activity, and the instruction Defendants request would contradict *Lee*, its progeny in *United States v. McDermott*, 29 F.3d 404, 408-09 (8th Cir. 1994), as well as the Supreme Court's decisions in *United States v. Mosley*, 238 U.S. 383, 385 (1915) and *United States v. Classic*, 313 U.S. 299, 321-22, 324 (1941), as was outlined recently in *United States v. Mackey*, 652 F. Supp. 3d 309, 332-33, 336-38 (E.D.N.Y Jan. 23, 2023). Put simply, if *Lee*, its progeny, and related decisions stand for anything in this case, it is that Section 241 is intended to cover a wide range of conduct that is intended to prevent the exercise of protected rights.

I. **The Government Can Abandon its Intimidation Theory.**

Defendants first object that the Government cannot abandon its intimidation theory because it elicited evidence at trial about intimidation. This objection fails (i) because the Government may abandon theories of the offense before the jury is charged, *United States v. Hoeffner*, 626 F.3d 857, 863–64 (5th Cir. 2010), and (ii) because the Government is not abandoning its intimidation theory as to Count 1 (18 U.S.C. § 241), but only as to Count 2 (18 U.S.C. § 248(a)(1)). The evidence of intimidation elicited at trial is sufficient to prove Count 1 under this theory. The intimidation theory under Count 2 requires proof of reasonable apprehension of bodily harm to

2

oneself or another. *See* 18 U.S.C. § 248(e)(3) (defining "intimidate"). As to this theory, while there was proof elicited at trial, the United States still wishes to not proceed on this theory. This clarification hopefully resolves Defendant's concern. To the extent it does not, the Government disagrees that the Court needs to instruct the jury on a theory on which it is no longer proceeding. The Government also disagrees that, as Defendants' objection appears to suggest, its eliciting evidence of intimidation at trial necessarily means that it was proceeding on an intimidation theory under Count 2, particularly given the other available theory under that Count, *i.e.*, that Defendants "interfere[d] with" patients in accessing reproductive health services and employees/the clinic in providing such services. *See* 18 U.S.C. § 248(a)(1) & (e)(2) (including "interfere with" and defining it as "restrict[ing] a person's freedom of movement").

## II. Intimidation under 18 U.S.C. § 241 Does Not Require Threat of Physical Violence.

Defendants next object that the Eighth Circuit's decision in *United States v. Lee*, 6 F.3d 1297 (8th Cir. 1993) requires instructing that the word "intimidate" as used in Count 1 requires a threat of physical violence. The context for the argument is that, by the Government abandoning its intimidation theory under Count 2, the Court would omit the statutory definition of intimidate offered in 18 U.S.C. § 248(e)(3), which defines "intimidate" to require "plac[ing] a person in reasonable apprehension of bodily harm to him- or herself or to another." Defendants' hope, based on this objection, is that, by the Court not defining "intimidate" as used in Count 1, the jury would rely on the definition supplied for Count 2 to reach a verdict as to Count 1. There is no need to confuse the jury in such a manner. In any case, the defense objection fails for three reasons: (A) the notion espoused in *Lee* does not apply where, as here, the conduct at issue is not First Amendment-protected activity; (B) even if this case concerned First Amendment-protected activity, the defendants entirely mischaracterize the Eighth Circuit's decision in *Lee*, as well as the

3

law within the Eighth and Tenth Circuits; and (C) instructing the jury that "intimidate" as used in Section 241 requires threat of physical violence would contradict the Supreme Court's decisions in *United States v. Mosley*, 238 U.S. 383, 385 (1915) and *United States v. Classic*, 313 U.S. 299, 321-22, 324 (1941), as was outlined recently in *United States v. Mackey*, 652 F. Supp. 3d 309, 332-33, 336-38 (E.D.N.Y Jan. 23, 2023).

### A. The Eight's Circuit's decision in *United States v. Lee* does not apply where the conduct at issue is not First Amendment-protected activity.

