UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 3:22-cr-00327-2 |
| v. ) | Judge Trauger |
| ) | |
| HEATHER IDONI ) | |

## SUPPLEMENT TO POSITION REGARDING PRESENTENCE REPORT

The United States of America, by and through the undersigned counsel, and in accordance with the Order of this Court (Dkt. No. 759), hereby supplements its position regarding Defendant Heather Idoni's objection to Probation's recommendation of a three-level enhancement under Section 3B1.3(b) of the Guidelines for Defendant Idoni's role as a manager or supervisor in the offense. (*See* Presentence Investigation Report (PSR) ¶ 30.) The Defendant has taken the position that "there is no evidence that [she] coordinated any travel or logistics" for the blockade, and therefore objects to application of the enhancement. (Dkt. No. 750 at 1-2 (hereinafter, "Def.'s PSR Position".) However, as the government stated in its initial Position on the PSR (Dkt. No. 749), the evidence and trial testimony established that the Defendant was the key logistical organizer in the blockade: she arranged and paid for lodging for virtually all of the conspirators (Dkt. No. 547 at 162:24-163:2, 163:11-12, 163:24-164:3 (hereinafter, "Trial Tr. Vol. 3")); (Dkt. No. 732 at 132:17-133:2, 133:3-18 (hereinafter, "Trial Tr. Vol. 4")), participated in recruiting (Trial Tr. Vol. 4 at 133:12-13, 135:8-10), pre-qualified those who would be risking arrest (*id.* at 135:10-23), arranged a meeting place (*id.* at 140:22-141:9, 142:1, 146:15), and provided logistical details to participants and other members of the conspiracy (*id.* at 146:15 to 147:17). The three-level enhancement under Section 3B1.3(b) therefore applies to the Defendant.

1

# ARGUMENT

Section 3B1.1(b) increases the offense level of a defendant by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The increase must be applied as an "adjustment" if it is shown that the defendant exerted control over at least one other participant, but still may be applied as an "upward departure" if the defendant instead exercised management responsibility over the activities of the crime. U.S.S.G. § 3B1.1, app. n.2.[1] In determining whether the adjustment must be applied, courts consider the following:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.*, app. n.4.

Notably, the Sixth Circuit has held that "the key issue is not direct control or ultimate decision-making authority, but rather the defendant's 'relative responsibility.'" *United States v. Henley*, 360 F.3d 509, 517 (6th Cir. 2004); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 595-96 (6th Cir. 1998) (applying managerial enhancement where defendant provided directions and made necessary arrangements for participants delivering drugs); *see also* U.S.S.G. § 3B1.1 (stating in the background "[t]his adjustment is included primarily because of concerns about relative

---

[1] The Defendant's argument that she did not exercise the necessary degree of control or authority over at least one other is thus largely academic. Indeed, even if is she were correct that such control is necessary (and, as shown *infra*, she is not), the Court can effect the same increase by treating it as a departure because she exercised management responsibility over the activities of the crime (per note 2 of Section 3B1.1), or she "was pending trial or sentencing on another charge" (per Section 4A1.3(2)(D)). In fact, that is precisely what the district court did on remand in the lone case the Defendant relies on. *See United States v. Gort-DiDonato*, 967 F. Supp. 254, 256 (W.D. Mich. 1997) (concluding that the increase applied as an adjustment because of defendant's participation in both the planning and execution of the offense, or as an upward departure because of her control over the activities of the conspiracy).

responsibility"). Courts in this Circuit have thus found the adjustment appropriate where a defendant coordinated the activities of co-conspirators and provided logistical details, *United States v. Gooden*, No. 17-CV-152-DCR-CJS, 2017 WL 9325622, at *16 (E.D. Ky. Nov. 30, 2017*)*, *report and recommendation adopted*, No. CR 5: 15-05-DCR, 2018 WL 276132 (E.D. Ky. Jan. 3, 2018), recruited another to participate in a criminal scheme, *United States v. Castilla-Lugo*, 699 F.3d 454, 461 (6th Cir. 2012), or otherwise facilitated the criminal activity by providing supplies or insider information to participants, *United States v. Dupree*, 323 F.3d 493, 494 (6th Cir. 2003).