As the Sixth Circuit recognized in *Singer v. U.S.*, the Eighth Circuit's decision in *Lee* is "unavailing to petitioner[s]" who, like here, engage in "acts of intimidation [that] are not protected by the First Amendment." 38 F.3d 1216 (Table), 1994 WL 589562 at *8 (6th Cir. 1994). And like every other court to consider the FACE Act and its application to conduct similar to the one charged here, this Court held that physically obstructing the doors to the clinic is not activity protected by the First Amendment. *United States v. Gallagher*, No. 3:22-CR-00327, 2023 WL 4317264, at *9-11 (M.D. Tenn. July 3, 2023) (denying Defendants' challenge both facially and as-applied). Defendants litigated and re-litigated this issue on the motions to dismiss, the jury instructions, and on the motions in limine, all to no avail. They should not be allowed to litigate, yet again, the application of the First Amendment to the charged conduct. Therefore, *Lee* is unavailing and offers no support for the definition of "intimidate" Defendants have proposed.

### B. The Eighth and Tenth Circuits have since adopted the "not used in any technical sense" instruction that the Government proposes, with the former squarely rejecting an instruction like the one Defendants propose.

Even if this case concerned First Amendment-protected activity, the defendants entirely mischaracterize the Eighth Circuit's decision in *Lee*, as well as the law within the Eighth and Tenth Circuits. Subsequent to *Lee*, both circuits have affirmed the jury instruction requested by the

4

Government, which defines the terms "injure, oppress, threaten, or intimidate" as used in Section 241 as "words not used in any technical sense, but ... cover[ing] a variety of conduct intended to harm, frighten, punish or prevent the free action of other persons." *United States v. McDermott*, 29 F.3d 404, 408 (8th Cir. 1994); *United States v. LaVallee*, 439 F.3d 670, 686 (10th Cir. 2006) (affirming that "[t]he instruction[] w[as] consistent with the legal standard for conspiracy to deprive a person of [his protected right]"). This is the reason this definition finds itself in the Eighth Circuit's pattern jury instructions.

The concern for the Eighth Circuit in *Lee* and which was shared by Tenth Circuit in *Magelby* was a very narrow one: where the charged conduct is one that would otherwise be First Amendment-protected activity—*e.g.*, the conduct in *Lee*, which was "construct[ing] and burn[ing] a cross on a hall which was approximately 386 feet from an apartment complex in which a number of black persons resided," *Singer*, 1994 WL 589562 at *8—the added instruction that "threaten or intimidate does not require a threat of physical force or intimidation of physical harm" is error, *Lee*, 6 F.3d at 1300. This is because one has no way to know whether the defendant's conviction "is unrelated to the suppression of expression." *Id.* (emphasizing that the analysis does not apply where "the government interest is unrelated to the suppression of free expression, like those in time, place, and manner restrictions") (Gibson, J., concurring); *see also Magelby*, 420 F.3d at 1143 (explaining that, in a case involving burning a cross outside the home of an interracial couple, the instruction that "[t]o oppress, threaten or intimidate does not require the possibility of physical force or physical harm" is "flawed").

Tellingly, the same judge—Judge Gibson—who authored the concurrence explaining the en banc panel's reasoning in *Lee* penned the Eighth Circuit's subsequent decision in *McDermott*. There, the petitioner had been charged with and convicted under Section 241 for "attempt[ing] to

5

keep black persons out of [a public park]," and using a number of tactics to do so, including "waving baseball bats, axe handles, and knives; throwing rocks and bottles; veering cars towards black persons; and physically chasing black persons out of the park," all of which "culminated in the burning of a fifteen-foot tall cross in the park . . . ." *McDermott*, 29 F.3d at 405. The district court instructed the jury that "injure, oppress, threaten, or intimidate" were not "used in any technical sense" but "covered a variety of conduct intended to harm, frighten, punish, or prevent the free action of other persons." *Id.* at 408. The court did not, however, include the added instruction that "threaten or intimidate does not require a threat of physical force or intimidation of physical harm" at issue in *Lee*. *Id.*

The petitioner argued that the instructions were error because his conviction under Section 241 could have been solely "based on the expressive act of burning a cross." *Id.* Writing for the panel, Judge Gibson rejected this argument specifically because "in contrast to *Lee*," the "instructions contained no language informing the jury that it need not find 'a threat of force or the intimidation of physical fear' in order to convict." *Id.* Critically, another reason for rejecting this argument was that the definition of "injure, oppress, threaten, or intimidate" provided by the district court used the word "prevent," as opposed to "inhibit." *Id.* at 401. This distinction, according to Judge Gibson, "save[d] this instruction from one of the problems [the Court] encountered in *Lee*." *Id.* at 409. As he further explained, "inhibit" engenders the problems cited by Defendants in that there "is a great deal of speech [that] is sufficiently forceful or offensive to inhibit free actions of persons against whom it is directed," and might cause them to "hesitate before acting in a certain way." *Id.* This is not true of "prevent," however, because, as defined in "Webster's Third New International Dictionary (unabridged 1981)[,] . . . [it] means "to deprive of power of hope of acting, operating, or succeeding in a purpose" or "to keep from happening."