As detailed below, all of the above is true of the Defendant in this case.

***Arranging and Paying for Lodging.*** Whereas the Defendant claims to have "merely assisted others . . . in booking their accommodations," (Def.'s PSR Position at 1), the evidence and testimony say otherwise. The evidence proved that not only did she *arrange* the blockaders' lodging, but also that she actually *paid* for each of the conspirators' lodging. The Defendant's payment for lodging clearly defrayed the conspirators' costs and facilitated the conspiracy, thereby distinguishing her culpability from that of the other conspirators.

As summarized in the government's Demonstrative Exhibit and as FBI Analyst Anne Wood testified at trial, as early as February 9, 2021, the Defendant sent a Facebook message to her co-defendant Chester Gallager informing him that she would "arrange[] housing for everyone." (Trial Tr. Vol. 4 at 132:17-25, 133:9-11.) The reaction from her co-defendant Chester Gallagher is telling, as he is first and foremost amazed and says just that ("You're amazing."), and even more so when, in response to his asking about the rates at the hotel, Defendant Idoni tells him she can accommodate more people at no cost to them. (*Id.* at 133:2.) Caroline Davis testified that this is in fact what ultimately happened, stating, "I knew that [Heather Idoni's] contribution for the group was to be housing," (Trial Tr. Vol. 3 at 162:24-163:2), that "[w]hen we first got there, we went to

the lodging Heather [Idoni] had set up," (*id.* at 163:9-12), and that it was Heather Idoni who paid for it, (*id.* at 164:2-3).[2]

***Involvement in Recruiting and Setting Preconditions for Participants.*** In addition to arranging and paying for coconspirators' lodging, the Defendant personally recruited at least one other participant, and introduced measures for pre-qualifying other recruits. As FBI Analyst Woods testified, the Defendant agreed to reach out to co-defendant Dennis Green on February 9. (*Id.* at 133:12-13.) At this point, co-defendant Green was not on the list of participants the Defendant had sent to co-defendant Gallagher that same day. (*See id.* at 132:20-22.) By February 14, however, the Defendant reported back to co-defendant Gallagher that the "Green family is confirmed." (*Id.* at 135:10.)

Critically, when co-defendant Gallagher proposed bringing on another recruit, a woman by the name of "Claudine," the Defendant interjected with two pre-qualifiers: (i) confirmation as to whether "she would be risking arrest," and (ii) that she, the Defendant, should get to know the recruit before a commitment. (*Id.* at 135:12-20.) Co-defendant Gallagher accepted both conditions, stating, "I will prequalify any I send your way." (*Id.* at 135:22-23.) Thus, it was the Defendant who set as a precondition of recruitment (or, perhaps, free housing) that blockaders must be prepared to risk arrest. And, indeed, virtually all of the individuals who either pled or have been found guilty of the conspiracy, a FACE Act violation, or both received paid lodging from the Defendant, *i.e.*, they were, in fact, willing to risk arrest and did. (*Compare id.* at 132:20-25, 135:9-10, 18-19 (listing recruits whom the Defendant was tracking and paying for) *with* Dkt.

---

[2] Indeed, Ms. Wood also testified that, just days after the Defendant committed to paying for everyone's lodging, Ms. Davis declined to attend another Coleman Boyd-led gathering in Michigan in this same timeframe because she could not afford it. Dkt. No. 732 at 134:6-17. The government is not certain it is the same gathering, but does note for the Court that at least one of the blockades forming the basis for the Defendant's Michigan convictions for conspiracy and the FACE Act occurred on April 16, 2021.

No. 3, Indictment.)