6

*Id.* As such, Judge Gibson, writing for the panel, held that "'prevent' denotes a more forceful and threatening course of conduct than merely making someone 'hesitate before acting in a certain way'." *Id.*

This analysis and sequence makes clear, then, that, contrary to Defendants' assertions, *Lee* and its progeny counsel toward the "not used in any technical sense" instruction proposed by the Government and against the "requires physical violence" instruction proposed by Defendants.

**C. The Supreme Court has repeatedly held that the "injure, oppress, threaten, or intimidate" language in 18 U.S.C. § 241 does not require physical violence or threat of physical violence.**

Finally, instructing the jury as Defendants suggest would contradict the Supreme Court's rulings in *United States v. Mosley*, 238 U.S. 383, 385 (1915) and *United States v. Classic*, 313 U.S. 299, 324 (1941), in each of which the Court has held that the terms "injure, threaten, oppress, or intimidate" as used in Section 241 are broad enough to cover a wide range of conduct that prevents or obstructs the exercise of federal rights, including conduct that does not involve or threaten physical violence.

In *Mosley*, the Supreme Court was squarely confronted with the application of identical language in Section 241's predecessor—Section 6 of the Enforcement Act of 1870—to members of a county election board conspiring to "injure and oppress" the votes of certain members of the electorate. 238 U.S. at 385. The operative question was whether Section 6 could be applied to these acts given that they did not involve any violence. *Id.* ("The only matter that needs argument is that upon which the district court expressed its view—whether, properly construed, the statute purports to deal with such conduct as that of the defendants, assuming that there is no lack of power if such be its intent."). The Court held that it could for two reasons: first, it construed the words "injure, oppress, threaten, or intimidate" as [m]anifestly . . . broad enough to cover the case,"

7

and second, concluded that, although violence was the class of interference that was in the forefront in the statute's early application, the statute is not "confined to conspiracies contemplating violence," stating:

> Just as the 14th Amendment, to use the happy analogy suggested by the Solicitor General, was adopted with a view to the protection of the colored race, but has been found to be equally important in its application to the rights of all, § 6 had a general scope and used general words that have become the most important now that the Ku Klux have passed away.").

*Id.*

The Court found it further indicative of Congress's intent that words "intent to prevent or hinder" were still included in the second clause of the criminal code because those words "always were in the act." *Id.* According to the Court, the change to separate the first and second clauses of the statute was to move the more general language regarding injury to conspiracies first, and putting the more specific language about the Klan in disguise on the highway in the second clause to reflect the changing times. *Id.* In other words, the Supreme Court construed the "sweeping general words" of statute's first clause as the broader part of the statute, and the second clause to be comparatively narrowed in its scope. *Id.* (signaling that the Government may have been able to charge the case using the language of the second clause of the statute).

Notably, this "intent to prevent or hinder" language continues to appear in the second clause of Section 241. The decision *United States v. Waddell* concerned the earlier version of 241 which did not separate the two paragraphs and in it, the Court listed the wide variety of ways one can interfere with a protected right, including "obstruct[ing]," or "prevent[ing]" a person from exercising the right. 112 U.S. 76, 79-80 (1884) (holding that "[w]henever the acts complained of are of a character to *prevent* [the free exercise of the relevant right], or throw *obstruction* in the way of exercising this right, and for the purpose and with intent to *prevent* it . . . those acts come

8

within the purview of the statute" (emphases added)). The Supreme Court reiterated the same in *United States v. Classic* and held that, even with the clauses separated, the first clause encompassed "[a] conspiracy to prevent" the exercise of voting rights, whether it be to "prevent the citizen from voting or to prevent the official count of his ballot when cast [as in *Mosley*]." 313 U.S. 299, at 321-322.