***Arranging Logistics.*** Finally, contrary to her claim that her discussion of rescue events through social media was to the same extent as nearly all the other participants, the Defendant is the one who arranged the logistics for meetings with other participants and also provided those details to other participants. When co-defendant Gallagher stated, on February 22, 2021, that he wanted to meet with "first arrivers," the Defendant responded that she would "call them and confirm who will attend." (Trial Tr. Vol. 4 at 141:4-8.) Over the course of the next two days, the Defendant does just that *and*, whereas co-defendant Gallagher was contemplating bringing folding chairs to his hotel room for the meeting, the Defendant goes the extra mile and sets up a meeting room at the hotel. (*Id.* at 141:8, 1:42:1-10.) This all culminates in the Defend circulating the itinerary for the blockade, not to a list of people co-defendant Gallagher pre-decided, but rather to everyone she concluded was a participant. (*Id.* at 146:15-147:17.)

The Defendant claims that the Court can ignore all of this if it finds that "she did not exercise decision-making authority independent from the leader of the offense." (Def.'s PSR Position at 5-6.) While the government well accepts that defendant Gallagher was the undisputed leader of this conspiracy, the Defendant was not "direct[ed]" by defendant Gallagher to pay for everyone's housing, as she claims, but rather volunteered to do so, much to Gallagher's surprise and amazement. She was also under no obligation to recruit defendant Dennis Green. To the contrary, Gallagher merely stated that he "might ask" her to do so, and if she would be willing to if he did. (Trial Tr. Vol. 4 at 133:12-14.) He then never revisits the matter in their exchange, and it is rather the Defendant who returns to the topic nearly a week later to confirm that she had in fact recruited the Green family. (*Id.* at 135:10.) And defendant Gallagher only accepted the added responsibility of prequalifying new recruits that he passed on to the Defendant *after* the Defendant

made clear that there were prequalifying measures and told him what those measures were.

The Defendant's claim also fails because the notion that the adjustment applies only if she is found to have exercised independent decision-making authority is based on an out-of-circuit case that is plainly contradicted by the controlling Sixth Circuit authority. *Compare* Def.'s PSR Position at 5-6 (relying exclusively on the Tenth Circuit's decision in *United States v. Hunsaker*, 65 F.4th 1223 (10th Cir. 2023), which required evidence of "decision-making authority or control over a subordinate") *with Gaitan-Acevedo*, 148 F.3d at 595 ("The defendant objects . . . because he contends he did not directly employ or control his coconspirators. Evidence of direct control or ultimate decision-making authority, however, is not required for leadership enhancement."); *see also United States v. Dupree*, 323 F.3d 480, 493, 494 (6th Cir. 2003) (same). The evidence and testimony cited above is more than sufficient to warrant application of the leadership enhancement to the Defendant under controlling precedent.

Taken together, this evidence and testimony shows that, although she was not the leader during the blockade, the Defendant had greater responsibility relative to other participants—she was more involved in the planning ahead of time than others, had relatively more control over those plans, and likewise over other participants. Put simply, that she did not take a leadership role during the meetings immediately preceding the blockade or the blockade itself does not absolve her of responsibility for her earlier role in the organizing, planning, recruitment, prequalification, and logistics. The government therefore agrees with Probation that the three-level enhancement under Section 3B1.3(b) of the Guidelines should be applied to the Defendant.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

*s/Nani Gilkerson*
NANI GILKERSON
Assistant United States Attorney
791 Church St, Suite 3300
Nashville, Tennessee 37203
Phone: 615-401-6624

KRISTEN M. CLARKE
Assistant Attorney General
Civil Rights Division

*s/Kyle Boynton*
KYLE BOYNTON
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 202-598-0449
Kyle.Boynton@usdoj.gov

*s/Wilfred T. Beaye, Jr.*
WILFRED T. BEAYE, JR.
Trial Attorney
950 Pennsylvania Ave. NW
Washington, DC 20530
Phone: 771-333-1681
Wilfred.Beaye@usdoj.gov

**CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing will be served electronically to counsel for defendant, via the Court's Electronic Case Filing System, on September 27, 2024.

      *s/ Wilfred T. Beaye, Jr.*
      WILFRED T. BEAYE, JR.
      Trial Attorney

8

Case 3:22-cr-00327   Document 765   Filed 09/27/24   Page 8 of 8 PageID #: 6841