Most recently, a proposal similar to Defendants' was considered and soundly rejected in *United States v. Mackey*, on the basis that "[f]ederal courts have for decades defined 'injury' to or 'oppression' of rights as including behavior that 'obstruct[s], 'hinder[s],' or 'prevent[s],'" 652 F. Supp. 3d 309, 336-38 (E.D.N.Y Jan. 23, 2023) (citing *Waddell*, 112 U.S. at 80; *Mosley*, 238 U.S. at 387-88; *United States v. Weston*, 417 F.2d 181, 183 (1969) (including behavior that "frustrates"); *United States v. Stone*, 188 F. 836, 838 (D. Md. 1911) (including behavior that makes it "difficult"); and *United States v. Tobin*, No. 04-CR-216-01-SM, 2005 WL 3199672, at *3 (D.N.H. Nov. 30, 2005) (including conduct that " 'indirect[ly] rather than' 'direct[ly] assault[s] . . . the free exercise of rights")).

In addition, the defendant in *Mackey* argued, as the Defendants here did orally before this court on January 26, 2024 with respect to the term "intimidate," the fact that the second paragraph of 241 includes this language but that it is omitted from the first paragraph means that a more "limited definition of injury" applied to "the first clause." *Id.* The *Mackey* rejected this argument as well, explaining that the reading of the relationship between the two clauses in Section 241 contradicted the reading given by the Supreme Court in *Mosley*. *Id.* at 337-38.

## CONCLUSION

For all of the above reasons, the Government need not proceed with its intimidation theory under Count 2, and submits that an instruction to the effect that Defendants seek would be error.

9

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

*s/Amanda J. Klopf*
AMANDA J. KLOPF
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-736-5151

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

*s/Wilfred T. Beaye, Jr.*
WILFRED T. BEAYE, JR.
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 771-333-1681
Wilfred.Beaye@usdoj.gov

# CERTIFICATE OF THE SERVICE

   I certify that a true and correct copy of the foregoing was filed electronically and served electronically, via the CM/ECF electronically filing system on this 29th day of January, 2024, upon the following:

**JODIE A. BELL**
Law Office of Jodie A. Bell
Washington Square Building 214 Second Avenue North Suite 208
Nashville, TN 37201
USA
jodie@attorneyjodiebell.com
(615) 953-4977

*Attorney for Defendant Chester Gallagher*

**WILLIAM J. CONWAY**
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
wjconway@gmail.com
(615) 260-5364

*Attorney for Defendant Heather Idoni*

**LARRY LAMONT CRAIN**
5214 Maryland Way
Suite 402
Brentwood, TN 37207
(615) 376-2600
larry@crainlaw.legal

**STEPHEN M. CRAMPTON**
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
scrampton@thomasmoresociety.org
662-255-9439

*Attorneys for Defendant Paul Vaughn*

**G. KERRY HAYMAKER**
Haymaker & Heroux, P.C.
545 Mainstream Drive
Suite 420
Nashville, TN 37228
haymaker@tennesseedefense.com
(615) 250-0050

**STEVE C. THORNTON, I**
Steve Thornton Attorney Law Office
P.O. Box 16465
Jackson, MS 39236
USA
mail@lawlives.com
(601) 982-0313

*Attorneys for Defendant Coleman Boyd*

**MANUEL B. RUSS**
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com

**JOHN R. MANSON**
3112 Carrington Court
Nashville, TN 37218
USA
jmanson@lewisthomason.com
615-259-1366

*Attorneys for Defendant Dennis Green*

11

Case 3:22-cr-00327　　Document 505　　Filed 01/29/24　　Page 11 of 12 PageID #: 2575

**ROBERT LYNN PARRIS**
208 3rd Avenue North Ste 300
Nashville, TN 37201
rlp@robertparrisattorney.com
(901) 490-8026

**DAVID I. KOMISAR**
Law Office of David I. Komisar
208 Third Avenue North, Suite 300
Nashville, TN 327201
david@komisarlaw.net
615-256-3330

*Attorneys for Defendant Calvin Zastrow*

                s/ *Wilfred T. Beaye, Jr.*
                WILFRED T. BEAYE, JR.
                Trial Attorney